DANIEL J. SCHACHT, #259717
dschacht@donahue.com
MARIO M. CHOI, #243409
mchoi@donahue.com
HAYLEY M. LENAHAN (*pro hac vice* forthcoming)
hlenahan@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California  94612-3520
Telephone:   (510) 451-3300
Facsimile:    (510) 451-1527

Attorneys for Defendant
MARY BONO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHER, individually and as Trustee of The Veritas Trust, <br><br> Plaintiff, <br><br> v. <br><br> MARY BONO, individually and as Trustee of the Bono Collection Trust, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:21-CV-08157 JAK (RAOx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** <br><br> Date:       April 11, 2022 <br> Time:      8:30 a.m. <br> Judge:     Hon. John A. Kronstadt <br> Ctrm:      10B |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ......................................................................... 1

III. DISCUSSION ........................................................................................... 3

      A.     The First Count Should Be Dismissed Because the Termination Provisions of the Federal Copyright Act Preempt any State Law Contract Claim .................................... 5

            1.     The Copyright Terminations ..................................... 5

            2.     The Termination Right is Broad and Inalienable, and Supersedes Any Agreement to the Contrary, Including the MSA ............................................................. 6

            3.     The Heirs Had and Have the Sole Right to Terminate Sonny's Original Grants, and All Terminated Rights Revert to Them .................................. 8

            4.     The MSA Cannot Affect the Heirs' Rights to Terminated Copyrights ....................................................... 8

            5.     The Heirs' Termination Rights Have Supremacy Under Federal Law ................................................... 10

                  a)     Any Claim of Rights as Community Property Fails ................................................................ 12

      B.     The Court Should Dismiss the Second Count for Breach of Contract ....................................................................... 15

IV. CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 3, 4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 3, 4

*Berry v. Berry,*
  277 P.3d 968 (Haw. 2012).......................................................................... 13, 15

*Boggs v. Boggs,*
  520 U.S. 833 (1997) ......................................................................................... 11

*Brown-Thomas v. Hynie,*
  Case No. 2:18-cv-00307-SVW-JPR, 2018 WL 3811353 (C.D. Cal.
  Aug. 7, 2018)...................................................................................................... 8

*Chae v. SLM Corp.,*
  593 F.3d 936 (9th Cir. 2010) .......................................................................... 11

*Classic Media, Inc. v. Mewborn,*
  532 F.3d 978 (9th Cir. 2008)..........................................................3, 6, 7, 8, 9, 15

*Corcovado Music Corp. v. Hollis Music, Inc.,*
  981 F.2d 679 (2d Cir. 1993) .............................................................................. 7

*Fred Fisher Music Co. v. M. Witmark & Sons,*
  318 U.S. 643 (1943) ....................................................................................... 6, 7

*Free v. Bland,*
  369 U.S. 663 (1962) ......................................................................................... 11

*Goldstein v. California,*
  412 U.S. 546 (1973) ......................................................................................... 11

*Hays v. Temple,*
  23 Cal. App. 2d 690 (1937).............................................................................. 10

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ........................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

*Hisquierdo v. Hisquierdo,*
    439 U.S. 572 (1979) ........................................................................ 11

*Howell v. Howell,*
    137 S. Ct. 1400 (2017) .................................................................... 11

*In re Marriage of Worth*
    195 Cal. App. 3d 768 (Ct. App. 1987). ................................. 12, 13, 14

*Marvel Characters Inc. v. Simon,*
    310 F.3d 280 (2d Cir. 2002) ........................................................... 10

*McCarty v. McCarty,*
    453 U.S. 210 (1981) ........................................................................ 11

*Milne v. Stephen Slesinger, Inc.,*
    430 F.3d 1036 (9th Cir. 2005) ...................................................... 7, 8

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) ........................................................... 5

*Penguin Grp. (USA) Inc. v. Steinbeck,*
    537 F.3d 193 (2d Cir. 2008) ............................................................. 8

*Rodrigue v. Rodrigue,*
    55 F. Supp. 2d 534 (E.D. La. 1999), *rev'd*, 218 F.3d 432 (5th Cir.
    2000) ...................................................................... 11, 12, 13, 14, 15

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ...................................................... 3, 4

*Stewart v. Abend,*
    495 U.S. 207 (1990) .................................................................... 7, 10

*Tocher v. City of Santa Ana,*
    219 F.3d 1040 (9th Cir. 2000) ........................................................ 11

*Wissner v. Wissner,*
    338 U.S. 655 (1950) ........................................................................ 11

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

- iii -

MEMO ISO MOT. TO DISMISS
2:21-CV-08157 JAK (RAOX)

