DANIEL J. SCHACHT, #259717
dschacht@donahue.com
MARIO M. CHOI, #243409
mchoi@donahue.com
HAYLEY M. LENAHAN (*pro hac vice* forthcoming)
hlenahan@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone:  (510) 451-3300
Facsimile:   (510) 451-1527

Attorneys for Defendant
MARY BONO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHER, individually and as Trustee of The Veritas Trust,<br><br>Plaintiff,<br><br>v.<br><br>MARY BONO, individually and as Trustee of the Bono Collection Trust, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-CV-08157 JAK (RAOx)<br><br>**DEFENDANT MARY BONO'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Date:    April 11, 2022<br>Time:    8:30 a.m.<br>Judge:   Hon. John A. Kronstadt<br>Ctrm:    10B |

REPLY IN SUPPORT OF MOTION TO DISMISS                       No.  2:21-CV-08157 JAK (RAOx)

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. DISCUSSION ................................................................................................ 1

    A.    The First Count Should Be Dismissed Because Cher No Longer Has Royalty Or Approval Rights Related To The Grants Terminated By The Heirs .................................................... 1

        1.    The Heirs Properly Terminated the Grants and Now Own the Copyrights ............................................................. 1

        2.    The Right to Royalties Does Not Trump Termination Rights ................................................................................... 4

        3.    The MSA Was Not, and Did Not Need to Be, Terminated .............................................................................. 6

        4.    The Heirs' Termination Rights Preempt Cher's Contract Rights ..................................................................... 8

    B.    The Court Should Dismiss The Second Count For Breach Of Contract Without Prejudice ................................................................ 9

III. CONCLUSION .......................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Berry v. Berry*,
 277 P.3d 968 (Haw. 2012) ................................................................................. 9

*Broadcast Music, Inc. v. Hirsch*,
 104 F.3d 1163 (9th Cir. 1997) ........................................................................... 6

*Brown-Thomas v. Hynie*,
 No. 2:18-cv-00307-SVW-JPR, 2018 WL 3811353 (C.D. Cal. Aug.
 7, 2018) ............................................................................................................. 4

*Chae v. SLM Corp.*,
 593 F.3d 936 (9th Cir. 2010) ............................................................................. 8

*Classic Media, Inc. v. Mewborn*,
 532 F.3d 978 (9th Cir. 2008) ......................................................................... 3, 4

*Corcovado Music Corp. v. Hollis Music, Inc.*,
 981 F.2d 679 (2d Cir. 1993) .............................................................................. 3

*Durgom v. Janowiak*,
 74 Cal. App. 4th 178 (1999) .............................................................................. 6

*Fred Fisher Music Co. v. M. Witmark & Sons*,
 318 U.S. 643 (1943) .......................................................................................... 4

*Free v. Bland*,
 369 U.S. 663 (1962) .......................................................................................... 9

*Goldstein v. California*,
 412 U.S. 546 (1973) .......................................................................................... 9

*Hays v. Temple*,
 23 Cal. App. 2d 690 (1937) ............................................................................... 3

*Hines v. Davidowitz*,
 312 U.S. 52 (1941) ............................................................................................ 9

*Malinowski v. Playboy Enters., Inc.*,
 706 F. Supp. 611 (N.D. Ill. 1989) ..................................................................... 6

# TABLE OF AUTHORITIES

Page

*Milne v. Stephen Slesinger, Inc.*,
 430 F.3d 1036 (9th Cir. 2005) ................................................................... 3

*Ray Charles Foundation v. Robinson*,
 795 F.3d 1109 (9th Cir. 2015) ........................................................... 5, 6, 8

*Stewart v. Abend*,
 495 U.S. 207 (1990) ................................................................................... 3

*Tocher v. City of Santa Ana*,
 219 F.3d 1040 (9th Cir. 2000) ................................................................... 8

*Wissner v. Wissner*,
 338 U.S. 655 (1950) ................................................................................... 9

*Wolfe v. United Artists Corp.*,
 583 F. Supp. 52 (E.D. Pa. 1983) ................................................................ 6

*Yount v. Acuff Rose-Opryland*,
 103 F.3d 830 (9th Cir. 1996) ..................................................................... 5

