Peter Anderson, Esq., Cal. Bar No. 88891
  peteranderson@dwt.com
Sean M. Sullivan, Esq., Cal. Bar No. 229104
  seansullivan@dwt.com
Eric H. Lamm, Esq., Cal. Bar No. 324153
  ericlamm@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Plaintiff
CHER, Individually and as
Trustee of The Veritas Trust

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CHER, individually and as Trustee of The Veritas Trust, <br><br> Plaintiff, <br><br> v. <br><br> MARY BONO, individually and as Trustee of the Bono Collection Trust, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:21-CV-08157 JAK (RAOx) <br><br> PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS <br><br> Date: April 11, 2022 <br> Time: 8:30 a.m. <br><br> Courtroom of the Honorable <br> John A. Kronstadt <br> United States District Judge |

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| 1. | INTRODUCTION | 1 |
| 2. | THE HEIRS' TERMINATION OF SONNY BONO'S GRANTS TO THIRD PARTIES DOES NOT TERMINATE CHER'S RIGHTS UNDER THE MARRIAGE SETTLEMENT AGREEMENT | 1 |
|     | (a) Sonny's 1978 Assignment to Cher of 50% of His and Her Royalties Does Not Come within the General Scope of Section 304(c) | 1 |
|     | (b) The Heirs' Section 304(c) Notice of Termination Did Not Identify Cher's 1978 MSA and Was Not Served on Cher | 2 |
|     | (c) Section 304(c)'s Provision Regarding "Agreements to the Contrary" Is Irrelevant to the Complaint and this Action | 2 |
|     | (d) Section 304(c)(6)(E) Confirms the Heirs' Termination Does Not Affect Cher's Rights Under the MSA | 4 |
|     |    (1) Section 304(c)(6)(E) Expressly Limits Termination to "Only those Rights … that Arise Under [the Copyright Act]" | 4 |
|     |    (2) Section 304(c)(6)(E) Also Expressly Excludes from Termination "Rights Arising Under Any … State … Laws" | 5 |
|     |    (3) Section 304(c) Does Not Preempt Cher's State Law Rights Under the MSA | 6 |
|     |    (4) Ms. Bono's Reliance on *Ray Charles Foundation* Is Misplaced | 7 |
|     | (e) The Heirs' Termination of Sonny's Grants to Music Publishers Does Not Affect Cher's Right to 50% of the Royalties | 8 |
|     | (f) The Complaint Correctly Pleads that the Heirs Are Bound by Sonny's 1978 Assignment and Grant of Approval Rights | 9 |
|     | (g) The Court's Hypotheticals Demonstrate the Dangers in Defendant's Argument, Which Are Avoided by Recognizing that Termination Is Limited to Copyright Rights | 9 |
| 3. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broadcast Music, Inc. v. Hirsch*,
 104 F.3d 1163 (9th Cir. 1997) ................................................................. 1, 4

*Classic Media, Inc. v. Mewborn*,
 532 F.3d 978 (9th Cir. 2008) ....................................................................... 3

*Marvel Characters, Inc. v. Simon*,
 310 F.3d 280 (2d Cir. 2002) ........................................................................ 3

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.*,
 430 F.3d 1036 (9th Cir. 2005) ................................................................ 1, 3

*Oceanside 84, Ltd. v. Fid. Fed. Bank*,
 56 Cal. App. 4th 1441, 66 Cal. Rptr. 2d 487 (1997) ................................... 9

*Peer Int'l Corp. v. Pausa Recs., Inc.*,
 909 F.2d 1332 (9th Cir. 1990) ..................................................................... 6

*Ray Charles Found. v. Robinson*,
 795 F.3d 1109 (9th Cir. 2015) ................................................................ 7, 8

*Rey v. Lafferty*,
 990 F.2d 1379 (1st Cir. 1993) ..................................................................... 5

*Silvers v. Sony Pictures Ent., Inc.*,
 402 F.3d 881 (9th Cir. 2005) ....................................................................... 4

*Yount v. Acuff Rose-Opryland*,
 103 F.3d 830 (9th Cir. 1996) ............................................................. 5, 6, 7

