UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
|---|---|---|---|
| Title | Cher v. Mary Bono, et al. | | |

Present: The Honorable   JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Patricia Kim | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS (DKT. 18); AND

FIRST STIPULATION TO EXTEND DEADLINES (DKT. 40)

**I.    Introduction**

On October 13, 2021, Cher ("Plaintiff") brought this action against Mary Bono ("Defendant"), the widow of Salvatore Bono ("Sonny"). Dkt. 1.[1] The Complaint advances two causes of action that arise from a dispute over musical composition and recording royalties: (1) declaratory relief regarding the effect of 17 U.S.C. § 304(c) termination on Plaintiff's rights; and (2) breach of contract. *Id.* ¶¶ 39–50.

On December 8, 2021, Defendant filed a motion to dismiss the Complaint. Dkt. 18 (the "Motion"). On December 22, 2021, Plaintiff filed an opposition. Dkt. 19 (the "Opposition"). On January 12, 2022, Defendant filed a reply. Dkt. 20 (the "Reply").

A hearing on the Motion was held on April 25, 2022. Dkt. 23. For the reasons stated in this Order, the Motion is **GRANTED IN PART WITHOUT PREJUDICE**, *i.e.,* with leave to amend, as to Plaintiff's claims based on the Record Royalties. The Motion is **DENIED** as to Plaintiff's claims based on the Composition Royalties. The Scheduling Order is amended as stated in this Order.

**II.   Factual Background**

   A.   The Parties

It is alleged that Plaintiff is a resident of Los Angeles County, California, and the trustee of The Veritas Trust, which is a California trust. Dkt. 1 ¶ 5.

It is alleged, on information and belief, that Defendant is a resident of Colorado and the trustee of the

---

[1] The use of the first name of Mr. Bono follows the common protocol to do so when two or more persons with the same last name are parties or otherwise identified in an action. No disrespect is intended by doing so in order to simplify the discussion in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
|---|---|---|---|
| Title | Cher v. Mary Bono, et al. | | |

Bono Collection Trust. *Id.* ¶ 6. It is alleged that Defendant is Sonny's widow and was appointed as the administrator of Sonny's estate upon his death in 1998. *Id.* ¶¶ 20–21.

    B.    Allegations in the Complaint

It is alleged that Plaintiff and Sonny performed together, were married in 1967 and achieved success as performers and television personalities. *Id.* ¶ 9. It is also alleged that they performed and recorded several very popular musical compositions, including some written or acquired by Sonny during the marriage. *Id.* It is alleged that the marriage of Plaintiff and Sonny was dissolved in 1975, through a judgment entered by the Los Angeles Superior Court. *Id.* ¶ 12.

    1.    <u>1978 Marriage Settlement Agreement ("MSA")</u>

It is alleged that, as part of their dissolution proceedings in the Los Angeles Superior Court, in August 1978, Plaintiff and Sonny entered into a written Marriage Settlement Agreement ("MSA"). *Id.* ¶ 13; *see* Dkt. 18-2, Ex. A. The MSA states that it is governed by California law; it was approved by the Los Angeles Superior Court. *Id.*

The MSA assigned to Plaintiff an "undivided 50% interest" in the following:

- Any and all contingent receipts payable after July 14, 1978, "from Atlantic Recording Corporation under the agreement dated August 30, 1966 . . . from Liberty/U.A. Inc. under the agreements dated from and after November 1, 1964 . . . [and] from MCA Records, Inc. under agreements dated January 1, 1972, and February 11, 1971" (the "Record Royalties"), *see* Dkt. 18-2, Ex. A at 11–12, ¶ 10(a)–(c); and

- Any and all of Sonny's "right, title and interest, individually or through any other business, corporation, firm or entity in which he has an interest (hereinafter referred to as 'other business')" in and to contingent receipts payable after July 14, 1978, "from musical compositions and interests therein, written and composed, in whole or in part, by [Sonny] or others prior to February 1, 1974, and/or acquired by [Sonny and certain other entities] prior to [the couple's separation]" (the "Composition Royalties"), *id.* at 12, ¶ 10(d).

The MSA further provides that Plaintiff has the right to approve all other agreements with third parties regarding the musical compositions and Composition Royalties that are the subject of Paragraph 10(d). *Id.* at 13, ¶ 10(d).

The MSA also provides that all of Sonny's successors in interest, assigns, and all third parties with whom he or any of his other businesses had contracted, were subject to Plaintiff's rights set forth in Paragraph 10(d). *Id.*

It is alleged that, pursuant to the MSA, Sonny and his other businesses recognized Plaintiff's approval and other rights under the MSA, and that Plaintiff received payments that were represented to be her 50% percent share of all Record Royalties and Composition Royalties. Dkt. 1 ¶ 19.

