1   Peter Anderson, Esq., Cal. Bar No. 88891
        peteranderson@dwt.com
2   Sean M. Sullivan, Esq., Cal. Bar No. 229104
        seansullivan@dwt.com
3   Eric H. Lamm, Esq., Cal. Bar No. 324153
        ericlamm@dwt.com
4   DAVIS WRIGHT TREMAINE LLP
    865 South Figueroa Street, 24th Floor
5   Los Angeles, California 90017-2566
    Tel: (213) 633-6800
6   Fax: (213) 633-6899

7   Attorneys for Plaintiff
    CHER, Individually and as
8   Trustee of The Veritas Trust

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12   CHER, individually and as Trustee of    ) Case No. 2:21-CV-08157 JAK (RAOx)
     The Veritas Trust,                       )
13                                            )
                        Plaintiff,            )
14                                            ) FIRST AMENDED COMPLAINT
            v.                                ) FOR DECLARATORY RELIEF; AND
15                                            ) BREACH OF CONTRACT
     MARY BONO, individually and as           )
16   Trustee of the Bono Collection Trust,    ) DEMAND FOR JURY TRIAL
     and DOES 1 through 10, inclusive,        )
17                                            )
                        Defendants.           )
18                                            )
                                              )
19   _____        )

20

21

22

23

24

25

26

27

28

Plaintiff Cher ("Plaintiff") alleges:

## **JURISDICTION AND VENUE**

1.     The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as it arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including by requiring the interpretation of the Copyright Act and the scope, meaning, and effect of the statutory termination provisions of 17 U.S.C. § 304(c), and because federal principles should control the claim.

2.     Alternatively, the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) insofar as it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.     The Court has supplemental jurisdiction of the State law claim pursuant to 28 U.S.C. § 1367(a) insofar as it is so related to the federal claim in this action that it forms part of the case or controversy under Article III of the United States Constitution.

4.     Venue is proper in this District under 28 U.S.C. § 1400(a), insofar as defendants or their agents, including, without limitation, Wixen Music Publishing, Inc. ("Wixen"), reside or may be found here, or, alternatively, under 28 U.S.C. § 1391(b)(1), insofar as at least one defendant resides in this District and all defendants are residents of the State of California, or, alternatively, under 28 U.S.C. § 1391(b)(2), insofar as a substantial part of the events or omissions giving rise to the claims occurred in this District, or, alternatively, under 28 U.S.C. § 1391(b)(3), insofar as at least one defendant is subject to the Court's personal jurisdiction here.

## **THE PARTIES**

5.     Plaintiff is an individual domiciled in Los Angeles County, California, and the Trustee of The Veritas Trust, a California trust formerly known as The Inshallah Trust.

///

///

1

6.     Plaintiff is informed and believes, and upon that basis alleges, that defendant Mary Bono is an individual domiciled in Colorado and the Trustee of The Bono Collection Trust.

7.     Plaintiff is presently unaware of the true names and/or the involvement of the defendants sued herein by the fictitious designations Does 1-10 and for that reason sues them by those designations.  Plaintiff will seek leave of Court to amend this pleading to identify those defendants when their true names and involvement in the infringements hereinafter described are known.

## BACKGROUND FACTS

### Plaintiff and the Music that

### She and Sonny Bono Made Famous

8.     Plaintiff is a world-renowned Grammy, Oscar, Emmy, and Golden Globe award-winning singer, recording artist, and actor.

9.     In or about 1964, Plaintiff and the late Salvatore ("Sonny") Bono began performing together as the musical group, Sonny and Cher.  They married in 1967 and during their marriage they achieved unparalleled success as a musical duo and television personalities.  Among other things, they publicly performed and recorded multiple hit musical compositions – including musical compositions written, co-written, or acquired by Sonny during their marriage – and starred in their own television series.  They performed and recorded numerous classic popular musical compositions during their marriage, including, by way of example only, *I Got You Babe*, *The Beat Goes On*, *Baby Don't Go*, *Little Man*, and *Bang Bang*.