# TABLE OF AUTHORITIES

**Page**

**Statutes**

17 U.S.C. § 101 ................................................................................. 6

17 U.S.C. § 102(a) ............................................................................ 5

17 U.S.C. § 201(d)(1) ....................................................................... 5

17 U.S.C. § 203 ................................................................. 7, 12, 14

17 U.S.C. § 203(a) ............................................................................ 9

17 U.S.C. § 203(a)(2)(B) .................................................................. 6

17 U.S.C. § 203(b)(4) ....................................................................... 7

17 U.S.C. § 301(a) ........................................................................... 12

17 U.S.C. § 302 ................................................................................. 7

17 U.S.C. § 304 ................................................................. 8, 14, 15

17 U.S.C. § 304(c) ........................................ 2, 3, 7, 8, 9, 10, 12, 17

17 U.S.C. § 304(c)(2) ....................................................................... 8

17 U.S.C. § 304(c)(2)(B) ............................................................. 7, 8

17 U.S.C. § 304(c)(4)(A) ................................................................. 3

17 U.S.C. § 304(c)(5) .................................................................. 6, 7, 9

17 U.S.C. § 304(c)(6) .................................................................. 8, 10

17 U.S.C. § 304(c)(6)(D) ................................................................ 7

17 U.S.C. § 304(d) ........................................................................... 7

17 U.S.C. § 304(d)(1) ....................................................................... 7

Cal. Prob. Code §§ 6400-6414 ....................................................... 5

# TABLE OF AUTHORITIES

**Page**

**Other Authorities**

Fed. R. Civ. P. 8...........................................................................................4

Fed. R. Civ. P. 8(a)(2)...................................................................................4

Fed. R. Civ. P. 8(d)(1) ..................................................................................4

Fed. R. Civ. P. 12(b)(6) ............................................................................3, 4

Melville B. Nimmer & David Nimmer, 1 NIMMER ON COPYRIGHT
    § 6A.03 ..................................................................................................13

Melville B. Nimmer & David Nimmer, 1 NIMMER ON COPYRIGHT
    § 6A.03[C][1] ..................................................................................14, 15

Melville B. Nimmer & David Nimmer, 2 NIMMER ON COPYRIGHT
    § 9.06[A]..................................................................................................7

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 11.01[A]................................................................................................6

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 11.02[A]................................................................................................7

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 11.07[D][3] ........................................................................................12

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 9.08 ......................................................................................................5

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 9.11[B][1] ............................................................................................7

U.S. Const. art. I, § 8, cl. 8 .........................................................................12

U.S. Const. art. VI, cl. 2.............................................................................11

## I.    **INTRODUCTION**

Plaintiff Cher seeks to invert the Supremacy Clause, claiming that her state law rights under a 1978 contract with her ex-husband, the late Sonny Bono, trump the rights specifically given to Sonny's heirs – Defendant Mary Bono and Sonny's children – by Congress via the Copyright Act, to terminate certain of Sonny's grants of copyright. The law, however, is clear that Defendant's right to terminate certain grants pursuant to the Copyright Act preempts Plaintiff's state law contract claims.

Plaintiff's first claim for declaratory relief, seeking a declaration that her state law contract rights supersede Defendant's rights to terminate pursuant to the Copyright Act, fails as a matter of law and should be dismissed with prejudice. Plaintiff's second claim for breach of contract should be dismissed because, and to the extent that, it incorporates her claim that her state law contract rights preempt Defendant's right to terminate pursuant to the Copyright Act.

## II.    **STATEMENT OF FACTS**

In or about 1964, Plaintiff Cher ("Cher" or "Plaintiff") and the late Sonny Bono ("Sonny")[1] began performing together and recorded multiple musical compositions, including musical compositions written by Sonny during their marriage. ¶ 9.[2] On or about February 1, 1974, Cher and Sonny separated and, in 1975, divorced, subject to the disposition of their community property. ¶ 12.

On or about August 10, 1978, Cher and Sonny entered into a written Marriage Settlement Agreement (the "MSA"), in which Sonny irrevocably assigned to Cher, as her sole and separate property throughout the world and in perpetuity, fifty percent of the income from musical composition royalties, record royalties, and other assets

---

[1] The reference to Cher and Sonny without honorifics is done for clarity, and not meant to disrespect either. Both achieved mononymous fame.

[2] "¶" and "¶¶" hereinafter refers to paragraphs of the Complaint for Declaratory Relief; and Breach of Contract, filed October 13, 2021 (ECF No. 1).

that they owned as of their February 1, 1974 separation.[3] ¶¶ 13-17 [4]