**Statutes**

17 U.S.C. § 106 ................................................................................................ 9

17 U.S.C. § 203 ........................................................................................ 3, 5, 9

17 U.S.C. § 203(b)(4) ...................................................................................... 3

17 U.S.C. § 301(a) ........................................................................................... 8

17 U.S.C. § 302 ................................................................................................ 3

17 U.S.C. § 304 ....................................................................................... 1, 5, 7

17 U.S.C. § 304(c) ............................................................................ 1, 3, 4, 6, 10

17 U.S.C. § 304(c)(5) ...................................................................................... 2

17 U.S.C. § 304(c)(6) ............................................................................... 3, 4, 7

17 U.S.C. § 304(c)(6)(D) ................................................................................. 3

DONAHUE FITZGERALD LLP
ATTORNEYS AT LAW
OAKLAND

- iii -

REPLY ISO MOT. TO DISMISS
No. 2:21-cv-08157 JAK (RAOx)

# TABLE OF AUTHORITIES

**Page**

17 U.S.C. § 304(c)(6)(E) .................................................................................... 7

**Other Authorities**

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 11.01[A][4][b] ........................................................................................ 2, 4

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT
    § 11.02[A][4][b] ........................................................................................... 8

I.  **INTRODUCTION**

Plaintiff Cher's Memorandum of Points and Authorities in Opposition to Motion to Dismiss (the "Opposition") makes two points clear. First, the parties agree that this case is ripe for determination on a motion to dismiss, as there are neither factual disputes nor ambiguities at issue. Second, Cher's interpretation of the termination provisions of the Copyright Act is not only contrary to its text but would gut the protection that Congress intended for authors and their heirs.

When the Heirs[1] terminated Sonny's copyright grants under Section 304(c) in 2016, the copyrights reverted to them. Cher lost her rights to receive royalties and to approve third-party agreements related to those grants. This outcome is dictated both by the plain language of the Copyright Act and the intent of Congress in enacting it. Cher seeks to avoid this inevitable outcome by arguing that the Heirs are bound by an agreement – the MSA – to which they are not a party.

Cher's claim for declaratory relief must be dismissed with prejudice. Cher's second claim for breach of contract should also be dismissed because, and to the extent that, it incorporates her claim that her state law contract rights preempt Mary's termination rights pursuant to the Copyright Act.

II. **DISCUSSION**

    A.    **The First Count Should Be Dismissed Because Cher No Longer Has Royalty Or Approval Rights Related To The Grants Terminated By The Heirs.**

        1.    **The Heirs Properly Terminated the Grants and Now Own the Copyrights**

The plain language of Section 304 of the Copyright Act gives the Heirs the right to terminate the grants at issue regardless of the MSA. "Termination of the grant may be effected ***notwithstanding any agreement to the contrary***, including an

---

[1] The defined terms and abbreviations of Mary's Memorandum of Points and Authorities in support of the Motion to Dismiss (the "Motion") are carried forward herein.

agreement to make a will or to make any future grant." 17 U.S.C. § 304(c)(5) (emphasis added). Cher argues that "an 'agreement to the contrary' means an agreement not to effect a termination" and that "nothing in the MSA prevented the Heirs from terminating Sonny's grant of copyright rights to the music publishers." Opp'n at 12:15-16, 13:6-7. But if Cher truly believed that "nothing in the MSA prevented the Heirs from terminating Sonny's grant of copyright rights to the music publishers," then this litigation would not exist. Cher's entire action is based on the premise that the MSA was effectively an agreement not to terminate the copyrights.

Sonny could not have given away future rights of termination through the MSA. He could only give Cher the right to royalties and approval rights for the grants to the extent that the grants were in effect. Nimmer addresses this point in a similar example:

> Suppose that author *A* grants copyright in his work to *B*, and *B* in turn grants such copyright to *C*. *A* clearly has a right of termination against *B*. Because the grant to *C* was executed neither by the author, nor by a renewal claimant, it might be argued that no statutory right of termination exists against *C*. Even if this were true, it would not mean that *C* might continue to enjoy the benefit of his grant from *B* although *B*'s rights had been terminated by *A*. ***C*'s rights would be cut off simply because he can succeed to no greater rights than *B* had the power to convey.** Without *A*'s grant to *B*, *C* would be an infringer of *A*'s copyright. If the original grant from *A* to *B* had by its terms provided for a reversion to *A* thirty-five years after execution, *B* would lack the power to convey rights to *C* beyond such thirty-five-year period. **The fact that reversion from *B* to *A* occurs by operation of law rather than by the express terms of the grant to *B* does not enlarge the rights that *B* can convey to *C*.**

Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT ("NIMMER") § 11.01[A][4][b] (emphasis added). The example illustrates that a third-party's rights that stem from a grant of a copyright are limited by the terms of the grant, whether the limits are contractual or statutory. Further, Nimmer's comment that "it might be argued that no statutory right to termination exists against *C*" because "the grant to *C* was [not] executed by the author" indicates that there is no question that a later

grant to *C* by the author is subject to termination rights.