**Statutes**

17 U.S.C.
 § 106 ............................................................................................................ 4
 § 304(c) ...................................................................................... 1, 2, 5, 6, 10
 § 304(c)(4) .................................................................................................. 2
 § 304(c)(5) .......................................................................................... 2, 3, 4
 § 304(c)(6)(4) ............................................................................................. 6

§ 304(c)(6)(E) .................................................................................. 4, 5, 6, 8, 10
§ 304(c)(6)(F) ....................................................................................................2

Copyright Act, 17 U.S.C. §§ 101 *et seq.* ................................................ 4, 5, 6, 8, 10

Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* ..................................................8

**Regulations**

37 C.F.R. § 201.4(a)(2)...................................................................................................4

37 C.F.R. § 201.10(b)(iv) ...............................................................................................2

**Other Authorities**

H.R. Rep. No. 94-1476 (1976) .......................................................................................6

M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT (2022)

    3 NIMMER ON COPYRIGHT § 11.01[B] ..................................................................6

    3 NIMMER ON COPYRIGHT § 11.02[B][1]............................................................5

    3 NIMMER ON COPYRIGHT § 11.06[A] ................................................................2

    3 NIMMER ON COPYRIGHT § 11.09......................................................................2

W. F. PATRY, PATRY ON COPYRIGHT (2020)

    3 PATRY ON COPYRIGHT § 7:46 ..........................................................................3

    3 PATRY ON COPYRIGHT § 7:48 ..........................................................................6

**SUPPLEMENTAL BRIEF**

**1.   INTRODUCTION**

Plaintiff Cher respectfully submits this Supplemental Brief regarding defendant Mary Bono's contention that the Heirs' Section 304(c)(4) termination of Sonny Bono's grants to third-party music publishers defeats Cher's rights under her and Sonny's August 10, 1978, Marriage Settlement Agreement ("MSA").  *See* Minute Order (Doc. 23).  As a matter of clear statutory language and established caselaw, Ms. Bono is wrong and her Motion to Dismiss Cher's Complaint must be denied.

**2.   THE HEIRS' TERMINATION OF SONNY BONO'S GRANTS TO THIRD PARTIES DOES NOT TERMINATE CHER'S RIGHTS UNDER THE MARRIAGE SETTLEMENT AGREEMENT**

While Cher addresses below the specific issues the Court raised at the hearing on Ms. Bono's Motion to Dismiss, "[i]n a copyright case, as in most cases, the language of the statute provides the starting point for [the Court's] analysis." *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

**(a)   Sonny's 1978 Assignment to Cher of 50% of His and Her Royalties Does Not Come within the General Scope of Section 304(c)**

Section 304(c) begins by providing for the termination, subject to specified conditions, of "the exclusive or nonexclusive grant of a transfer or license **[1]** of the renewal copyright or any right under it, **[2]** executed before January 1, 1978, . . . ." 17 U.S.C. § 304(c).  That provision excludes the MSA at the outset.

First, assignments of royalties, like those in the MSA, are <u>not</u> grants of a "renewal copyright or any right under it…." *Id.*; *see, e.g.*, *Broadcast Music, Inc. v. Hirsch,* 104 F.3d 1163, 1165, 1166 (9th Cir. 1997) ("[A]ssignments of … rights to receive royalty income from the performance of a copyrighted work" do "not transfer any interest in a copyright or in any of the exclusive rights comprised in a copyright.").  Neither are contractual approval rights.  *See below* at 5.  Second, the 1978 MSA was <u>not</u> "executed before January 1, 1978." 17 U.S.C. § 304(c); Compl. at 3, ¶ 13.

1

1   For those two reasons alone, the MSA does not even come within the scope of Section 304(c) and Cher's Complaint has properly pleaded that the Heirs' notice of termination does not affect her rights under the MSA.

### (b) The Heirs' Section 304(c) Notice of Termination Did Not Identify Cher's 1978 MSA and Was Not Served on Cher

Section 304(c) mandates that "termination shall be effected by serving an advance notice in writing upon the grantee or the grantee's successor in title." 17 U.S.C. § 304(c)(4); 3 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 11.06[A] (2022) ("Absent such service, no termination occurs."). Section 304(c) also mandates that "[t]he notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation." *Id.* at § 304(c)(4)(B). Those requirements include "reasonably identifying the grant to which the notice of termination applies;…." 37 C.F.R. § 201.10(b)(iv).