    2.    <u>Sonny's Death in 1998</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
| Title | Cher v. Mary Bono, et al. | | |

It is alleged that Sonny died in January 1998, and that a probate action was initiated thereafter in the Los Angeles Superior Court. *Id.* ¶¶ 20–21. It is alleged that Plaintiff filed a creditor's claim in that action, raising Sonny's obligations to her under the MSA. *Id.* ¶ 22. It is alleged that, in July 1999, Plaintiff and Defendant, as administrator of Sonny's estate, reached an agreement as to Plaintiff's claim, recognizing Plaintiff's ongoing rights under the terms and conditions of the MSA. *Id.* ¶ 23.

It is alleged that the Superior Court approved Plaintiff's claim, and that Defendant subsequently honored Plaintiff's rights under the MSA, including her 50% percent interest in the Record and Composition Royalties. *Id.* ¶ 25.

        3.        <u>2016 Notice of Termination of Sonny's Pre-1978 Music Publishing Grants</u>

It is alleged that in 2016, Defendant issued a notice of termination pursuant to 17 U.S.C. § 304(c) to various music publishers to whom Sonny had granted a transfer or license of copyright in musical compositions authored or co-authored by Sonny, with effective termination dates ranging from 2018 to 2026. *Id.* ¶ 33. It is alleged that the notice of termination was issued without Plaintiff's knowledge or consent. *Id.* ¶ 34.

It is alleged that Defendant has advised Plaintiff that the § 304(c) notice of termination also terminates Plaintiff's 50% share of Composition Royalties under the MSA. *Id.* ¶ 36. It is alleged that Defendant further contends that Plaintiff is no longer entitled to Plaintiff's other rights under the MSA, including Plaintiff's approval rights with respect to all agreements with third parties regarding Sonny's musical compositions and the Composition Royalties and Plaintiff's 50% share of the Record Royalties. *Id.* ¶ 37.

        C.        Prayer for Relief

As noted, the Complaint asserts two causes of action: (1) declaratory relief regarding the effect of the § 304(c) termination notice on Plaintiff's rights under the MSA; and (2) breach of contract. *Id.* ¶¶ 39–50. As to the first cause of action, the Complaint seeks a judicial declaration, including that Defendant's notice of termination did not terminate the MSA or its recognition of Plaintiff's community property rights and holdings. *Id.* at 16–19. The second cause of action seeks compensatory damages. *Id.* at 20.

**III.**        <u>Request for Judicial Notice</u>

In support of the Opposition, Defendant filed a Request for Judicial Notice ("RFN" (Dkt. 13)). The RFN seeks judicial notice of the MSA, and the Certificate of Recordation of the notice of termination on October 14, 2016. *See* Dkt. 18-2, Ex. A at 5–43 (the "MSA"); *id.*, Ex. B at 44–63 (the "Termination Notice").

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Consideration of such materials ensures that "allegations that contradict matters properly subject to judicial notice or by exhibit" are not simply "accept[ed] as true" in connection with a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
|---|---|---|---|
| Title | Cher v. Mary Bono, et al. | | |

828 F.2d 1385, 1388 (9th Cir. 1987)). A court may take judicial notice of a wide range of records, including public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles and the contents of websites. *See, e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013); *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV1702223ABAJWX, 2017 WL 7201872, at *2 (C.D. Cal. Oct. 19, 2017); *United States, ex rel. Modglin v. DJO Glob., Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).

The RFN seeks notice of public records which, under Rule 201(b)(2), are properly subject to judicial notice. The MSA was filed publicly on the docket of the Los Angeles County Superior Court in Plaintiff and Sonny's marital dissolution action, *Salvatore P. Bono v. Cher Bono*, Case No. D842001. See Dkt. 18-2 at 3. Moreover, the Complaint references the MSA multiple times and is the basis for Plaintiff's claims against Defendant. The Certificate of Recordation of the notice of termination is also a public record filed with the United States Copyright Office and has also been referred to in the Complaint. Plaintiff has not opposed the request for judicial notice of these documents, and their authenticity is not disputed.

For the foregoing reasons, the RFN is **GRANTED**.

**IV.     Motion to Dismiss**

      A.     Legal Standards

           1.     <u>Stating a Claim</u>

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must allege facts that if established would be sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion "only where the complaint lacks a cognizable legal theory or sufficient facts to support" one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
|---|---|---|---|
| Title | Cher v. Mary Bono, et al. | | |

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Fed. R. Evid. 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

    2.    <u>Copyright Preemption</u>

The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act. *First*, it must be determined "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (interpreting 17 U.S.C. § 301). Section 102 of the Copyright Act affords copyright protection to "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic, and sculptural works." 17 U.S.C. § 102.