10.    When they divorced, Plaintiff and Sonny agreed to an equal division of their community property and, to that end, in 1978 Sonny irrevocably assigned to Plaintiff, as her sole and separate property throughout the world and in perpetuity, fifty percent of their rights in musical composition royalties, record royalties, and other assets.  Since 1978, Plaintiff has been the unchallenged owner of her fifty percent of all musical composition and record royalties to which Plaintiff and Sonny were

2

entitled by reason of their collaboration and marriage, including fifty percent of all royalties that Sonny, his businesses, and his successors, receive from those musical compositions and recordings.

11.     This action has become necessary because now, more than forty years after Plaintiff received her fifty percent ownership of her and Sonny's community property, Sonny's fourth wife and widow, defendant Mary Bono, claims that a wholly inapplicable statutory termination provision of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, has undone Plaintiff's ownership of her royalties from the songs and recordings that she and Sonny made famous during their marriage, and deprived Plaintiff of other long-established rights under the 1978 agreement.

**Plaintiff and Sonny's 1978**

**Marriage Settlement Agreement**

12.     On or about February 1, 1974, Plaintiff and Sonny separated and in 1975 their marriage was dissolved by the California Superior Court in an action for marital dissolution, subject to the disposition of Plaintiff and Sonny's community property.

13.     On or about August 10, 1978, Plaintiff and Sonny entered into a written Marriage Settlement Agreement, which is expressly governed by California law and was subsequently approved by the California Superior Court in their marital dissolution action.

14.     In paragraphs (9) and (10) of their Marriage Settlement Agreement, they agreed to the equal division of their community property.  To accomplish that equal division, in paragraph (10) of their Marriage Settlement Agreement Sonny assigned to Plaintiff, as her sole and separate property, an undivided fifty percent interest in various community properties they owned as of their February 1, 1974, separation.

15.     In paragraphs (10)(a), (b), and (c) of their Marriage Settlement Agreement, Sonny assigned to Plaintiff an undivided fifty percent of all contingent receipts after July 14, 1978 (the "Record Royalties"), pursuant to recording contracts entered into prior to their separation (the "Recording Contracts"), with the record

3

1  companies Atlantic Recording Corporation, York Records, Imperial Records, Liberty
2  Records, and MCA Records, Inc. (the "Record Companies"), and Sonny also agreed
3  that Plaintiff has the right to elect to have her fifty percent of Record Royalties paid
4  directly to her.

5       16.    Further, in paragraph (10)(d) of their Marriage Settlement Agreement
6  Sonny assigned to Plaintiff, as her sole and separate property, an undivided fifty
7  percent interest in, among other things, all of Sonny's right, title, and interest,
8  individually or through any business, corporation, firm, or entity in which he had an
9  interest (referred to as his "other business" or "other businesses"), the contingent
10  receipts that he and his other business received after July 14, 1978, "from all sources
11  perpetually and throughout the world" (the "Composition Royalties"), from musical
12  compositions and interests in musical compositions that he wrote in whole or part
13  and/or acquired prior to their February 1, 1974, separation (collectively, the "Musical
14  Compositions").

15       17.    Sonny also agreed to account, or to cause others to account, directly to
16  Plaintiff for her fifty percent of share of the Composition Royalties, after deduction of
17  a ten percent administration fee paid to a worldwide administrator or administrators
18  chosen by Sonny.  In addition, Sonny agreed that Plaintiff has the right to approve all
19  other agreements with third parties respecting the Musical Compositions and
20  Composition Royalties that are the subject of paragraph (10)(d), with her approval not
21  to be unreasonably withheld.

22       18.    The Marriage Settlement Agreement expressly binds the two parties'
23  respective heirs and assigns.  Also, Sonny specifically agreed in paragraph (10)(d) that
24  his successors in interest, his assigns, and all third parties with whom he or any of his
25  other businesses contract, are subject to Plaintiff's rights as set forth in that paragraph
26  (10)(d).