Sonny died in January 1998. ¶ 20. Sonny's widow, Defendant Representative Mary Bono ("Mary"),[5] was appointed administrator of his Estate. ¶ 21. In July 1998, Cher filed her creditor's claim against the Estate, raising Sonny's obligations to her under the MSA. ¶ 22. In or before July 1999, Mary, as administrator of Sonny's estate, and Cher settled Cher's claims, under which agreement (the "Agreement *re* Creditor's Claim") they confirmed Plaintiff's "ongoing rights under the terms and conditions of the [MSA]" and agreed to "cooperate in developing a mutually acceptable mechanism for the collection and proper disbursement of such royalties to Cher[6] and to the heirs after the closing of this estate." ¶ 23. Cher conceded at the time, and still concedes, that Mary properly accounted for all the royalties due to her. ¶ 23. The probate court, in August 1999, confirmed the Agreement *re* Creditor's Claim, and Plaintiff continued receiving sums pursuant to the MSA. ¶¶ 24-25. Pursuant to the probate court's order, the residue would be distributed to Sonny's heirs, namely Mary, Chesare Bono, Chianna Bono, Christy Bono, and Chaz Bono (née Chastity Bono) (together, the "Heirs"). ¶ 24.

In or about 2016, a majority of the Heirs issued a notice of termination pursuant to 17 U.S.C. § 304(c) to various music publishers or other companies to whom Sonny

---

[3] The MSA is attached as Exhibit A to Defendant Mary Bono's Request for Judicial Notice in Support of Motion to Dismiss the Complaint (the "Request for Judicial Notice"), which is filed concurrently herewith.

[4] Prior to this litigation, as part of Cher's sale of her interest in musical compositions and other assets to an unrelated third party, Cher asked Mary to agree that Cher possessed an ownership interest in the musical compositions authored by Sonny contrary to the plain language of the MSA, presumably to try to take advantage of the lower tax rate provided for by such a reclassification. Cher now concedes that she was granted only a royalty interest. *See* Compl. 5:4-5, 6:12-13, 9:14-16; 15:25-17:2, 17:8-21, 18:12-21, 18:25-27; *see also id.* ¶¶ 10-11, 16-17, 19, 22-23, 25-26, 31, 35-37, 41-42, 48, 50.

[5] "Representative Bono" is the proper form of address. However, both Mary Bono and Sonny Bono were members of the U.S. House of Representatives, and so Representative Mary Bono is referred to herein as "Mary" to avoid confusion.

[6] The role of Cher and Mary as trustees of their respective trusts is irrelevant for all purposes of this motion. As in the Complaint, references to Cher and Mary are to them both individually and in their role, if any, as trustee.

had granted a transfer or license of copyright, or rights under them, in musical compositions authored or co-authored by Sonny, with effective dates of termination ranging from 2018 to 2026.[7] ¶ 33. By law, the earliest any notice could have been served is 2008, approximately ten years after Sonny's death. 17 U.S.C. § 304(c)(4)(A) (a notice of termination may not be sent more than ten years before the termination date); *see also Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983 (9th Cir. 2008).

Cher asserts claims for declaratory relief as to the effect of the Heirs' Section 304(c) termination on Plaintiff's rights under the MSA (¶¶ 39-44) and for breach of contract (¶¶ 45-50). She claims that "even if, and to the extent that, the Heirs § 304(c) notice of termination is valid and effective" the notice has no effect on her right to royalties from the subject copyrights. ¶ 41; *see also* ¶ 42 ("Plaintiff further contends that, despite the Heirs' notice of termination, Plaintiff, individually or as the Trustee of The Veritas Trust: (a) Continues to own and owns an undivided fifty percent of the Royalties, from any and all sources, including whether those sources are music publishers or other companies identified in the Heirs' notice of termination or others taking their place upon termination of Sonny's grants to them").

## III.  DISCUSSION

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6) a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of this is to "give fair notice of what the claim is and the grounds upon which it rests" and to "enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011);

---

[7] The notice of termination is attached as Exhibit B to the Request for Judicial Notice.

*Twombly*, 550 U.S. at 555. A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When determining whether a pleading adequately states a plausible claim for relief, the court must first take "note of the elements a plaintiff must plead to state a claim" and then undergo a two-prong approach. *Iqbal*, 556 U.S. at 675. First, the courts identify which statements in the complaint are factual allegations and which are legal conclusions. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation" or "a formulaic recitation of the elements of a cause of action." *Id.* at 678.

Second, the Court decides whether, in the specific context of the case, the factual allegations, if assumed true, allege a plausible claim. *Id.* at 679. The factual allegations that are taken as true "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Accordingly, the plaintiff must plead "plausible grounds to infer" that her or his claims rise "above the speculative level." *Twombly*, 550 U.S. at 555-56. A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(6) may be granted if a court concludes that the plaintiff has failed to allege facts, as opposed to statements of law, sufficient to provide a defendant fair notice of the basis for a claim and grounds upon which it rests. *Twombly*, 550 U.S. at 555 (citation omitted). Rule 12(b)(6) must be read in conjunction with Rule 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In doing so, "[e]ach allegation must be simple, concise and direct." Fed. R. Civ. P. 8(d)(1). Under Rules 12(b)(6) and 8(a)(2), dismissal is proper for "an absence

of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### A.   THE FIRST COUNT SHOULD BE DISMISSED BECAUSE THE TERMINATION PROVISIONS OF THE FEDERAL COPYRIGHT ACT PREEMPT ANY STATE LAW CONTRACT CLAIM.