Cher incorrectly argues that the "heirs and assigns" language in the MSA means that the Heirs are bound by the MSA and cannot invoke their termination rights. Opp'n at 13. First, the Heirs cannot be bound by the MSA as they were not parties to the MSA. 17 U.S.C. § 304(c)(6); *see, e.g.*, *Hays v. Temple*, 23 Cal. App. 2d 690, 694 (1937) (an individual who is not a party to a contract cannot be bound by that contract). Second, the MSA only applies to property and claims that are the subject of the MSA. Third, the Heirs' termination rights cannot be waived by the MSA because they are inalienable rights. *See Stewart v. Abend*, 495 U.S. 207, 230 (1990) (citing 17 U.S.C. §§ 203, 302) ("The 1976 Copyright Act provides a single, fixed term, but provides an inalienable termination right."); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 985 (9th Cir. 2008) (applying this quote from *Stewart*, as it applies to § 203, to the identical language of "its close counterpart," § 304(c)); *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 684 (2d Cir. 1993) ("there is a strong presumption against the conveyance of renewal rights"). The Opposition fails to address the simple and determinative point that termination rights are inalienable until the author or the author's heirs serves the notice of termination or, in certain situations, has the right to serve such notice. Mot. at 7:23-28 (citing 17 U.S.C. §§ 203(b)(4) and 304(c)(6)(D); *Classic Media*, 532 F.3d at 987 and *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005)).

Cher also argues that Mary somehow waived the Heirs' termination rights by approving Cher's creditor claims as administrator of Sonny's estate. Opp'n at 13. That is also wrong. Around July 1999, Mary, *in her capacity as administrator of Sonny's estate*, and Cher settled Cher's claims against Sonny's estate. Compl. ¶ 23. The agreement confirmed Plaintiff's "ongoing rights under the terms and conditions of the [MSA]," and the parties agreed to "cooperate in developing a mutually acceptable mechanism for the collection and proper disbursement of such royalties to Cher and to the heirs after the closing of this estate." *Id*. By properly administering

her husband's estate, Mary did not also agree to waive her personal termination rights.

Termination rights belong to the statutory beneficiaries, and terminated rights revert to the statutory beneficiaries, notwithstanding any agreement to the contrary. *Brown-Thomas v. Hynie*, No. 2:18-cv-00307-SVW-JPR, 2018 WL 3811353, at *1 (C.D. Cal. Aug. 7, 2018) ("A previous spouse is not entitled to termination interests."). By notifying the grantees of the termination, the Heirs properly terminated the grants. 17 U.S.C. § 304(c). As a result, the copyrights subject to the termination notice, and all rights that flow from those copyrights, including all rights to royalties, revert to the Heirs. 17 U.S.C. § 304(c)(6). Cher no longer has approval or royalty rights to the copyrights that are owned by the Heirs, who were never parties to the MSA.

**2. The Right to Royalties Does Not Trump Termination Rights**

In her Opposition, Cher is effectively arguing that the grants at issue can never be terminated under federal law because she is entitled to their royalties under a contract controlled by state law. *See* Opp'n at 9-11. The parties agree that the MSA is a contract under California law, but not that Cher's right to royalties exists under state law alone. If a grant of copyright royalties under state law was treated differently from the grant of copyright under federal law for the purpose of copyright termination, the termination provisions of the Copyright Act would be gutted.

Congress' intent in enacting the copyright termination provisions was to allow authors and their heirs to recapture the ownership and economic value of any copyright that they bargained away years earlier. *Classic Media*, 532 F.3d at 984; NIMMER § 11.01[A]. Cher is a sympathetic party – a brilliant actress and singer, beloved by millions, who played an integral role in Sonny's success. But her legal position is one that would frustrate the purpose of the termination provisions of the Copyright Act of 1976, much like *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643 (1943), frustrated the termination provisions of the Copyright Act of 1909.

*See* Mot. at 5:24-6:18. Cher's interpretation of the law would allow a publisher to simply evade the termination provisions of the Copyright Act by including a separate clause assigning royalties to the publisher. Indeed, if the terminable rights were limited to the enumerated rights of the Copyright Act, then publishers could eviscerate the termination provisions through such simple schemes, leaving authors and their heirs with worthless copyrights which bear no additional royalties and whose every use must be approved by the publisher. This cannot be the result.