However, the Heirs' notice of termination was not served on Cher and also does not mention her MSA with Sonny. *See* Def's Req. for Jud. Notice (Doc. 18-2) ("Def's RJN") at 2, ¶ 2, Exh. B. As a result, even if Cher's rights under the MSA were subject to Section 304(c) termination – which they plainly are not – the Heirs failed to comply with that Section. *See* 3 NIMMER ON COPYRIGHT § 11.09 ("If those entitled to terminate a grant fail … to comply with the required formalities, no termination will occur [and t]he grant will continue in effect"); 17 U.S.C. § 304(c)(6)(F) ("Unless and until termination is effected under this subsection, the grant, if it does not provide otherwise, continues in effect for the remainder of the extended renewal term.").

For these additional reasons, Cher has properly pleaded that the Heirs' notice of termination does not affect her rights under the MSA.

### (c) Section 304(c)'s Provision Regarding "Agreements to the Contrary" Is Irrelevant to the Complaint and this Action

Section 304(c)(5) provides that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will

or to make any future grant." There is no merit to Ms. Bono's argument that Cher's Complaint fails because the MSA is an "agreement to the contrary" purporting to bar the Heirs from exercising termination rights.

Section 304(c)(5) is intended to prevent an author or statutory successor from contracting away the future right to terminate. *See Classic Media, Inc. v. Mewborn,* 532 F.3d 978, 983 (9th Cir. 2008) ("Congress enacted the inalienability of termination rights provision in § 304(c)(5) … to award to the author, and not to the assignee of the right to exploit the copyright during its initial term, the monetary rewards of a work that may have been initially undervalued, but which later becomes a commercial success."[1]); *see, also* 3 W. F. PATRY, PATRY on COPYRIGHT § 7:46 (2020) (under § 304(c)(5), "an author cannot agree to waive his or her termination right.").

To that end, Section 304(c)(5) prevents an author from agreeing to include a new grant in the author's will or by agreeing to re-grant the rights in the future, both of which would waive the author's right to terminate. 17 U.S.C. § 304(c)(5); *see also Classic Media,* 532 F.3d at 986 (heir's termination of 1976 grant could not be avoided by her 1978 agreement to again transfer those rights to grantee). Prohibited "agreements to the contrary" also include agreements to mischaracterize the work as a work for hire, as to which termination is not available. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 289-92 (2d Cir. 2002). However, Section 304(c)(5) does not "prohibit all contractual activity, only agreements that purport to waive terminat[ion] rights." 3 PATRY on COPYRIGHT § 7:46; *see, e.g., Milne,* 430 F.3d at 1043-45 (parties' 1983 agreement revoking and replacing 1930 grant not an "agreement to the contrary").

The MSA is not an "agreement to the contrary" because it did not waive any termination rights or otherwise prevent the Heirs from terminating the grants to music publishers. The MSA does not even mention termination rights. Neither does Cher's

---

[1]    Of course, the value of the musical compositions was already well known when Sonny and Cher entered into their 1978 MSA.

3

Complaint allege that the MSA bars the Heirs from exercising termination rights. For these reasons, Section 304(c)(5) is simply inapplicable.

### (d) Section 304(c)(6)(E) Confirms the Heirs' Termination Does Not Affect Cher's Rights Under the MSA

At the hearing, the Court correctly raised that a key to deciding Ms. Bono's Motion to Dismiss the Complaint is Section 304(c)(6)(E), which provides:

> "Termination of a grant under this subsection affects only those rights covered by the grant that arise under this title, and in no way affects rights arising under any other Federal, State, or foreign laws."

For the following reasons, this provision confirms Ms. Bono's Motion must be denied.

#### (1) Section 304(c)(6)(E) Expressly Limits Termination to "Only those Rights … that Arise Under [the Copyright Act]"

Section 304(c)(6)(E)'s express limitation that termination "affects only those rights covered by the grant that arise under [the Copyright Act]" confirms that the Heirs' termination does not affect Cher's rights. That is so because her rights arise from the MSA, not the Copyright Act.