*Second*, if the claim falls within the subject matter of copyright, it must be determined "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws*, 448 F.3d at 1137–38. The exclusive rights provided in Section 106 include the right "to reproduce the copyrighted work in copies[,]" "to prepare derivate works[,]" "to distribute copies . . . to the public by sale or other transfer of ownership" and "to display the copyrighted work publicly." 17 U.S.C. § 106. "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Laws*, 448 F.3d at 1143 (internal quotation marks and citation omitted).

    B.    Application

        1.    <u>First Cause of Action for Declaratory Relief</u>

            a)    Legal Standards

The parties agree that the underlying works at issue, which are musical compositions and sound recordings, are subject to the Copyright Act. *See* 17 U.S.C. § 102(a) (federal copyright law protects "original works of authorship" including "musical works" and "sound recordings"). The Copyright Act includes a right of termination that "allows an author, if he is living, or his widow and children, if he is not, to recapture . . . rights that had previously been transferred to third parties." *Classic Media, Inc. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
| Title | Cher v. Mary Bono, et al. | | |

*Mewborn*, 532 F.3d 978, 983 (9th Cir. 2008).

Defendant's termination notice relied on the termination right provided in 17 U.S.C. § 304(c). That provision states, in relevant part, that, "[i]n the case of any copyright subsisting in either its first or renewal term on January 1, 1978 . . . the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978," may be terminated by the author's widow and surviving children by providing "advance notice in writing upon the grantee." *Id.* §§ 304(c)(1)–(4).[2] "Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." *Id.* § 304(c)(5).

These provisions were enacted to "award to the author, and not to the assignee of the right to exploit the copyright during its initial term, the monetary rewards of a work that may have been initially undervalued, but which later becomes a commercial success." *Classic Media*, 532 F.3d at 983. Thus, "all of a particular author's rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to that author or, if that author is dead, to the persons owning his or her termination interest." 17 U.S.C § 304(c)(6). However, termination under § 304(c) "affects only those rights covered by the grant that arise under this title, and in no way affects rights arising under any other Federal, State, or foreign laws." *Id.* § 304(c)(6)(E).

        b)        Application

The declaratory relief claim seeks a judicial declaration that the termination notice did not terminate the copyright grants made by Sonny or through the MSA. Dkt. 1 ¶ 41. Based on these contentions, it seeks a determination that the termination notice did not affect either Plaintiff's royalty rights or Plaintiff's approval rights regarding third-party contracts with respect to Sonny's musical compositions and royalties. *See id.* at 16–19.

The parties agree that the termination notice did not terminate the MSA, and that Plaintiff's royalty and approval rights arise under state law. *See, e.g.*, Motion at 15 n.9; Reply at 11–12. However, certain of those royalty rights are dependent on the existence of the underlying copyright grants.

As to the Record Royalties, the MSA states that there shall be an equal division of "any and all contingent receipts from [certain agreements with record companies] under the agreement[s] . . . with respect to master recordings" of either or both Sonny and Cher. *See* Dkt. 18-2 at 11–13, ¶ 10(a)–(c). Thus, these royalties are only relevant if the agreements with the record companies remain in force. Those agreements transferred or licensed certain copyrights to record companies, and the agreements were the subject of Defendant's termination notices. With respect to the Record Royalties, the MSA does not include any provisions specifying the ownership or assignment of those copyright grants, nor their continued existence. Instead, the MSA only relates to the subsequent allocation of those royalties that arise from the copyright grants.

As noted, Section 304 of the Copyright Act provides to Defendant, as Sonny's widow, and to his surviving children, an inalienable right to terminate those grants, within a specified time period and by

---

[2] 17 U.S.C. § 203 is a related provision of the Copyright Act. It provides similar termination rights for copyrights granted or executed on or after January 1, 1978.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
| Title | Cher v. Mary Bono, et al. | | |

using a prescribed notice procedure. Plaintiff agrees that Defendant has the right to terminate the copyright grants at issue, and does not raise any issues as to whether the procedural requirements for the notice of termination were met. *See, e.g.*, Opposition at 20 ("[N]othing in the MSA prevented the Heirs from terminating Sonny's grant of copyright rights to the music publishers.").