27       19.    In the years following Plaintiff's and Sonny's 1978 Marriage Settlement
28  Agreement, Plaintiff received sums that Sonny or his designees represented were

Plaintiff's fifty percent of all Record Royalties and Composition Royalties (collectively, the "Royalties") that Sonny or his other businesses received, directly or indirectly, and, to the best of Plaintiff's knowledge and belief, Sonny and his other businesses honored Plaintiff's approval and other rights under the Marriage Settlement Agreement.

**Sonny's 1998 Death and His Estate's Confirmation of**

**Plaintiff's Ownership of Fifty Percent of the Royalties**

20.    In January 1998, Sonny died from injuries suffered in a skiing accident.

21.    Shortly after his death, a probate action was initiated in the California Superior Court and his widow, defendant Mary Bono, was appointed the administrator of his Estate.  Pursuant to California law, Ms. Bono, as administrator of the Estate, had the right to approve creditor's claims.

22.    In July 1998, Plaintiff caused to be filed in the probate action her creditor's claim, raising Sonny's obligations to her under the Marriage Settlement Agreement, including but not limited to the obligation to pay and account to her for monies due under paragraph (10) of the Marriage Settlement Agreement and which include Plaintiff's fifty percent of the Royalties.

23.    In July 1999, Ms. Bono, as administrator of the Estate, caused to be filed in the probate action the written agreement reached with Plaintiff regarding Plaintiff's creditor's claim (the "Agreement *re* Creditor's Claim").   In the Agreement *re* Creditor's Claim:

(a)    Ms. Bono "acknowledge[d] Plaintiff's interest in certain ongoing royalties relating to the assets inventoried in this estate as Items 1 through 4 on Attachment 2 of the Final Inventory and Appraisement filed herein on March 17, 1999," Item 1 of which is "Music portfolio assets including royalties and publishing rights";

(b)    Plaintiff confirmed that her creditor's claim was limited "to her ongoing rights under the terms and conditions of the [Marriage

5

Settlement Agreement], and the judgment entered in the subject marital dissolution proceeding," that Sonny was not in breach of the Marriage Settlement Agreement, and that, in the course of administering the Estate, Ms. Bono had disbursed to Plaintiff her share of the Royalties as provided in the Marriage Settlement Agreement.

(c)     Ms. Bono and Plaintiff agreed, "[i]n recognition of Plaintiff's continuing right to receive such royalty interests, and in the interests of the heirs of the estate, … to cooperate in developing a mutually acceptable mechanism for the collection and proper disbursement of such royalties to Cher and to the heirs after the closing of this estate."

The Agreement *re* Creditor's Claim filed in the probate action includes and ends with Ms. Bono's express approval, as administrator of the Estate, of Plaintiff's creditor's claim.

**The Estate's 1999 Distribution of its Assets, Subject to Plaintiff's**
**Ownership of Fifty Percent of the Royalties, to Sonny's Heirs**

24.     In August 1999, the probate court entered its Order Approving First and Final Account and Report and:

(a)     Confirmed that all creditor's claims have either been approved, compromised, or settled;

(b)     Confirmed that the residue of the Estate included the "Music portfolio assets including royalties and publishing rights" referenced in the Agreement *re* Creditor's Claim; and

(c)     Directed that the residue be distributed to Sonny's heirs, namely Ms. Bono, Chesare Bono, Chianna Bono, Christy Bono, and Chastity (Chaz) Bono (the "Heirs").

25.      Following the Heirs' receipt of their distributions in 1999, Plaintiff received sums that they or their designees represented were Plaintiff's fifty percent of all Royalties they received, directly or indirectly, as her share of community property

assigned to her under the Marriage Settlement Agreement as her separate property, and, to the best of Plaintiff's knowledge and belief, the Heirs honored Plaintiff's approval and other rights under the Marriage Settlement Agreement.

<strong>The Veritas Trust and</strong>

<strong>The Bono Collection Trust</strong>

26.     In 1990, Plaintiff formed The Veritas Trust, initially known as the Inshallah Trust, and transferred to herself, as Trustee of that Trust, her undivided fifty percent ownership of the Royalties, including her rights to receive accountings and payments with respect to her fifty percent interest.