#### 1.   The Copyright Terminations

The works at issue – musical compositions and sound recordings – are subject to the Copyright Act. 17 U.S.C. § 102(a) (copyright law protects "original works of authorship" which include "musical works, including any accompanying words … [and] sound recordings"). A copyright interest is considered a "personal property" asset that may be transferred in whole or in part by any means of conveyance or by operation of law, may be bequeathed by will, or may pass as personal property by the applicable laws of intestate succession. § 201(d)(1). In this case, there are three relevant grants of copyright that are governed by state law, either under state contract law or state intestate succession law. First, Sonny granted his copyright interests to music publishers and other companies prior to 1978, which were the grants Sonny's Heirs later terminated. ¶ 36. Second, Sonny granted part of his remaining copyright interest – specifically, a fifty percent royalty interest – to Cher pursuant to the 1978 MSA. ¶ 13 (noting that the MSA "is expressly governed by California law and was subsequently approved by the California Superior Court in their marital dissolution action."). Third, Sonny's remaining copyright interests passed upon his death pursuant to California's intestacy laws to his widow and four adult children. *See* Cal. Probate Code §§ 6400-6414.

The copyright terminations at issue are, in contrast, a statutory creation of Congress. They are intended to allow authors and their heirs to recapture the ownership and value of any copyright that they bargained away years earlier. Under the Copyright Act of 1909, a copyright consisted of two 28-year terms. Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT ("NIMMER") § 9.08. When the

first term expired, the author could apply to renew the copyright for a second term.
The purpose of this renewal process was to grant authors and their families a second
opportunity to market their works after an original transfer of copyright, when they
might be in a better bargaining position and have a better sense of the economic value
of the work. 3 NIMMER § 11.01[A]. This purpose was largely frustrated by *Fred
Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643 (1943), wherein the Supreme
Court held that an author could assign her or his renewal copyright at any time,
including at the time of the original grant and before the renewal could be secured.
*See also* 3 NIMMER § 11.01[A].

In the Copyright Act of 1976, Congress extended the term of copyright and
enacted the current termination provisions essentially to overturn *Fred Fisher* and
ensure that authors and authors' heirs, not grantees, would benefit from this extended
term. *See Classic Media*, 532 F.3d at 984 ("The 1976 Act, and in particular its twin
termination of transfer provisions, were in large measure designed to assure that its
new benefits would be for the authors and their heirs. Thus, with the termination of
transfer provisions, authors or their heirs are able to negotiate additional
compensation for previously granted rights. Without such a right of termination, the
Extended Renewal Term would constitute a windfall to grantees.").

### 2. The Termination Right is Broad and Inalienable, and Supersedes Any Agreement to the Contrary, Including the MSA

The termination right is broad: "Termination of the grant may be effected
***notwithstanding any agreement to the contrary***, including an agreement to make a
will or to make any future grant." 17 U.S.C. § 304(c)(5) (emphasis added); *see also*
§ 203(a)(2)(B) (similar language); *Classic Media*, 532 F.3d at 983 ("Under 17 U.S.C.
§ 101, the term 'including' is 'illustrative' not 'limitative' and thus we must interpret
the term 'agreement[s] to the contrary' under § 304(c)(5) as inclusive of agreements
other than the two examples Congress explicitly mentioned."); *id.* at 985 (noting the
"broadly worded 'notwithstanding any agreement to the contrary' proviso");

3 NIMMER § 11.02[A] ("A 'transfer' [which may be terminated] includes not only assignments … but also any other conveyance of copyright or of any exclusive right comprised in a copyright."). The only grant that cannot be terminated is a grant by will, which is not at issue here. 17 U.S.C. § 304(c)(2)(B).

In 1998, Congress reaffirmed its approach, as summarized succinctly by the Ninth Circuit in *Classic Media*:

> In 1998, Congress reaffirmed its objectives with respect to the 1976 Act's termination provisions. The Sonny Bono Copyright Term Extension Act of 1998, effective October 27, 1998, extended the term of protection for works created prior to January 1, 1978 from 75 to 95 years. 17 U.S.C. § 304(d). This term extension was intended, once again, to benefit authors and their heirs, and not to serve as a windfall for grantees. Accordingly, Congress coupled the extended term with a new termination right for authors and their statutory heirs, provided they had not already exercised their termination right under § 304(c). The same broadly worded "notwithstanding any agreement to the contrary" proviso in § 304(c)(5) applies to the termination provision in the Sonny Bono Copyright Term Extension Act. See *id*. § 304(d)(1); *see also* 3 NIMMER § 9.11[B][1], pp. 9–152 to 9–153.