*Ray Charles Foundation v. Robinson,* 795 F.3d 1109, 1119 (9th Cir. 2015), is on point here. During his career, Ray Charles entered into contracts with music publishers that gave the publishers copyright interests and Charles advance payments and future royalties for his music. *Id.* at 1111-12. When Charles died in 2004, Charles granted the royalties to The Ray Charles Foundation in his will. *Id.* at 1112. Charles's statutory heirs later filed notices to terminate the copyright grants under Sections 203 and 304. *Id.* at 1113-14. The Ray Charles Foundation sought a ruling on the validity and effectiveness of the termination notices. *Id.* at 1114. The district court initially granted a motion to dismiss for lack of standing, which the Ninth Circuit reversed. *Id.* at 1115-16. The Ninth Circuit ruled that the nonprofit had third-party standing and let the case proceed, noting: "Termination, if effective, would directly extinguish the Foundation's right to receive prospective royalties from the current grants." *Id.* at 1124. Here, as the Heirs properly issued termination notices,[2] Cher's rights related to the terminated grants are extinguished.

Cher cites to a series of cases to argue that any case involving a contractual assignment of royalties from copyrights grants is exclusively a state law matter. *See* Opp'n at 9-11. This is a far too broad reading of those cases. It is true that an action involving a contract assigning royalties *might* not have a connection to federal copyright law. *See, e.g.*, *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834 (9th Cir.

---

[2] Cher does not claim that the notices are defective. Compl. ¶¶ 33, 41-42.

1996); *Broadcast Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997). For example, failure to pay royalties or meet other contractual requirements will typically be matters of breach of contract under state law, as they require no interpretation of federal law. *See, e.g.*, *Malinowski v. Playboy Enters., Inc.*, 706 F. Supp. 611, 615 (N.D. Ill. 1989); *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 56 (E.D. Pa. 1983); *Durgom v. Janowiak*, 74 Cal. App. 4th 178, 186 (1999). In other situations, however, a case regarding copyright royalties involves federal law. If the issue is whether royalties are terminated under the Copyright Act, as here, then federal law must apply.

In *Ray Charles Foundation*, for example, not only did the Ninth Circuit apply federal law to a copyright royalties contract case, the Ninth Circuit found that the third party receiving royalties could bring a claim under federal copyright law, even though "the Foundation [was] not a party expressly mentioned in the termination statute." 795 F.3d at 1123.

> [W]hether the Foundation's interests are explicitly identified in the statute is not dispositive. Instead, the central question is whether the Foundation alleges injuries "to precisely the sorts of ... interests the Act protects." … [T]he Foundation alleges injury to its interest in continuing to receive the royalty stream generated by Charles's works, which is the same interest that the Terminating Heirs seek to redirect to themselves. This interest is the one Congress contemplated, regulated, and protected in enacting the termination provisions.

*Id.* The same rationale applies here. This case is not a simple matter of contract interpretation. It is fundamentally about whether the termination provisions of the Copyright Act are effective or whether they are circumvented.

### 3. The MSA Was Not, and Did Not Need to Be, Terminated

Cher also argues that termination is "limited to certain types of grants" under the Copyright Act. Opp'n. at 7:7. However, Section 304(c) provides that statutory heirs may terminate "the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978." 17

U.S.C. § 304(c). Section 304(c)(6)(E) provides that "[t]ermination of a grant under this subsection affects only those rights covered by the grant that arise under the title, and in no way affects rights arising under any other Federal, State, or foreign laws." § 304(c)(6)(E). Cher fails to argue how the termination of the grants in the termination notice was flawed under these provisions. Instead, she focuses on arguing that these provisions do not allow the MSA to be terminated. Indeed, Cher goes on to argue that the "Motion should be denied [because] Ms. Bono never even purported to terminate the MSA or any of its provisions." Opp'n at 7:22-23; *see also id.* at 8:6-11 (noting that Section § 304 does not apply to grants executed after January 1, 1978).

But Mary has consistently taken the position, and there is no dispute to the contrary, that the MSA has not been terminated.[3] *See* Mot. at 9 n.9. The issue is whether Mary and the Heirs have the right to terminate under the relevant provisions of the Copyright Act. The termination notice, which is attached as Exhibit B to Defendant Mary Bono's Request for Judicial Notice in Support of Motion to Dismiss the Complaint, was sent to multiple grantees who secured copyrights from Sonny during his lifetime. Under the MSA, Cher was entitled to certain royalties from Sonny's grants. Once the Heirs exercised their right to terminate the grants listed in their notice, there were no more royalties from those grants to pay to Cher. The copyrights reverted to the Heirs under the Copyright Act and are no longer subject to the MSA. 17 U.S.C. § 304(c)(6). Cher continues, however, to receive royalties – and retain other contractual rights such as approval rights – for copyrights that have not been terminated, like foreign copyrights. Mot. at 9 n.8.