The "only rights that exist under copyright law are those granted by statute." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 883-84 (9th Cir. 2005). The rights granted by the Copyright Act and applicable to music are the exclusive rights to reproduce the work, prepare derivative versions, publicly distribute copies, publicly perform the work, and publicly display the work. 17 U.S.C. § 106. But none of these are the rights that Cher raises in her Complaint.

Instead, Cher's rights to 50% of the royalties arise under the MSA and its equal division of her and Sonny's community property. Compl. at 4, ¶ 16; Def's RJN, Exh. A at 6-7, ¶ (10)(d). It is well-established that "[a]ssignments of interests in royalties have no relationship to the existence, scope, duration or identification of a copyright, nor to 'rights under a copyright.'" *Broadcast Music*, 104 F.3d at 1166) (quoting 37 C.F.R. § 201.4(a)(2)). "[A] royalty interest does not bespeak an interest in the

4

underlying copyright itself—a royalty is simply an interest in receiving money when the owner of the copyright exploits it." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834 (9th Cir. 1996) (A "royalty holder's rights or protections … arise out of the contract itself").[2]

Cher's approval rights also arise from the MSA, in which Sonny "agree[d] that all agreements with third parties respecting the subject matter of this Paragraph (10)(d) are subject to the approval of [Cher] or [her] representatives, which approval will not be unreasonably withheld." Def's RJN, Exh. A at 7, ¶ (10)(d); Compl. at 4, ¶ 17. On its face, that is a contractual right. *See also Rey v. Lafferty*, 990 F.2d 1379, 1392-95 (1st Cir. 1993) (analyzing author's exercise of contractual approval rights as State breach of contract claim, not a copyright claim).

Cher's royalty and approval rights arise under the MSA and are not affected by the Heirs' termination because termination "affects only those rights … that arise under [the Copyright Act]." 17 U.S.C. § 304(c)(6)(E).

### (2) Section 304(c)(6)(E) Also Expressly Excludes from Termination "Rights Arising Under Any … State … Laws"

To unequivocally drive home that Section 304(c) termination affects only rights arising under the Copyright Act, Section 304(c)(6)(E) also goes on to state that termination "in no way affects rights arising under any other Federal, State, or foreign laws." This provision confirms that "to the extent that a grant includes rights based on federal law other than the Copyright Act, on state law, or on foreign law, such rights are not subject to termination." 3 NIMMER ON COPYRIGHT § 11.02[B][1] (providing, as an example, that "when one instrument simultaneously conveys rights under copyright and trademark law, the former is subject to termination, whereas the

---

[2]   At the hearing on her Motion, Ms. Bono's counsel argued that Section 304(c) provides for the recapture of "the economic value" of works. But the Heirs do that by recapturing the copyrights, which can continue to be licensed. The Heirs simply took subject to Sonny's assignment to Cher of the right to 50% of the royalties the Heirs receive, a right they did not and could not terminate under Section 304(c).

1  latter continues in perpetuity"); *see, also* H.R. Rep. No. 94-1476 at 127 (1976)
2  ("***Effect of termination*** Section 203(b) makes clear … that rights under … State …
3  laws are unaffected."); 3 PATRY on COPYRIGHT § 7:48 ("Rights that arise under …
4  any state … law are not affected [by termination]").

      Cher showed above that her rights under the MSA do not arise under the Copyright Act. *See above* at 4-5. Instead, the Complaint alleges, and Ms. Bono's Motion does not dispute, that Cher's rights arise under California law. *See, e.g.,* Compl. at 3-4, ¶¶ 13-18, 5-6, ¶¶ 20-23, 11-12, ¶ 41(e) & (g); Def's RJN, Exh. A at 17, ¶ (20) (MSA governed by California law). Royalty rights under a contract, even one "transferring a copyright[,] are a concern of state contract law only and are not a concern of federal law at all." *Yount*, 103 F.3d at 834; *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1339, 1339 n.9 (9th Cir. 1990) (right to unpaid royalties is at "common law").