Consequently, once Defendant and Sonny's other heirs exercised the right to terminate certain of those grants as listed in the termination notice, there were no more royalties from those grants to pay to Plaintiff. However, the MSA remains in place. Defendant notes that Plaintiff continues to receive royalties and exercise approval rights for Sonny's non-terminated copyright grants, including foreign copyrights. *See* Motion at 16 n.8.

Plaintiff argues that Defendant cannot exercise her statutory right to terminate Sonny's copyright grants, and thereby effectively terminate Plaintiff's contractual royalty rights, because Plaintiff's rights are governed by state law. *See* Dkt. 19 at 16–18. Plaintiff cites several cases to support the position that royalty rights from copyrighted musical works arise solely under state law and cannot be subject to termination under the copyright statute. *See id.*

The cases on which Plaintiff relies are distinguishable, and do not support Plaintiff's contention that a contractual assignment of royalties from copyright grants cannot be affected by a termination of the grants. For example, *Yount v. Acuff Rose-Opryland* held that, when a party transferred the underlying copyright and obtained a contractual right to royalties from that copyright, "federal copyright law essentially ceased to be concerned with how that contractual royalty right or assignments of it would be enforced." 103 F.3d 830, 836 (9th Cir. 1996). Thus, that party's subsequent "assignment of contractual royalty interests alone" to someone else was governed by state law. *Id.* at 834. The dispute addressed in *Yount* involved only royalty rights, and did not arise with respect to the copyright underlying the royalties. Similarly, *Broad. Music, Inc. v. Hirsch* involved contractual assignments of royalties. 104 F.3d 1163 (9th Cir. 1997) Therefore, it was determined that the contracts were not subject to federal recording rules of the Copyright Act because the assignments did not involve the transfer of the underlying copyrights. *Id.* at 1166–67.

The dispute in this action is different in nature. It concerns Plaintiff's contractual royalty rights, which are directly related to the termination of the underlying copyright grants. Thus, federal law applies as to the existence and assignment of the underlying grants. This then affects whether there are any royalties due under those grants. *Ray Charles Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015) is instructive. It held that a plaintiff receiving royalties from various copyright grants had standing under federal law to challenge the validity of defendant's termination notice of those grants. *Id.* at 1123. It also explained that, although a third party receiving royalties is "not expressly mentioned in the termination statutes," the plaintiff alleged a cognizable injury to its interest in the royalties because "[t]ermination, if effective, would directly extinguish the [plaintiff's] right to receive prospective royalties from the current grants." *Id.* at 1123–24. "This interest is the one Congress contemplated, regulated, and protected in enacting the termination provisions." *Id.* Although *Ray Charles* addressed a standing issue, its analysis as to the injury to plaintiff supports the view that federal termination rights can end contractual royalty rights by terminating the underlying copyright grants.

The practical effect of the termination notice is that Plaintiff no longer receives royalties for the copyright grants that no longer exist. Further, as Plaintiff concedes, the MSA "leaves the Heirs free to enter into

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
| Title | Cher v. Mary Bono, et al. | | |

new music publishing agreements with respect to the copyrights on better terms, or exercise any rights available to them under the Copyright Act." Opposition at 25. Whether Plaintiff is entitled to 50% of royalties from any new agreements is governed by the terms of the MSA. For example, the MSA provides that the division of receipts from Atlantic Recording Corporation is only based on "the agreement dated August 30, 1966." Dkt. 18-2, Ex. A at 11, ¶ 10(a). That royalty right arises from that specific agreement; if that agreement is terminated, the royalty right no longer applies because its basis no longer is in place.

Plaintiff has not sought leave to amend this claim. However, it is possible that Plaintiff could plead additional facts to show either that the termination notices were deficient in some manner or that the Record Royalties are not based on the now-terminated agreements. Given that leave to amend is to be granted with extreme liberality, it is appropriate to do so in this action.

As to the Composition Royalties, the MSA states that there shall be an equal division of "contingent receipts . . . from musical compositions and interests therein, written and composed, in whole or in part, or acquired by [Sonny] or others prior to February 1, 1974, and/or acquired by [Sonny and certain other entities] prior to" Plaintiff's divorce from Sonny. Dkt. 18-2, Ex. A at 12–13, ¶ 10(d). The same provision also states that "all agreements with third parties respecting the subject matter of this Paragraph (10)(d) are subject to the approval of" Plaintiff. *Id.* at 13, ¶ 10(d). On their face, these provisions would not fail simply because Sonny's heirs have terminated his agreements with certain record companies. Unlike the terms that apply to the Record Royalties, these provisions do not mention the agreements. Instead, they provide that Plaintiff has a right in the proceeds of these "musical compositions and interests therein . . . from all sources perpetually. . . ." *Id.* Because Plaintiff's rights are linked to the musical compositions themselves and to Sonny's corresponding property interests, with respect to the allegations in the Complaint, the termination notices at issue do not affect the Composition Royalties. Once this case proceeds to discovery, Defendant may be able to present evidence as to the meaning of paragraph 10(d) of the MSA. Therefore, the merits of this component of Plaintiff's declaratory-judgment claim cannot be resolved at this time.