27.     Plaintiff is informed and believes, and upon that basis alleges, that at some time prior to April 2011, the Heirs transferred their rights to receive Royalties, subject to their obligations to pay and account to Plaintiff with respect to her fifty percent of the Royalties, to The Bono Collection Trust, of which Ms. Bono is the sole Trustee.

<strong>The 2011 Agreements with</strong>

<strong>Wixen Music Publishing, Inc.</strong>

28.     In or about April 2011, The Bono Collection Trust and The Veritas Trust entered into three agreements with Wixen:

(a)     an Administration Agreement providing Wixen a ten percent commission on publishing income with respect to the Musical Compositions;

(b)     a Collection Agreement relating to Record Royalties and certain performance monies and providing Wixen a ten percent commission with respect to those Record Royalties and performance monies; and

(c)     a Promotion Agreement providing Wixen a fifteen percent commission on receipts from opportunities it obtains to exploit Musical Compositions and other properties that were the community property of

7

Plaintiff and Sonny and part of their equal division of their community property pursuant to the Marriage Settlement Agreement (the "Wixen Agreements").

29.     Each of the Wixen Agreements provides for an initial two-year term followed by successive six-month terms, and also provides that each party has the right to terminate the Wixen Agreements.   Each agreement also provides that termination of one of the three agreements terminates them all.

30.     Both the Administration Agreement and Collection Agreement provide that Wixen shall not be involved in any attempts by The Bono Collection Trust or The Veritas Trust Copyright Act to terminate transfers of copyrights, recapture copyright interests, or issue termination notices, with the sole exception that Wixen shall, at the request of The Bono Collection Trust and The Veritas Trust, assist them in locating and engaging counsel to provide those services.

31.     Under one or more of the Wixen Agreements, Wixen, after deducting its commission or commissions, has since April 2011 collected and disbursed to Plaintiff (or her Trust) sums that Wixen represented constitute Plaintiff's fifty percent of Royalties that Sonny assigned to Plaintiff in the Marriage Settlement Agreement as her share of their community property, and, to the best of Plaintiff's knowledge and belief, the Heirs honored Plaintiff's approval and other rights under the Marriage Settlement Agreement.

**Ms. Bono's 2016 Notice of the Claimed 17 U.S.C. § 304(c)**

**Termination of Sonny's Pre-1978 Music Publishing Grants**

32.     Section 304(c) of the Copyright Act of 1976 provides, subject to various conditions and limitations, that a deceased author's widow or widower and surviving children may terminate the deceased author's grant of a transfer or license of a renewal copyright or any right under it, executed prior to January 1, 1978.

33.     Plaintiff is informed and believes, and upon that basis alleges, that in or about 2016, Ms. Bono, with the assistance or participation of Wixen, issued a notice

of termination(the "Notice of Termination" or "Notice") to various music publishers to whom Sonny had granted a transfer or license of the renewal copyrights, or rights under them, in the Musical Compositions.  The Notice identified the music publishers whose rights are being terminated, and specified various effective dates of termination ranging from dates in 2018 to 2026.

34.    The Notice of Termination did not purport to terminate any grants to Record Companies, nor could the Notice have done so.

(a)    The Notice of Termination was not served on the Record Companies, does not identify any Record Companies as grantees whose rights are being terminated, and did not purport to terminate any of the Recording Contracts.  As a result, all of the Record Royalties, of which fifty percent is owned by Plaintiff, are paid pursuant to Recording Contracts that the Notice did not mention and did not purport to terminate.

(b)    Also, Section 304(c)(6)(E) provides that termination under that Section affects only grants of rights that arise under Title 17 of the United States Code.  Sound recordings were not protected under Title 17 until February 15, 1972, when the Copyright Act was amended to extend federal copyright protection to sound recordings created on or after that date.  However, all of the Recording Contracts and the majority of the sound recordings created under them, were created prior to February 15, 1972.  As a result, their grants were not grants of rights arising under title 17 of the United States Code when the Notice of Termination was issued in 2016.