532 F.3d at 985. "The 1976 Copyright Act provides a single, fixed term, but provides an inalienable termination right." *Stewart v. Abend*, 495 U.S. 207, 230 (1990) (citing 17 U.S.C. §§ 203, 302); *see also Classic Media*, 532 F.3d at 985 (applying this quote from *Stewart*, as it applies to § 203, to the identical language of "its close counterpart," § 304(c)); *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 684 (2d Cir. 1993) ("there is a strong presumption against the conveyance of renewal rights") (citing 2 NIMMER § 9.06[A] at 9–71 to 9–72; *Fred Fisher*, 318 U.S. 643). Termination rights are inalienable until the author or the author's heirs serves the notice of termination or, in certain situations, has the right to serve such notice. 17 U.S.C. §§ 203(b)(4) and 304(c)(6)(D); *Classic Media*, 532 F.3d at 987 (discussing the "distinct factual scenario" of *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005) (further grant to original grantee's successor is effective where heir had the right to serve a termination notice)).

### 3.    The Heirs Had and Have the Sole Right to Terminate Sonny's Original Grants, and All Terminated Rights Revert to Them

Where an author has died, as here, "his or her termination right is owned, and may be exercised … by the widow … and [t]he author's surviving children." 17 U.S.C. § 304(c)(2); *see also Classic Media*, 532 F.3d at 983 ("The Act also created a right of termination, under § 304(c), which allows an author, if he is living, or his widow and children, if he is not, to recapture, for the Extended Renewal Term, the rights that had previously been transferred to third parties."); *Brown-Thomas v. Hynie*, Case No. 2:18-cv-00307-SVW-JPR, 2018 WL 3811353, at *1 (C.D. Cal. Aug. 7, 2018) ("A previous spouse is not entitled to termination interests."). The right to terminate the grant of copyrights at issue in this case was inalienable until at least 2008, as discussed above, and was held exclusively at that time, and subsequently, by the Heirs. *See* ¶ 33; 17 U.S.C. § 304(c)(2); *Classic Media*, 532 F.3d at 984. Unlike in *Milne*, there is no dispute that, but for the Heirs' termination notice, Sonny's original grants to the music publishers would remain in effect. *Cf. Milne,* 430 F.3d at 1041 ("the parties' 1983 agreement itself revoked the grant of rights under the 1930 agreement"); *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200 (2d Cir. 2008) ("the 1994 Agreement [between the author's widow and Penguin, the publisher,] terminated and superseded the 1938 Agreement [between the author and Penguin]"). As discussed above, the Heirs' right to terminate could not have been, and was not, affected by the MSA. All terminated rights revert solely to the Heirs – Sonny's four children and Mary. 17 U.S.C. § 304(c)(6).

### 4.    The MSA Cannot Affect the Heirs' Rights to Terminated Copyrights

The plain language of Section 304 provides that a grant of a transfer or licenses "otherwise than by will" may be terminated by the author's surviving children and/or widow/widower. 17 U.S.C. § 304(c)(2)(B). "Otherwise than by will" is the only limitation on the type of grant that can be terminated. Section 304 further clarifies

this limitation in a later subsection: "Termination of the grant may be effected ***notwithstanding any agreement to the contrary***, including an agreement to make a will or to make any future grant." § 304(c)(5) (emphasis added). This means that future grants of a transfer or license of musical compositions authored by Sonny, such as for use in film and television, under the Copyright Act,[8] are controlled by the Heirs, rather than the music publishers whose grants were terminated; all of the benefits thereof, including the economic benefits, flow entirely to the Heirs rather than those music publishers, regardless of the MSA. This right and benefit is held by the Heirs individually, and Cher has no right thereto.

Cher's claim appears to be that, because the MSA was not terminated,[9] she continues to enjoy all of the same rights to all of the same royalties that she enjoyed prior to the terminations. This is wrong. Termination rights belong to the statutory beneficiaries, and the terminated rights revert only to the statutory beneficiaries, notwithstanding any agreement to the contrary, including the MSA. Before the statutory termination rights ripened, Sonny – and later Mary, as administrator of Sonny's estate – could assign or license almost any right under Sonny's copyrights. Neither Sonny nor Mary as administrator of Sonny's estate could, however, eliminate or affect the future termination rights through an agreement. § 304(c); *see also* § 203(a). Sonny could grant Cher his then-current rights, including a fifty percent royalty interest in his copyrights. Sonny could not, however, have signed away his Heirs' future rights of termination for two independent reasons. First, Congress limited an author's ability to sign away his or her termination rights, including in this situation, as discussed previously. *See Classic Media*, 532 F.3d at 985 ("the clear Congressional purpose behind § 304(c) was to prevent authors from waiving their

---

[8] Foreign copyrights are understood not to be terminated, so those continue to be held by those original music publishers, and Cher continues to receive her royalty interest for those rights pursuant to the MSA. This has never been in dispute and the parties, through counsel, agreed on this point prior to the litigation.