---

[3] Cher inaccurately claims that Mary took the position that "[t]he Heirs' termination of the grants to the music publishers ... somehow ended Cher's ownership of 50% of the royalties under the MSA and Cher's approval rights" or "terminated Cher's state-law rights under the MSA" and that "the Bono Collection Trust will no longer pay or account to Cher for her respective interests under the MSA." Opp'n at 4:14-19; 18:6-7. As discussed herein, the MSA remains in effect and Cher continues to receive the royalties she is owed, and exercise approval rights, for non-terminated copyrights.

### 4. The Heirs' Termination Rights Preempt Cher's Contract Rights

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (quoting *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000)). The Copyright Act explicitly pre-empts state law, providing that all legal and equitable rights that "come within the subject matter of copyright ... are governed exclusively by this title" and that no one "is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). Agreeing with Mary that the community property laws are irrelevant in this case, Opp'n at 19-20, Cher instead argues that her alleged rights are not "within the subject matter of copyright" because her royalty and approval rights arise under state law and because the Copyright Act does not "identify royalty or approval rights as within the subject matter of copyright act." Opp'n at 16:1-10. But Cher's royalties and approval rights are within the "general scope of copyright" because they are based on grants from copyright. *Id.*; *see also* 3 NIMMER § 11.02[A][4][b] (rights of assignee to grant were limited to rights assignor received from author, including statutory termination rights). Further, the Ninth Circuit held in a similar situation that a third party receiving royalties who "was not expressly mentioned in the termination statutes" had standing to challenge a termination notice because that party was alleging injury to its interest in the royalties, the same interest that the terminating heirs sought through its termination notice. *Ray Charles Found.*, 795 F.3d at 1123. The right to royalties thus was an interest "Congress contemplated, regulated, and protected in enacting the termination provisions." *Id.* Just as the right to royalties is the economic heart of copyright law, the right of approval – the right to permit or deny others the right to copy work – is the heart of copyright itself. 17

U.S.C. § 106 ("the owner of copyright under this title has the exclusive rights to do ***and to authorize*** any of the [enumerated rights of copyright]") (emphasis added).

It is apparent from Sections 203 and 304 that Congress intended federal law to control copyright terminations—not state contract law. Thus, to the extent that California's contract law would prevent the Heirs from terminating the grants, the federal Copyright Act pre-empts it. *Goldstein v. California*, 412 U.S. 546, 561 (1973) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (state law is preempted by federal law when "(the state) law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); *Berry v. Berry*, 277 P.3d 968, 988 (Haw. 2012) (finding a divorce decree that gave the non-authoring spouse the "rights, title and interest to any copyrights" in violation of the Copyright Act); *see also, e.g.*, *Free v. Bland*, 369 U.S. 663 (1962) (rejecting wife's community property claim to one-half the proceeds of a life insurance policy her husband, a deceased Army officer, had purchased during their marriage under a federally assisted program for members of the military); *Wissner v. Wissner*, 338 U.S. 655 (1950) (federal law governs ownership of benefits from veteran's life insurance policy).

### B. The Court Should Dismiss The Second Count For Breach Of Contract Without Prejudice.

In the second count, Cher claims that the termination was a breach of the MSA. Compl. ¶¶ 45-48. She seeks a declaration, *inter alia*, that she is entitled to royalties under the MSA and is suing for breach of contract for the Heirs' failure to pay her those royalties. *See* Compl. ¶¶ 39-50. For the same reasons previously discussed in this brief and in the Motion, the MSA cannot prevent the Heirs from terminating and claiming ownership in the underlying copyrights. Cher's breach of contract claim under California law is pre-empted by the Heirs' termination rights from the Copyright Act. Accordingly, the second count should also be dismissed.

## III. CONCLUSION

For the foregoing reasons, Representative Mary Bono respectfully requests that the Court dismiss with prejudice Plaintiff Cher's First Claim of Relief for Declaratory Relief as to Effect of 17 U.S.C. § 304(c) Termination on Plaintiff's Rights and dismiss without prejudice Plaintiff's Second Claim for Relief for Breach of Contract.

Dated: January 12, 2022          Respectfully submitted,

DONAHUE FITZGERALD LLP


By: /s/ Daniel J. Schacht
    Daniel J. Schacht
    Mario M. Choi
    Hayley M. Lenahan
    Attorneys for Defendant
    MARY BONO