      Section 304(c)(6)(E) confirms Congress' intent "that termination not be a steamroller flattening all state entitlements in the field." 3 NIMMER ON COPYRIGHT § 11.01[B]. Cher's rights arise under California law and the Copyright Act expressly shields her rights from termination. For these additional reasons, Cher's Complaint properly pleads that the Heirs' notice of termination does not affect her rights under the MSA.

      **(3)    Section 304(c) Does Not Preempt Cher's State Law Rights Under the MSA**

      For multiple reasons there is no merit to Ms. Bono's argument that Section 304(c) preempts Cher's State law rights under the MSA. *See* Cher's Oppn. to Mtn. to Dismiss (Doc. 19) at 14-20. Principal among those reasons is that there is no conflict between the Copyright Act and Cher's State law rights because Section 304(c) expressly limits termination to copyright rights and expressly leaves State law rights intact. 17 U.S.C. § 304(c)(6)(4) ("Termination of a grant under this subsection affects

///

6

only those rights … that arise under this title, and in no way affects rights arising under any … State[] … laws."); *see above* at 4-6.[3]

### (4) Ms. Bono's Reliance on *Ray Charles Foundation* Is Misplaced

For the first time in her Reply in support of her Motion to Dismiss, Ms. Bono cited *Ray Charles Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015) for several propositions, none of which pass even cursory consideration.

In *Ray Charles*, Ray Charles had assigned to his non-profit Foundation his rights to royalties from a music publisher. The issue was whether the Foundation had standing to challenge his children's notices terminating his contracts with the music publisher. The Court of Appeals concluded that the Foundation had standing under the zone-of-interest test because the termination would cut off its right to royalties from the music publisher. *Id.* at 1119-25. As a result, *Ray Charles* confirms that Cher has standing to contest the Heirs' notices of termination if she has a basis to do so. Moreover, whether royalty rights are themselves subject to termination was not at issue in *Ray Charles* because Mr. Charles assigned to his Foundation his right to royalties under *specific contracts* that were then purportedly terminated, thereby halting the royalties. *Id.* at 1112. That is fundamentally different from this case, where Sonny assigned 50% of the royalties he and his successors and heirs receive *from all sources*. As a result, the Heirs' termination of his grants to music publishers and replacing them with new grants to those or other music publishers does not stop the Heirs' receipt of royalties, including those assigned to Cher. *See below* at 8.

In any event, Ms. Bono first argues that because *Ray Charles* concluded the Foundation could challenge as *ineffective* a termination notice that would cut off its

---

[3] Ms. Bono has referred to the federal presumption that a grant of copyright does not include rights in the renewal copyright. But she has failed to explain how that is relevant, and it is not. In the MSA, Sonny did not assign copyrights to Cher. Moreover, *Yount* rejected the assertion that "the federal common law rule of construction that applies to the assignment of renewal terms of a copyright also governs assignment of contractual royalty interests alone." 103 F.3d at 832-34.

7

royalties, that must mean the Heirs' *effective* termination notice cuts off Cher's royalties. Def's Reply at 5:17-21. But that conclusion does not follow the premise and Ms. Bono simply ignores that Cher's rights were not cut off because, for example, the Heirs' notice of termination did not identify the MSA and was not served on Cher.

Ms. Bono also argues that Ray Charles "appl[ied] federal law to a copyright royalties contract case [and] found that the third party receiving royalties could bring a claim under federal copyright law…." Def's Reply at 6:10-12. But Ray Charles applied federal *standing* law and the Foundation's claim was for declaratory relief, which is governed by the Declaratory Judgment Act, 28 U.S.C. Sections 2201 *et seq.*, not the Copyright Act.

In addition, Ms. Bono quotes language in Ray Charles that the Foundation's interest in protecting its royalty stream is an interest "Congress contemplated, regulated, and protected in enacting the termination provisions." Def's Reply at 6:15-19, 8:20-26. But the zone-of-interest standing test required the Court to consider interests – whether copyright or contract – beyond those of the heirs and the terminated grantee. Ray Charles, 795 F.3d at 1123. And nowhere does Ray Charles suggest that royalty rights arise under the Copyright Act rather than contract. Further, Congress contemplated and protected royalty rights by expressly limiting termination to rights arising under the Copyright Act and preserving rights arising under State law. See 17 U.S.C. § 304(c)(6)(E); *see above* at 4-6.