Defendant contends that Plaintiff's rights under these provisions were terminated pursuant to Section 304(c) of the Copyright Act. Motion at 14–16. To establish this claim, Defendant would have to show that the Composition Royalties, among other things, arose from an "exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978. . . ." 17 U.S.C. § 304(c). Plaintiff argues that a grant of royalties is not a transfer or license of a right under any copyright because the right to receive royalties is not one stated in the Copyright Act. Opposition at 16–17; *see* 17 U.S.C. § 106. Defendant argues that a right to royalties is a "right under [a copyright]" because the royalties are paid in exchange for a waiver of the rights listed in the Copyright Act.

Assuming without deciding that a right to receive royalties is one that arises under a copyright, Plaintiff's right to the Composition Royalties would not be terminated by Section 304(c) of the Copyright Act. The Composition Royalties appear to arise solely from the MSA. That agreement was executed on August 10, 1978, which makes the MSA an agreement that is outside the scope of Section 304(c). Dkt. 18-2, Ex. A at 5. On this record, it has not presently been established that Plaintiff's rights to the Composition Royalties have been terminated.

For the foregoing reasons, the Motion is **GRANTED IN PART WITHOUT PREJUDICE**, *i.e.,* with leave

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
| Title | Cher v. Mary Bono, et al. | | |

to amend, as to the portion of this claim based on the Record Royalties. The Motion is **DENIED** as to the portion of this claim based on the Composition Royalties.

        2.        <u>Second Cause of Action for Breach of Contract</u>

The claim for breach of contract is based on Defendant's alleged refusal to honor Plaintiff's royalty and approval rights. As a result, this claim rises or falls with the declaratory relief claim.

The MSA is still in force. Plaintiff does not dispute that she continues to receive royalties and exercise approval rights for Sonny's non-terminated copyright grants, including foreign copyrights, under the MSA. *See* Motion at 16 n.8. Plaintiff also agrees that the MSA does not prevent Defendant from exercising her termination rights under the Copyright Act, *i.e.*, to terminate certain copyright grants and enter into new agreements. *See* Opposition at 25. That some of those grants have been validly terminated under federal law, thereby ending certain of Plaintiff's royalties, does not constitute a breach of contract as a matter of law.

For the foregoing reasons, the Motion is **GRANTED IN PART WITHOUT PREJUDICE**, *i.e.*, with leave to amend, as to the portion of this claim based on the Record Royalties. The Motion is **DENIED IN PART** as to the portion of this claim based on the Composition Royalties.

**V.**        <u>**Stipulation to Extend Deadlines**</u>

On March 6, 2023, the parties filed a Stipulation to Extend Deadlines. Dkt. 40 (the "Stipulation"). Based on a review of the Stipulation, good cause has been shown for the requested relief. The Stipulation is **GRANTED**, and the Scheduling Order amended, as follows:

| Event | Current Date | Continued Date |
|---|---|---|
| Non-Expert Discovery Cut-Off | March 20, 2023 | June 26, 2023 |
| Initial Expert Disclosures | April 3, 2023 | July 10, 2023 |
| Rebuttal Expert Disclosures | April 17, 2023 | July 24, 2023 |
| Expert Discovery Cut-Off | May 1, 2023 | August 7, 2023 |
| Last Day to File All Motions (Including Discovery Motions) | May 8, 2023 | August 14, 2023 |

The parties will be invited to submit proposed dates for the final pretrial conference and trial, if necessary, upon the issuance of orders on the motions. The trial estimate will be set at the final pretrial conference.

**VI.**        <u>**Conclusion**</u>

For the reasons stated in this Order, the Motion is **GRANTED IN PART WITHOUT PREJUDICE**, as to the portion of Plaintiff's claims based on the Record Royalties. The Motion is **DENIED IN PART** as to the portion of Plaintiff's claims based on the Composition Royalties. Any amended complaint shall be filed with 14 days of the issuance of this Order. The Scheduling Order is amended as stated in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | March 14, 2023 |
| Title | Cher v. Mary Bono, et al. | | |

**IT IS SO ORDERED.**

```
                                                          :
                                  Initials of Preparer   pk
```