(c)    In addition, upon information and belief, all of the Recording Contracts provide that the sound recordings are works for hire.  If that is the case, their grants cannot be terminated under  Section 304(c)

///

9

because that Section expressly excludes from its scope grants as to copyrights in a work for hire.

35.     The Notice of Termination was issued without Plaintiff's knowledge or participation, and Plaintiff never requested that Wixen assist in the issuance of any Notice of Termination.

36.     Following the 2016 Notice of Termination, Wixen, after deducting its commission or commissions, has continued to collect and disburse to Plaintiff (or her Trust) sums that Wixen represented constitute Plaintiff's fifty percent of Royalties that Sonny assigned to Plaintiff in the Marriage Settlement Agreement as her share of their community property, and, to the best of Plaintiff's knowledge and belief, Ms. Bono and the other Heirs honored Plaintiff's approval and other rights under the Marriage Settlement Agreement.

### Defendants' Claim that Ms. Bono's § 304(c) Termination of Music Publishing Grants Also Terminates Plaintiff's Rights, Including Her Ownership of Fifty Percent of the Royalties

37.     In or about September 2021, representatives of Ms. Bono and The Bono Collection Trust advised Plaintiff's representatives that Ms. Bono and The Bono Collection Trust contend that the § 304(c) Notice of Termination, by terminating grants to music publishers that have paid Royalties to The Bono Collection Trust, also terminates the stream of Composition Royalties that Sonny assigned to Plaintiff in the 1978 Marriage Settlement Agreement and, as a result, Ms. Bono's statutory termination ends Plaintiff's right to those Royalties.  Based on that contention, The Bono Collection Trust has advised Plaintiff that upon the effective dates of Ms. Bono's termination of each of the music publisher and other contracts, The Bono Collection Trust will no longer pay and account to Plaintiff for her fifty percent ownership of the Composition Royalties that Sonny assigned to Plaintiff in the Marriage Settlement Agreement as her share of their community property.

///

38.     In addition, Ms. Bono and The Bono Collection Trust now contend that Plaintiff no longer has approval rights with respect to all agreements with third parties respecting the Musical Compositions and Composition Royalties; no longer is entitled to direct payment of fifty percent of Record Royalties directly from record companies; no longer is entitled to object to administration fees in excess of ten percent; and does not have the right to terminate the Wixen Agreements and, if Plaintiff has that right, by her 2011 approval of the Wixen Agreements she is deemed to have irrevocably approved any and all new agreements with Wixen.

39.     Plaintiff disputes each of Ms. Bono's and The Bono Collection Trust's contentions but Ms. Bono and The Bono Collection Trust continue to adhere to their contentions and, among other things, have claimed and will continue to claim Plaintiff's fifty percent of the Composition Royalties, and have ceased honoring Plaintiff's full rights under the Marriage Settlement Agreement.

## FIRST CLAIM FOR RELIEF

### (For Declaratory Relief as to Effect of

### 17 U.S.C. § 304(c) Termination on Plaintiff's Rights)

### (Against Defendants)

40.     Plaintiff refers to and re-alleges each and every allegation contained in paragraphs 1 through 39, inclusive, above, as if set forth herein.

41.     Section 304(c) provides, *inter alia*, that termination under that Section is limited to grants by an author executed prior to January 1, 1978, of rights in renewal copyrights or rights under renewal copyright; that a Notice of Termination must be timely served on the grantee or the grantee's successor in title and recorded with the Copyright Office; and that "[t]ermination of a grant under this subsection affects only those rights covered by the grant that arise under the Copyright Act, and in no way affects rights arising under any other Federal, State, or foreign laws."