[9] The parties agree that the MSA was not terminated by the copyright termination notice. The dispute is whether the terminated copyrights are subject to the MSA.

1   termination right by contract") (quoting *Marvel Characters Inc. v. Simon*, 310 F.3d

2   280, 290 (2d Cir. 2002) (citing *Stewart*, 495 U.S. at 230)).

3       Second, Sonny did not have those rights to give away. Even if, *arguendo*, the

4   MSA were not disregarded because it is an "agreement to the contrary," it is

5   inapplicable as a matter of contract law, because the reverted copyrights belong to

6   the Heirs individually, and no Heir was a party to the MSA. 17 U.S.C. § 304(c)(6);

7   *see, e.g.*, *Hays v. Temple*, 23 Cal. App. 2d 690, 694 (1937) (an individual who is not

8   a party to a contract cannot be bound by that contract); *see also* ¶¶ 14-16 ("Sonny

9   assigned to Plaintiff . . ."), ¶ 17 ("Sonny also agreed to account . . ."). Cher notes that

10  the MSA binds both Sonny's and Cher's "respective heirs and assigns." ¶ 18.

11  However, that only applies to property and claims that are the subject of the MSA

12  and cannot bind the Heirs on matters and property that fall outside the MSA, such as

13  the copyrights that are subject to the termination notice.

14
15          **5.**    **The Heirs' Termination Rights Have Supremacy Under Federal Law**

16      As Cher admits, "federal principles should control the claim." ¶ 1. As

17  discussed above, however, under a plain reading of the Copyright Act's termination

18  provisions, the Heirs' own all rights and benefits to the terminated copyrights and her

19  claim must be dismissed. Cher's claim instead relies on state contract or community

20  property laws trumping the federal Copyright Act's termination provisions. *See, e.g.*,

21  ¶¶ 41(e) ("Plaintiff's fifty percent ownership of Record Royalties, Musical

22  Compositions, and Composition Royalties arose under State law and … are not

23  subject to § 304(c) termination") and 41(f) ("Sonny's assignment to Plaintiff in the

24  Marriage Settlement Agreement of an undivided fifty percent ownership of the

25  Royalties is not a grant of renewal copyrights or rights that arise under the Copyright

26  Act and, for that additional reason, is not subject to § 304(c) termination"). This

27  approach, however, also fails because the detailed and specific termination

28  provisions of the Copyright Act preempt any state law that would hinder the Heirs'

1   termination rights.

2       The Supremacy Clause of the Constitution provides that federal law "shall be

3   the supreme Law of the Land." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010)

4   (quoting U.S. Const. art. VI, cl. 2). "Federal preemption occurs when: (1) Congress

5   enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts

6   with federal law; or (3) federal law occupies a legislative field to such an extent that

7   it is reasonable to conclude that Congress left no room for state regulation in that

8   field." *Id.* (quoting *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000));

9   *Goldstein v. California*, 412 U.S. 546, 561 (1973) (quoting *Hines v. Davidowitz*, 312

10  U.S. 52, 67 (1941) (state law is preempted by federal law when "(the state) law stands

11  as an obstacle to the accomplishment and execution of the full purposes and

12  objectives of Congress."). The Supreme Court has repeatedly held that federal law

13  preempts state law on family matters. *See, e.g.*, *Boggs v. Boggs*, 520 U.S. 833 (1997)

14  (ERISA preempted Louisiana community property laws); *McCarty v. McCarty*, 453

15  U.S. 210 (1981) (military retirement benefits are not divisible in state court decrees

16  as community property, though Congress later overcame this preemption with a new

17  law after the case was decided, as discussed in *Howell v. Howell*, 137 S. Ct. 1400,

18  1403-04 (2017)); *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979) (Railroad

19  Retirement Act benefits are not divisible in state court decrees as community

20  property, though Congress later overcame this preemption with a new law after this

21  case was decided, as discussed in *Rodrigue v. Rodrigue*, 55 F. Supp. 2d 534, 539

22  (E.D. La. 1999), *rev'd*, 218 F.3d 432 (5th Cir. 2000)); *Free v. Bland*, 369 U.S. 663

23  (1962) (rejecting wife's community property claim to one-half the proceeds of a life

24  insurance policy her husband, a deceased Army officer, had purchased during their

25  marriage under a federally assisted program for members of the military); *Wissner v.*

26  *Wissner*, 338 U.S. 655 (1950) (federal law governs ownership of benefits from

27  veteran's life insurance policy).