**(e)   The Heirs' Termination of Sonny's Grants to Music Publishers Does Not Affect Cher's Right to 50% of the Royalties**

The 50% of musical composition royalties that Sonny assigned to Cher in the MSA includes royalties paid by music publishers. The Heirs' termination of Sonny's grants to music publishers does not affect Cher because Sonny assigned to her 50% of the royalties "based on the amount thereof received by" him and his successors and heirs, "from all sources perpetually…." Def's RJN, Exh. A at 6-7, ¶ (10)(d).

///

8

### (f) The Complaint Correctly Pleads that the Heirs Are Bound by Sonny's 1978 Assignment and Grant of Approval Rights

At the hearing on her Motion to Dismiss, Ms. Bono's counsel argued that Sonny's Heirs are not bound by the MSA because they did not sign it. However, the Complaint alleges that Sonny expressly agreed that the MSA binds his heirs and assigns. Compl. at 4, ¶ 18. Ms. Bono proved those allegations to be true by asking the Court to judicially notice the MSA. *See* Def's RJN, Exh. A at 7 ("Husband agrees that his successors in interest … shall be subject to the rights of Wife as set forth in this Paragraph (10)(d).") and at 17 ("This Agreement shall be binding upon … each of the parties hereto, and their respective heirs and assigns.").

The Complaint also alleges that in 1999 Ms. Bono, as administrator of Sonny's estate, approved Cher's creditor's claim to "ongoing royalties relating to" the "[m]usic portfolio assets including royalties and publishing rights." Compl. at 5, ¶ 23(a). For this additional reason, the Heirs took subject to Cher's rights. In addition, the Complaint alleges that from the Probate Court's 1999 distribution of Sonny's assets to the Heirs through September 2021, the Heirs have honored Cher's rights. Compl. at 6-7, ¶ 25, 9, ¶ 36; *see, e.g., Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1450, 66 Cal. Rptr. 2d 487, 493 (1997) (borrower's interest payments over five years without objection confirmed payment obligation).

Cher's Complaint alleges more than enough to establish that the Heirs are bound by the MSA's terms.

### (g) The Court's Hypotheticals Demonstrate the Dangers in Defendant's Argument, Which Are Avoided by Recognizing that Termination Is Limited to Copyright Rights

At the hearing on Ms. Bono's Motion, the Court demonstrated the dangers and inequities that would flow from Ms. Bono's argument that termination cuts a broad swath beyond grants of copyrights.

///

First, the Court raised that in the MSA, Cher waived spousal support in return for the rights she received, including the royalty rights in perpetuity. Ms. Bono's argument that the Heirs' termination cut off Cher's royalties would mean Cher is uncompensated for her waiver of spousal support. The Court also posed a hypothetical with similar facts to those here, except that the husband issues a Section 304(c) notice of termination a year after the marital settlement agreement thereby – under Ms. Bono's view of the law – terminating the wife's right to royalties while leaving in place her waiver of spousal support. Ms. Bono's argument has even broader implications because purchases and loans often are secured by royalty streams from copyrighted works. Under Ms. Bono's view of the law, termination of copyrights would also cut off those assignees' royalty rights.

But the Copyright Act and caselaw avoid all those situations because Section 304(c) termination applies only to grants of a "renewal copyright or any rights under it," "affects only those rights … that arise under [the Copyright Act]," and "in no way affects rights arising under any … State … laws," and Cher's right to royalties arises under State law, not the Copyright Act. 17 U.S.C. § 304(c)(6)(E); *see above* at 4-6.

### 3. CONCLUSION

For the foregoing reasons, Cher respectfully requests that the Court deny Ms. Bono's Motion in its entirety.

Dated: May 9, 2022

          /s/ Peter Anderson
Peter Anderson, Esq.
Sean M. Sullivan, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff
CHER
Individually and as Trustee of
The Veritas Trust

10