///

///

42.     Plaintiff contends that even if, and to the extent that, the § 304(c) Notice of Termination is valid and effective:

(a)     The Notice did not terminate, and could not have terminated, the Marriage Settlement Agreement or its recognition and confirmation of Plaintiff's community property, the Marriage Settlement Agreement's assignment to her of fifty percent of the Royalties as her sole and separate property in perpetuity and throughout the world, and Plaintiff's other rights under the Marriage Settlement Agreement, or any of the foregoing;

(b)     The Notice did not terminate, and could not have terminated, grants executed by Sonny on or after January 1, 1978, of renewal copyrights, or rights under renewal copyrights, in the Musical Compositions, and, as a result, has no effect on Plaintiff's ownership of fifty percent of all Composition Royalties received pursuant to those grants;

(c)     The Notice did not terminate Sonny's grants of rights under the Recording Contracts, including because the Notice was not served on the Record Companies and does not identify the Record Companies as grantees whose rights were being terminated;

(d)     The Notice did not terminate, and could not have terminated, Sonny's grants of renewal copyrights, or rights under renewal copyrights, in the Musical Compositions that he did not author or co-author but instead acquired prior to July 14, 1978, and, for that additional reason, has no effect on Plaintiff's ownership of fifty percent of all Composition Royalties received pursuant to those grants;

(e)     The Notice did not terminate, and could not have terminated, Sonny's grants of rights outside the United States and, for

///

12

that additional reason, has no effect on Plaintiff's ownership of fifty percent of all Composition Royalties received pursuant to those grants;

(f)     The Marriage Settlement Agreement's recognition and confirmation of Plaintiff and Sonny's community property, including the Record Royalties, Musical Compositions, and Composition Royalties, is not a grant of renewal copyrights, or rights under renewal copyrights, and, instead, Plaintiff's fifty percent ownership of Record Royalties, Musical Compositions, and Composition Royalties arose under State law and, for that additional reason, are not subject to § 304(c) termination;

(g)     Sonny's assignment to Plaintiff in the Marriage Settlement Agreement of an undivided fifty percent ownership of the Royalties is not a grant of renewal copyrights or rights that arise under the Copyright Act and, for that additional reason, is not subject to § 304(c) termination; and

(h)     Plaintiff's approval rights and other rights under the Marriage Settlement Agreement, and her termination rights under the Wixen Agreements, are rights that arise under State law and not rights that arise under the Copyright Act and, for that additional reason, are not subject to § 304(c) termination.

43.     Plaintiff further contends that, despite Ms. Bono's Notice of Termination, Plaintiff, individually or as the Trustee of The Veritas Trust:

(a)     Continues to own and owns an undivided fifty percent of the Composition Royalties, from any and all sources, including whether those sources are music publishers or other companies identified in the Notice of Termination or others taking their place upon termination of Sonny's grants to them;

(b)     Continues to own and owns an undivided fifty percent of the Record Royalties payable under the Recording Contracts;

13

(c)     Continues to have the right to reimbursement and compensation in the event that Sonny or his successors, including Ms. Bono, individually or as Trustee of The Bono Collection Trust, has agreed to, permitted, or allowed administrators to charge, and, in the calculation of Plaintiff's fifty percent of Composition Royalties, have deducted or deduct, administration fees in excess of ten percent;

(d)     Continues to have approval rights as to any and all third party contracts with respect to the Musical Compositions and Royalties, including but not limited to any future agreement or agreements with Wixen;

(e)     Continues to have the right to terminate the Wixen Agreements as expressly provided in the Wixen Agreement;

(f)     Continues to have the right to disapprove a new agreement or agreements with Wixen, and the withholding of approval of Wixen is reasonable, including, without limitation, on the grounds that:

(1)     Paying Wixen a commission to administer the Musical Compositions that already are administered by other music publishers in return for administration fees equal to or in excess of ten percent, violates the Marriage Settlement Agreement and exceeds the ability and authority of The Bono Collection Trust, as successor in interest to Sonny, to select administrators; and

(2)     Plaintiff is informed and believes, and upon that basis alleges, that Wixen, without Plaintiff's knowledge or consent and in violation of the terms of the Administration Agreement and Collection Agreement, has encouraged, aided, and abetted defendants' scheme of misusing the Notice of Termination in an attempt to deprive Plaintiff of her rights and her ownership of her

14

fifty percent of Royalties that Sonny assigned to her in the Marriage Settlement Agreement as her share of their community property;

(g)     Continues to have approval rights with respect to all other agreements with third parties respecting the Musical Compositions and Composition Royalties; and

(h)     Continues to have the right to elect to have her fifty percent of Record Royalties paid directly to her by record companies.