28

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

- 11 -

MEMO ISO MOT. TO DISMISS
2:21-CV-08157 JAK (RAOX)

The Copyright Act contains an explicit preemption clause, which provides that all legal and equitable rights that "come within the subject matter of copyright . . . are governed exclusively by this title" and that no one "is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a); *see also* 3 NIMMER § 11.07[D][3] (elevating state law over federal copyright law "guarantees . . . inconsistent results, encourages strategic forum shopping, and conflicts with federal policy pre-empting state laws that interfere with federal copyright mandates and protections"); U.S. Const. art. I, § 8, cl. 8 (Constitutional basis for the Copyright Act). In addition, the detailed and specific termination procedures set forth in Sections 203 and 304 leave no doubt that Congress intended federal law to control copyright terminations – there is no room for state law to regulate copyright terminations.

a)   Any Claim of Rights as Community Property Fails.

Cher may argue that she has ownership rights in the copyrights as community property under California law and that the Copyright Act does not preempt those rights, based on *In re Marriage of Worth* 195 Cal. App. 3d 768 (Ct. App. 1987), and *Rodrigue v. Rodrigue*, 218 F.3d 432 (5th Cir. 2000). *See, e.g.*, ¶¶ 40-42 (alleging a continued claim to royalties and rights from the copyrights that were subject to termination based on state law rights, including in ¶ 41(a) that "The Heirs' notice[s] did not terminate, and could not have terminated, the Marriage Settlement Agreement or its recognition and confirmation of Plaintiff's community property" and in ¶ 41(e) that "The Marriage Settlement Agreement's recognition and confirmation of Plaintiff and Sonny's community property, including the Record Royalties, Musical Compositions, and Composition Royalties, is not a grant of renewal copyrights, or rights under renewal copyrights, and, instead, Plaintiff's fifty percent ownership of Record Royalties, Musical Compositions, and Composition Royalties arose under State law and, for that additional reason, are not subject to § 304(c) termination"). This argument has two fundamental and fatal flaws. First, the facts are

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

distinguishable: Neither *Rodrigue* nor *Worth* dealt with copyright terminations. Second, unlike the copyright issues in *Rodrigue* and *Worth*, state laws cannot be harmonized with the copyright termination provisions of the federal Copyright Act, and thus the federal law must preempt state law as to copyright terminations.

*In re Marriage of Worth* was among the first cases at the intersection between community property and federal copyright law. 195 Cal. App. 3d 768. When the parties in *Worth* divorced, the divorce decree stated that the royalties from certain books authored by the ex-husband during the marriage would be divided equally. *Id.* at 771. The ex-wife then sought a declaration that she would be entitled to one-half of the proceeds from a lawsuit regarding the books. *Id.* On appeal, the ex-husband argued that copyrights were not community property and that, under the Copyright Act, the copyrights belonged to him as the author. *Id.* at 776. There were no copyright terminations at issue or analyzed in *Worth*. The California Court of Appeal held that a copyright is "automatically transferred to both spouses by operation of California law of community property." *Worth*, 195 Cal. App. 3d at 774. The court further held that there was "no inconsistency between the federal Copyright Act and California's community property law so as to invoke the preemption doctrine." *Id.* at 778. Accordingly, the court affirmed the trial court's decision to award half of the economic proceeds of the litigation to the ex-wife. *Id.*[10]

The Fifth Circuit in *Rodrigue*, held that copyrights may be considered community property under Louisiana state law, granting an author's spouse an economic interest in copyrights created during the marriage. 218 F.3d at 442. Fundamental to its ruling was that such an interest "is consistent with both federal

---

[10] *Worth* has come under considerable criticism for failing to show proper deference to the Copyright Act and truly reconcile state law with the Copyright Act. *See, e.g.*, 1 NIMMER §§ 6A.03 (analysis and critique of *Worth*, including that it "leaves several questions unanswered") and 6A.04 (proposing alternatives to *Worth* and commenting that treating all spouses as co-owners of copyrights would be "a prescription of the worst disorder"); *Berry v. Berry*, 277 P.3d 968 (Haw. 2012) (describing *Worth's* analysis as "somewhat problematic" and "contradictory").

copyright law and Louisiana community property law and is reconcilable under both." *Id*. at 435. The Fifth Circuit spent considerable time reviewing the Sections 101, 106, 201(a), 301(a), 302(b) and 302 of the Copyright Act in determining that the state law was in harmony with the Copyright Act. *Id*. Notably absent from the case, and from the analysis, are copyright terminations under either Section 203 or Section 304. *Rodrigue*, like *Worth*, did not reach the copyright terminations at issue in this case.

Whether or not *Worth* remains good law or *Rodrigue* applies in the Ninth Circuit, applying the reasoning of *Worth* and *Rodrigue* – that a state community property law may govern copyrights only so long as it is reconcilable with the Copyright Act – to the current case leads to the inevitable conclusion that copyright terminations supersede any state law that would deprive the statutory heirs of an author of their right to terminate the author's previous grants and reclaim all the benefit thereof for themselves. *See* 1 NIMMER § 6A.03[C][1] ("According to the California court's analysis, *Worth* does not apply to contexts in which Congress itself has already negated co-ownership. Thus, given the deference paid to the federal scheme, California apparently would not even purport to extend its community property law to copyright renewals and terminations of transfer."). In addition, such state rights are in conflict with Congress' consistent position that an author's widow or widower and children, and not an ex-spouse, benefit from term extensions, renewals, and terminations.