44.     Plaintiff is informed and believes, and upon that basis alleges, that defendants dispute the foregoing contentions, and each of them.

45.     A judicial declaration of the respective rights and obligations of Plaintiff and defendants is necessary and appropriate.

## SECOND CLAIM FOR RELIEF

### (For Breach of Contract)

### (Against Defendants)

46.     Plaintiff refers to and re-alleges each and every allegation contained in paragraphs 1 through 44, inclusive, above, as if set forth herein.

47.     The Marriage Settlement Agreement provides, *inter alia*, that it is binding upon, and inures to the benefit, of the parties and their respective heirs and assigns.

48.     Plaintiff has performed all of her obligations, and satisfied all conditions to be satisfied by her, under the Marriage Settlement Agreement, except as her performance and satisfaction are excused by reason of the defendants' breaches.

49.     Defendants have breached, or anticipatorily breached, or both, the Marriage Settlement Agreement by:

(a)     Refusing to pay, and directing Wixen not to pay, to Plaintiff, as Trustee of the Veritas Trust, her undivided fifty percent of the United States Composition Royalties;

(b)     Repudiating Plaintiff's approval rights with respect to all agreements with third parties respecting the Musical Compositions and Composition Royalties, including new agreements with Wixen;

(c)     Repudiating Plaintiff's right to terminate the Wixen Agreements;

(d)     Agreeing to, permitting, or allowing Wixen and possibly others to charge administration fees in addition to those administration fees charged by other music publishers with respect to the same Composition Royalties, thereby increasing the levels of administration and increasing the administration fees charged against and deducted from those Composition Royalties and, as a result, violating the Marriage Settlement Agreement's limit on administration fees and reducing the amount paid to Plaintiff after deduction of those excessive administration fees; and

(e)     Refusing to honor Plaintiff's election to have her fifty percent of Record Royalties paid directly to her, as expressly provided in the Marriage Settlement Agreement.

The full nature and extent of defendants' breaches are not presently known and Plaintiff will, if necessary and appropriate, seek leave of Court to amend this Complaint to allege all of defendants' breaches once they are ascertained.

50.     As a direct and proximate result of defendants' breaches, Plaintiff has sustained damages, and will continue to sustain damages, in an amount not presently known but believed to exceed $1,000,000.

51.     Plaintiff is entitled to and requests the imposition of a constructive trust on the undivided fifty percent of Royalties that she owns but which defendants have received and failed to pay over to her or instruct that she be paid directly.

///

///

## **PRAYER**

**WHEREFORE,** Plaintiff prays for judgment as follows:

1.     On the First Claim for Relief for declaratory relief against defendants, a declaration in accordance with plaintiff's contentions, including as follows, and such further necessary or proper relief as Plaintiff may request based on that declaration:

(a)     The Notice of Termination did not terminate, and could not have terminated, the Marriage Settlement Agreement or its recognition and confirmation of Plaintiff's community property, the Marriage Settlement Agreement's assignment to her of fifty percent of the Royalties as her sole and separate property in perpetuity and throughout the world, and Plaintiff's other rights under the Marriage Settlement Agreement, or any of the foregoing;

(b)     The Notice did not terminate, and could not have terminated, grants executed by Sonny on or after January 1, 1978, of renewal copyrights, or rights under renewal copyrights, in the Musical Compositions, and, as a result, has no effect on Plaintiff's ownership of fifty percent of all Composition Royalties received pursuant to those grants;

(c)     The Notice did not terminate Sonny's grants of rights under the Recording Contracts, including because the Notice was not served on the Record Companies and does not identify the Record Companies as grantees whose rights were being terminated;

(d)     The Notice did not terminate, and could not have terminated, Sonny's grants of renewal copyrights, or rights under renewal copyrights, in the Musical Compositions that he did not author or co-author but instead acquired prior to July 14, 1978, and, for that additional reason, has no effect on Plaintiff's ownership of fifty percent of all Composition Royalties received pursuant to those grants;