> One question is whether application of state community property laws sufficiently injures the federal purpose regarding the rights of surviving nonauthor-spouses under the Copyright Act so as to justify pre-emption. The Copyright Act itself addresses rights of surviving spouses.
>
> In particular, Congress explicitly provided that as to works published (or registered while unpublished) before January 1, 1978, the renewal term therein can be claimed in the first instance by the author personally, and then only as a second resort by the "widow, widower, or children of the author, if the author be not living." Likewise, as to both pre- and post-1978 works, Congress explicitly provided that

terminations of any transfer may be effected in the first instance by the author, and only if the author is dead, by the widow or widower, children, and grandchildren. By negative implication, one can argue, Congress declined to provide further protection to authors' spouses. Accepting that interpretation, the congressional goal would be subverted by the community property scheme to the extent that it accords right to spouses in the renewal and termination-of-transfer contexts even during the authors' lifetimes, contrary to federal law.

1 NIMMER § 6A.03[C][1].

The economic and approval interest that Cher alleges, whether based on contract or community property rights, to the copyrights at issue in this litigation cannot be harmonized with the termination rights of the statutory successors, the Heirs. An economic or other interest in a copyright cannot revert to an author's statutory successors while being partly owned by the author's ex-spouse. Because state and federal law cannot both govern copyright terminations, the federal Copyright Act is supreme. *See, e.g.*, *Berry*, 277 P.3d at 988 (finding a divorce decree that gave the non-authoring spouse the "rights, title and interest to any copyrights" – not just a financial interest in the copyrights – violated the Copyright Act even under *Rodrigue*). A straightforward reading of the Copyright Act's termination provisions, and in particular the here-applicable Section 304, provides that the Heirs possess all rights, including all rights to royalties, to the copyrights that are subject to their termination notice. Cher's position would subvert Congress' intent in enacting the copyright termination provisions: to ensure that authors and authors' heirs, not grantees or ex-spouses, would benefit from the extended term of copyright. *See, e.g.*, *Classic Media*, 532 F.3d at 984. Both Congressional intent and the termination provisions of the Copyright Act, however, are clear: The Heirs own all rights to the copyrights whose grants they terminated. Cher's claim that her right to royalties survives the Heirs' termination notice fails as a matter of law.

## B.    THE COURT SHOULD DISMISS THE SECOND COUNT FOR BREACH OF CONTRACT.

Plaintiff's allegations of breach of contract are insufficient to state a claim for relief. Cher's breach of contract claim includes the claim that the Heirs' termination of copyright is a breach of the MSA. ¶¶ 45-48 (including the claim that "Refusing to pay to Plaintiff … her undivided fifty percent of Composition Royalties" is a breach of the MSA). For the same reasons discussed in the preceding sections, the Heirs' right to terminate under the Copyright Act preempts Cher's state law breach of contract claim. Therefore, her claim fails.

Other aspects of her breach of contract claim are improper, but they cannot be reached on a motion to dismiss. For example, Mary has always granted Cher a right to approve licenses of the musical compositions that are subject to the MSA. In another example of many, Cher entered into the Wixen administration contracts willingly, gained all the significant benefits thereof including a very substantial increase in licensing revenue, and did not give a notice to terminate them until after filing suit, which termination she concedes will not be effective until March 31, 2022. In addition, Cher's claims affect all of the Heirs' rights, so she will have to add all of the Heirs as defendants if she wishes to continue to pursue her groundless claims; her tactic of naming the other Heirs as Doe defendants is improper. Nonetheless, the validity of these aspects of her breach of contract claim is not properly before the Court on a motion to dismiss. Therefore, the breach of contract is properly dismissed at this stage without prejudice. Should Plaintiff choose to replead these claims, she should base her pleadings on actual facts so that the parties', and the Court's, time and effort is not wasted on matters that are not actually in dispute.

//

//

//

//

IV.  **CONCLUSION**

For the foregoing reasons, Representative Mary Bono respectfully requests that the Court dismiss with prejudice Plaintiff Cher's First Claim of Relief for Declaratory Relief as to Effect of 17 U.S.C. § 304(c) Termination on Plaintiff's Rights and dismiss without prejudice Plaintiff's Second Claim for Relief for Breach of Contract.

Dated: December 8, 2021          Respectfully submitted,

DONAHUE FITZGERALD LLP


By: /s/ Daniel J. Schacht
    Daniel J. Schacht
    Mario M. Choi
    Hayley M. Lenahan
    Attorneys for Defendant
    MARY BONO