(e)    The Notice did not terminate, and could not have terminated, Sonny's grants of rights outside the United States and, for that additional reason, has no effect on Plaintiff's ownership of fifty percent of all Composition Royalties received pursuant to those grants;

(f)    The Marriage Settlement Agreement's recognition and confirmation of Plaintiff and Sonny's community property, including the Record Royalties, Musical Compositions, and Composition Royalties, is not a grant of renewal copyrights, or rights under renewal copyrights, and, instead, Plaintiff's fifty percent ownership of Record Royalties, Musical Compositions, and Composition Royalties arose under State law and, for that additional reason, are not subject to § 304(c) termination;

(g)    Sonny's assignment to Plaintiff in the Marriage Settlement Agreement of an undivided fifty percent ownership of the Royalties is not a grant of renewal copyrights or rights that arise under the Copyright Act and, for that additional reason, is not subject to § 304(c) termination;

(h)    Plaintiff's approval rights and other rights under the Marriage Settlement Agreement, and her termination rights under the Wixen Agreements, are rights that arise under State law and not rights that arise under the Copyright Act and, for that additional reason, are not subject to § 304(c) termination; and

(i)    Despite the Notice of Termination, Plaintiff, individually or as the Trustee of The Veritas Trust:

(1)    Continues to own and owns an undivided fifty percent of the Royalties, from any and all sources, including whether those sources are music publishers or other companies identified in the Notice of Termination or others taking their place upon termination of Sonny's grants to them;

///

18

(2)     Continues to have the right to reimbursement and compensation in the event that Sonny or his successors, including Ms. Bono, individually or as Trustee of The Bono Collection Trust, has agreed to, permitted, or allowed administrators to charge, and, in the calculation of Plaintiff's fifty percent of Composition Royalties, have deducted or deduct, administration fees in excess of ten percent;

(3)     Continues to have approval rights as to any and all third party contracts with respect to the Musical Compositions and Royalties, including but not limited to any future agreement or agreements with Wixen;

(4)     Continues to have the right to terminate the Wixen Agreements as expressly provided in the Wixen Agreement;

(5)     Continues to have the right to disapprove a new agreement or agreements with Wixen, and the withholding of approval of Wixen is reasonable, including, without limitation, on the grounds that:

(i)     Paying Wixen a commission to administer the Musical Compositions that already are administered by other music publishers in return for administration fees equal to or in excess of ten percent, violates the Marriage Settlement Agreement and exceeds the ability and authority of The Bono Collection Trust, as successor in interest to Sonny, to select administrators; and

(ii)     Plaintiff is informed and believes, and upon that basis alleges, that Wixen, without Plaintiff's knowledge or consent and in violation of the terms of the Administration Agreement and Collection Agreement, has

19

encouraged, aided, and abetted defendants' scheme of misusing the Notice of Termination in an attempt to deprive Plaintiff of her rights and her ownership of her fifty percent of Royalties that Sonny assigned to her in the Marriage Settlement Agreement as her share of their community property;

(6)     Continues to have approval rights with respect to all other agreements with third parties respecting the Musical Compositions and Composition Royalties; and

(7)     Continues to have the right to elect to have her fifty percent of Record Royalties paid directly to her by record companies;

2.     On the Second Claim for Relief for breach of contract, damages according to proof but believed to exceed $1,000,000;

3.     For Plaintiff's costs of suit and, to the extent permitted by law, reasonable attorneys' fees;

4.     For prejudgment interest on all sums awarded; and

5.     For such other and further relief as the Court deems just and proper.

Dated: March 28, 2023

_____/s/ Peter Anderson_____
Peter Anderson, Esq.
Sean M. Sullivan, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff
CHER
Individually and as Trustee of
The Veritas Trust

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff Cher respectfully demands trial by jury of all issues and claims as to which there is a right of trial by jury.

Dated: March 28, 2023

_____/s/ Peter Anderson_____
Peter Anderson, Esq.
Sean M. Sullivan, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff
CHER
Individually and as Trustee of
The Veritas Trust

21