Peter Anderson, Esq., Cal. Bar No. 88891
peteranderson@dwt.com
Sean M. Sullivan, Esq., Cal. Bar No. 229104
seansullivan@dwt.com
Eric H. Lamm, Esq., Cal. Bar No. 324153
ericlamm@dwt.com
Samuel Turner, Esq., Cal. Bar No. 338089
samturner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Plaintiff and Counterdefendant
CHER, Individually and as
Trustee of The Veritas Trust

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CHER, individually and as Trustee of The Veritas Trust,<br><br>Plaintiff,<br><br>v.<br><br>MARY BONO, individually and as Trustee of the Bono Collection Trust, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-CV-08157 JAK (RAOx)<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF AND COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: February 26, 2024<br>Time: 8:30 a.m. |
| AND RELATED COUNTERCLAIMS | Courtroom of the Honorable John A. Kronstadt United States District Judge |

# TABLE OF CONTENTS

Page


1. INTRODUCTION ..... 1
2. CHER PREVAILS ON HER DECLARATORY RELIEF CLAIM ..... 1
   (a) Ms. Bono Concedes that Cher's MSA Rights Were Not Terminated ..... 1
   (b) Ms. Bono Conflates Copyright Termination and Copyright Renewal ..... 1
   (c) The MSA Is Not an Agreement to the Contrary ..... 2
3. CHER'S BREACH OF CONTRACT CLAIM SUCCEEDS ..... 3
   (a) Ms. Bono Breached the MSA and Creditor's Claim Agreement ..... 3
   (b) Cher Has Proven the Amount of Damages ..... 3
4. MS. BONO'S AFFIRMATIVE DEFENSES FAIL ..... 4
   (a) Ms. Bono's Preemption Arguments Are Frivolous ..... 4
      (1) Section 301(a) Does Not Apply ..... 4
      (2) Section 304(c) Expressly Preserves Cher's Rights ..... 5
      (3) Obstacle Preemption Does Not Apply ..... 6
   (b) The Other Heirs Are Not Necessary Parties ..... 6
      (1) It Is Ms. Bono's Notice of Termination That Reduces the Other Heirs' Share by Increasing Ms. Bono's Share ..... 7
      (2) Complete Relief Indisputably Can Be Accorded ..... 7
      (3) Ms. Bono Adequately Represents the Other Heirs' Interests ..... 8
   (c) Cher Does Not Lack Standing ..... 9
5. MS. BONO'S FIRST COUNTERCLAIM FAILS ..... 9
   (a) Cher's Rights Under Paragraph 10(d) of the MSA ..... 9
   (b) Cher's Rights Under the Creditor's Claim Agreement ..... 10
6. MS. BONO'S SECOND COUNTERCLAIM FAILS ..... 10
7. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altman v. Republic of Austria*,
317 F.3d 954 (9th Cir. 2002) .......... 8

*Alto v. Black*,
738 F.3d 1111 (9th Cir. 2013) .......... 7, 8

*Applera Corp. v. MP Biomedicals, LLC*,
173 Cal. App. 4th 769 (2009) .......... 4

*Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*,
214 F.3d 1030 (9th Cir. 2000) .......... 10

*Copeland v. Baskin Robbins U.S.A.*,
96 Cal. App. 4th 1251 (2002) .......... 10

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.*,
430 F.3d 1036 (9th Cir. 2005) .......... 3

*Dead Kennedys v. Biafra*,
37 F. Supp. 2d 1151 (N.D. Cal. 1999) .......... 5

*Jacobsen v. Luckenbach S.S. Co.*,
201 F. Supp. 883 (D. Or. 1961) .......... 8

*Marsu, B.V. v. Walt Disney Co.*,
185 F.3d 932 (9th Cir. 1999) .......... 4

*Montz v. Pilgrim Films & Television, Inc.*,
649 F.3d 975 (9th Cir. 2011) .......... 5

*Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana St. Dept. Health*,
699 F.3d 962 (7th Cir. 2012) .......... 6

*Rodrigue v. Rodrigue*,
218 F.3d 432 (5th Cir. 2000) .......... 5

*Salt River Project Agr. Imp. & Power Dist. v. Lee*,
672 F.3d 1176 (9th Cir. 2012) .......... 8

*Stewart v. Abend*,
495 U.S. 207 (1990) .......... 6

*U.S. v. Bowen*,
172 F.3d 682 (9th Cir. 1999) .......... 8

**Statutes**

17 U.S.C.
§ 106 .......... 4, 5
§ 106(1) .......... 5
§ 301(a) .......... 4, 5
§ 304(c) .......... 2, 5, 6, 10
§ 304(c)(2)(A) .......... 7
§ 304(c)(2)(B) .......... 7
§ 304(c)(5) .......... 2, 3
§ 304(c)(6)(E) .......... 1, 2, 3, 4, 5, 6
§ 304(c)(6)(F) .......... 1, 2, 4, 5, 6

**Rules**

Fed. R. Civ. P. 19(a) .......... 6

**Other Authorities**

H.R. Rep. 94-1476 .......... 6

3 W.F. PATRY, PATRY ON COPYRIGHT § 7:46 (2023) .......... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Ms. Bono admits that her Notice of Termination "did not terminate Cher's rights" under the MSA. Bono Opp. (Doc. 86) at 9:15. Ms. Bono also concedes that Section 304(c)(6)(E)'s mandate that termination "in no way affects rights arising under any other Federal, State, or foreign laws" bars her Notice of Termination from affecting Cher's rights under the MSA to royalties *from foreign exploitation* of the musical compositions. *See, e.g.*, Bono Memo. (Doc. 18-1) at 9 n.8. That same provision's reference *to State rights*, as well as Section 304(c)(6)(F)'s mandate that non-terminated grants continue in effect, establish that Cher is entitled to her requested declaration of rights and to her share of Composition Royalties that Ms. Bono diverted and those Wixen is holding. All of Ms. Bono's other arguments are mere distractions.

## 2. CHER PREVAILS ON HER DECLARATORY RELIEF CLAIM

### (a) Ms. Bono Concedes that Cher's MSA Rights Were Not Terminated

This case is made very simple by Ms. Bono's concession that the Notice of Termination does not terminate Cher's MSA rights. Bono Opp. at 9. Section 304(c)(6)(F) provides that "[u]nless and until" a grant is terminated, "the grant, if it does not provide otherwise, continues in effect[.]" As Ms. Bono admits the MSA was not terminated, Cher's royalty and approval rights remain in effect. *See* Cher Memo. (Doc. 65-1) at 7-8. Accordingly, Cher prevails on her first claim for relief.

### (b) Ms. Bono Conflates Copyright Termination and Copyright Renewal

Ms. Bono's "position" is that "the MSA cannot govern the renewal term of the at-issue copyrights because those copyrights reverted to the Bono Heirs as their sole property, and because Sonny could not have alienated the Bono Heirs' rights to the extension term." Bono Opp. at 10. But that is wrong on every level.

First, the copyrights were renewed before Ms. Bono approved Cher's MSA rights and the Heirs took subject to them in 1999. That confirms the MSA applies during the renewal terms. Cher Opp. (Doc. 88) at 10-11; Cher Resp. to Cher Fact 27.

Second, Section 304(c) expressly applies to grants "of the renewal copyright or any right under it," and Sections 304(c)(6)(E)-(F) provide that grants remain in force if not terminated or if they grant State law rights. Thus—and contrary to Ms. Bono's "position"—some of an author's grants *will* "govern" "reverted" renewal copyrights, and rights thereunder will *not* "revert" to an author's heirs "as their sole property."

Third, Ms. Bono's assertion that Sonny "could not have alienated the Bono Heirs' rights to the extension term" confuses the renewal scheme with termination. Renewal is irrelevant (*see* Cher Opp. at 9-13) and Section 304(c) provides that only copyright grants are terminable, that termination "in no way affects" State law rights, and that non-terminated grants continue "for the remainder of the extended renewal term." 17 U.S.C. § 304(c), (c)(6)(E)-(F).

Ms. Bono also argues that Cher is not entitled to royalties from "grants that the Bono Heirs terminated." Bono Opp. at 11. But that is nonsensical: terminated grants do not generate royalties. If Ms. Bono means royalties from new post-termination grants, she is wrong because the MSA assigned Composition Royalties from *all sources perpetually* and that assignment was not terminated. Cher Facts 4, 43.[1]

**(c) The MSA Is Not an Agreement to the Contrary**

Ms. Bono raises that Section 304(c)(5) provides that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary." Bono Opp. at 4, 10. But Cher has repeatedly shown that the MSA is not an agreement to the contrary because, for example, it in no way prevents the Heirs from terminating copyright grants. *See* Cher Opp. at 13; Opp. to Mot. to Dismiss (Doc. 19) at 12-14; Supp. Brief in Opp. to Mot. to Dismiss (Doc. 25) at 2-4; *see also* Order (Doc. 43) at 7.

Ms. Bono also falsely claims that "Section 304(c)(5) says it preempts state contract rights." Bono Opp. at 12. It says no such thing. And while it might prohibit

---

[1] "Cher Facts" refers to Facts 1 through 113 in Cher's Response to Statement of Disputed Facts filed herewith. "Bono Facts" refers to Facts 114 through 164 in Cher's Response to Additional Facts filed herewith.

an agreement not to terminate a copyright grant, it does not "preempt" all contract rights. *See, e.g.*, 3 W.F. PATRY, PATRY ON COPYRIGHT § 7:46 (2023) (Section 304(c)(5) does not "prohibit all contractual activity, only agreements that purport to waive terminat[ion] rights."); *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1043-45 (9th Cir. 2005) (1983 agreement replacing 1930 grant not an "agreement to the contrary"). Ms. Bono's claim that Section 304(c)(5) preempts all State contract rights would render meaningless Section 304(c)(6)(E)'s mandate that those rights are unaffected. *See also* below at 4-6 (addressing Ms. Bono's other preemption arguments). Cher prevails on her first claim as a matter of law.

**3. CHER'S BREACH OF CONTRACT CLAIM SUCCEEDS**

**(a) Ms. Bono Breached the MSA and Creditor's Claim Agreement**

Cher has demonstrated that Ms. Bono breached *the MSA* by diverting Cher's royalties and, in response, Ms. Bono raises only the flawed arguments addressed above. *See* Bono Opp. at 14. Ms. Bono also breached Sections 1 and 4 of the Creditor's Claim Agreement by diverting Cher's royalties. *See* Cher Facts 18, 24. Ms. Bono argues that Section 3 of the Creditor's Claim Agreement is no longer binding (*see* below at 10), but that is not the Section Ms. Bono breached by diverting Cher's royalties. Ms. Bono argues that she signed the Creditor's Claim Agreement as administrator of Sonny's Estate. But she also is an Heir and took subject to both the Creditor's Claim Agreement approving Cher's Creditor's Claim and the MSA. *See* Cher's Resp. to Cher Fact 54.[2]

**(b) Cher Has Proven the Amount of Damages**

Cher has proven damages of at least $1,083,456.04 (*i.e.*, $93,767.46 in Cher's royalties that Ms. Bono personally received,[3] plus $989,688.58 in Cher's royalties that

---

[2] Ms. Bono also repudiates the MSA and Creditor's Claim Agreement by claiming that Cher no longer has approval rights except as a courtesy (Bono Opp. at 15:1-8), but Cher does not seek damages on account of these breaches.

[3] Of this amount, Ms. Bono disputes only $267.46. *See* Cher Fact 59.

Wixen is holding pending this litigation). Cher Memo. at 11; Cher Fact 64. Ms. Bono criticizes this damage calculation as "inexact." Bono Opp. at 3. But it is simple math using undisputed figures. Moreover, "[t]he law requires only that some reasonable basis of computation of damages be used … even if the result is an approximation." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938-39 (9th Cir. 1999).

Ms. Bono argues that the amounts in the trust accounts should be reduced by 10% to pay Wixen's administration fee. Bono Opp. at 4. But that is an issue between Cher and Wixen, not grounds for Ms. Bono to reduce Cher's recovery. Ms. Bono also raises that Cher assigned her post-June 2022 royalties to Iconic. *Id.* at 3. Of course, that does not affect Cher's right to recover the Composition Royalties that Ms. Bono took ($93,767.46) and those held by Wixen ($418,156.82) as of June 30, 2022. Cher Fact 63. That Cher must pay Iconic the post-June 2022 royalties she recovers is between her and Iconic and also not grounds for Ms. Bono to reduce Cher's recovery. *See Applera Corp. v. MP Biomedicals, LLC*, 173 Cal. App. 4th 769, 786-87 (2009) (assignee's contractual obligation to remit half of royalties recovered in action to assignor "does not affect [assignee's] standing to sue defendant for such royalties").

Cher also is entitled to the interest on the held sums: they are her royalties and the parties agreed to their deposit in interest-bearing accounts. Cher Facts 57, 61, 62.

## 4. MS. BONO'S AFFIRMATIVE DEFENSES FAIL

### (a) Ms. Bono's Preemption Arguments Are Frivolous

Cher's State law rights cannot possibly be preempted by the Copyright Act because *that very Act* expressly provides that termination "in no way affects" State law rights and also does not affect rights under non-terminated grants (like the MSA). 17 U.S.C. § 304(c)(6)(E)-(F); Cher Memo. at 12-13.

#### (1) Section 301(a) Does Not Apply

Ms. Bono selectively quotes from Section 301(a) (Bono Opp. at 11:20-23), but that Section preempts State law claims only if they are based on rights "equivalent to" the copyright rights "specified by Section 106" and lack an extra element such as a

contract. 17 U.S.C. § 301(a); *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 980 (9th Cir. 2011). Cher's royalty and approval rights do not give her the right to, *e.g.*, "reproduce the [underlying musical compositions] in copies or phonorecords" (17 U.S.C. § 106(1)), and are based on a contract. *See* Cher Memo. at 12:15-13:9.

Ms. Bono argues that Cher's rights "*aris[e] from*" the "exclusive rights of copyright," or "the right … 'to do and to authorize'" those rights. Bono Opp. at 13:11-18 (emphasis added). But whether royalties or other payments "arise from" copyright rights is not the test—if it were, the Copyright Act would preempt every contract claim for payments arising from exploitation of a work, like an actor's contract for movie profits. Ms. Bono cites no authority for such a startling result. On the other hand, numerous authorities hold that royalty and approval rights are not "equivalent to" Section 106 rights, *even when they arise from copyrighted works*. Cher Memo. at 8:27-9:12 & n.2 (collecting cases); *see also* *Rodrigue v. Rodrigue*, 218 F.3d 432, 435 (5th Cir. 2000) ("[N]one of [the Section 106] rights … include the exclusive right to enjoy income … derived from copyrights."). Ms. Bono's attempts to distinguish these authorities fail. For example, *Dead Kennedys v. Biafra*, 37 F. Supp. 2d 1151, 1154 (N.D. Cal. 1999), held that a conversion claim for royalties *from copyrighted works* was not preempted because it did not "assert[] an equivalent right" to a copyright right.

**(2) Section 304(c) Expressly Preserves Cher's Rights**

Ms. Bono argues that Section 304 "explicitly preempts" Cher's rights because Congress intended federal law to control copyright terminations. Bono Opp. at 12. But that very same *federal law* mandates that termination "in no way affects rights arising under any … State … laws" and also that non-terminated grants "continue[ ] in effect…." 17 U.S.C. § 304(c)(6)(E)-(F). Ms. Bono argues that "[f]ederal law provides that the Bono Heirs became the owners of the copyrights as a new property interest unencumbered by the MSA after termination." Bono Opp. at 12:16-17. But she again confuses renewal with termination, and the latter expressly preserves rights—including Cher's rights—under State law. *See* Cher Opp. at 9-12.

Thus, it is Ms. Bono, not Cher, who urges a result contrary to federal law.

**(3) Obstacle Preemption Does Not Apply**

Ms. Bono also argues that Cher's MSA rights stand as an obstacle to the Congressional intent behind Section 304(c), which Ms. Bono asserts was "to grant the author's heirs the economic benefit of the reverted copyrights." Bono Opp. at 12. However, Section "304(c) 'was part of a compromise package'" between competing interests. *Stewart v. Abend*, 495 U.S. 207, 225-26 (1990). As part of that compromise, Congress expressly and unambiguously provided that termination affects only copyright grants, not State law rights, and not even copyright rights under non-terminated grants. 17 U.S.C. § 304(c)(6)(E)-(F); *see also* H.R. Rep. 94-1476 at 126, 141 ("termination means that ownership of the rights *covered by the terminated grant* revert" and "rights under … State … laws are unaffected.") (emphasis added). As Congress explicitly provided that rights like Cher's survive termination, Cher's rights cannot possibly be an obstacle to Congress' intent. *See, e.g.*, *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana St. Dept. Health*, 699 F.3d 962, 985 (7th Cir. 2012) (where federal law did not restrict State authority, State law "c[ould not] possibly stand as an obstacle to the accomplishment of congressional objectives").

Finally, Ms. Bono argues that termination would not be meaningful if State law royalty payments are not terminable. That plainly is not true: the terminating party recaptures a copyright and, for example here, removes Sonny's music publishers from the royalty stream. In any event, just how "meaningful" is Congress' decision to make, and Congress expressly chose that termination does not affect rights under State law, including State law contractual rights. "[I]t is not [the Court's] role to alter the delicate balance Congress has labored to achieve." *Stewart*, 495 U.S. at 230.

**(b) The Other Heirs Are Not Necessary Parties**

The other Heirs are not necessary parties under Rule 19(a) because (1) the Court can accord complete relief, (2) Ms. Bono adequately represents the other Heirs' interests, and (3) there is no risk of inconsistent judgments. *See* Cher Memo. at 13-

14; Cher Opp. at 3-8. Ms. Bono's arguments to the contrary lack merit.

**(1) It Is Ms. Bono's Notice of Termination That Reduces the Other Heirs' Share by Increasing Ms. Bono's Share**

Ms. Bono falsely argues that Cher's claims will "worsen" the other Heirs' "ownership position." Bono Opp. at 1, 4-5. In reality, *Ms. Bono*—not Cher—reduced the children's interests by serving the Notice of Termination. That is so because Ms. Bono owned only a 33.3% share of Sonny's 50% share of Composition Royalties, with the remaining 66.7% of Sonny's share owned by his four children (16.7% each). Bono Fact 129. But Ms. Bono, by serving the Notice of Termination, increased her share to 50% of Sonny's share at the expense of the children, who went from 66% to 50% of Sonny's share (12.5% each). *See* 17 U.S.C. § 304(c)(2)(A)-(B); Anderson Decl. Ex. 17 (Doc. 65-24). Cher, on the other hand, has always been, and remains, entitled to her separate 50% share of the Composition Royalties under the MSA.

In any event, the effect of the Notice of Termination on the other Heirs' interests in no way establishes that Ms. Bono cannot represent the other Heirs' interests in this action (*see* Bono Opp. at 1). Furthermore, while Ms. Bono has bettered her own position at the children's expense, her argument ignores that by terminating music publishers and removing them from the royalty stream, the Composition Royalties increase for all. It is no wonder none of the other Heirs have objected, further confirming they are not necessary parties.

**(2) Complete Relief Indisputably Can Be Accorded**

Ms. Bono argues that "complete relief" cannot be granted because "Sonny's children have an unquestionable interest … in this matter." *E.g.*, Bono Opp. at 8:7-9, 7:20-23. But that has nothing to do with complete relief. Rather, the Court can accord the complete relief Cher requests because it involves a narrow legal issue—the effect of the Notice of Termination on Cher's rights, and there is no risk of "partial or hollow relief" or "multiple lawsuits" as to that issue. Cher Memo. at 13-14; *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013). Complete relief also does not turn on whether

the Bono Collection Trust still exists, because Ms. Bono also is sued individually and Cher's relief is sought as to Ms. Bono's individual termination interests. *See* FAC (Doc. 45) at caption, 2 ¶ 6. Cher seeks no judgment against the other Heirs.

Ms. Bono also points out that the other Heirs receive a portion of Cher's royalties held in Wixen's trust accounts if Ms. Bono prevails. Bono Opp. at 7:16-17. But she ignores that the other Heirs agreed to deposit those royalties in the trust accounts pending this action. Cher Fact 57; Bono Decl. (Doc. 64-3) at 3 ¶ 13.

Ms. Bono argues that Cher "avoids the legal issue of whether" post-termination interests reverted "not just to Mary, but to *all* of Sonny's Heirs." Bono Opp. at 7:1-7. But the other Heirs are undisputed owners of post-termination interests, and none of the requested relief requires the Court to determine what each Heir's interests are. Ms. Bono also relies on *Jacobsen v. Luckenbach S.S. Co.*, 201 F. Supp. 883, 889 (D. Or. 1961), but even assuming *Jacobsen* holds that contract parties are always necessary parties, that rule is no longer good law. *See* Cher Opp. at 6:11-24.

Finally, Ms. Bono writes off that the other Heirs are aware of this action, and even share Ms. Bono's counsel, but have not intervened. *See* Cher Resp. to Cher Fact 74. But that is a critical consideration. *See* *Altman v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002); *U.S. v. Bowen*, 172 F.3d 682, 688-89 (9th Cir. 1999).

**(3) Ms. Bono Adequately Represents the Other Heirs' Interests**

In arguing that the other Heirs have an interest in this case, Ms. Bono simply ignores that their interest "will not be impaired by [their] absence" because she adequately represents them. *Alto*, 738 F.3d at 1127; *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012). Ms. Bono also fails to identify any argument the other Heirs would make that she would not, or any necessary element the other Heirs would supply. In contrast, Cher has shown that Ms. Bono adequately represents their interests for many reasons, including because she manages their copyright interests. *See* Cher Opp. at 4:27-5:21 (additional reasons).

Indeed, any doubt of adequate representation is dispelled by documents that

Ms. Bono wrongfully withheld and was recently ordered to produce. They establish that last year, Ms. Bono formed Bono Legacy LLC, in which she is the manager, to manage the Heirs' rights. Anderson Reply Decl. at 1-2 ¶¶ 4-5, Exs. 47-48. Also, if for any reason the Court concludes the other Heirs are necessary parties and the Court accepts Ms. Bono's unsubstantiated position that joinder is feasible (*see* Cher Opp. at 7:1-9), the remedy is to order their joinder, not to dismiss the case.

**(c) Cher Does Not Lack Standing**

Ms. Bono argues that Cher "lost standing" (Bono Opp. at 8-9), but Cher established that her catalog sale did not deprive her of standing, including because standing is determined at the time of filing. *See* Cher Memo. at 14:24-15:1 (collecting cases). Further, Ms. Bono concedes that Cher's breach of contract claim is not moot because Cher retains her rights to pre-July 1, 2022 royalties (Bono Opp. at 8), and Cher's right to recover the remainder is a separate issue. *See* above at 4. With respect to Cher's declaratory relief claim, which arises out of the same live controversy, Ms. Bono ignores Cher's personal interest in determining what she assigned and that the Court's decision affects what she receives in exchange. Cher Facts 78-79.

**5. MS. BONO'S FIRST COUNTERCLAIM FAILS**

Cher showed she is entitled to summary judgment on the portion of Ms. Bono's first counterclaim denying that Ms. Bono breached the Creditor's Claim Agreement (Cher Memo. at 16), and Ms. Bono concedes Cher's right to terminate Wixen (Bono Facts 151, 153). The remaining portions of Ms. Bono's first counterclaim also fail.

**(a) Cher's Rights Under Paragraph 10(d) of the MSA**

Ms. Bono raises that the MSA gave Sonny the right to appoint an administrator, but that is neither more specific nor does it contradict Cher's right to approve "all agreements with third parties," including with royalty administrators. *See* Cher Resp. to Cher Fact 6. Ms. Bono, who is no administrator, also cannot avoid summary judgment or Cher's approval rights by hypothetically forming an entity—*i.e.*, a third party—and calling it an administrator. Cher Resp. to Bono Fact 163.

**(b) Cher's Rights Under the Creditor's Claim Agreement**

Ms. Bono also argues that the Creditor's Claim Agreement's Section 3 no longer requires that she and Cher agree on a "mutually acceptable mechanism" for royalty payments. Bono Opp. at 15. Cher has already addressed Ms. Bono's arguments that this Section is a one-time obligation, too uncertain, and supposedly breached by Cher. Cher Opp. at 20:3-21:12. Ms. Bono additionally argues that it is an agreement to agree. But the obligation to cooperatively develop a *mutually acceptable* royalty mechanism is a "closed, discrete, and actionable proposition." *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir. 2000) (agreement to "team … to bid for [government] contract" was not unenforceable agreement to agree); *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1258, 1260 (2002) (contract to negotiate an agreement was enforceable).

Ms. Bono argues the MSA rights to elect direct payment of Record Royalties are contrary to the Creditor's Claim Agreement. Bono Opp. at 16-17. But the Creditor's Claim Agreement approved the MSA, which includes those rights. And that the Record Royalties do not require an administrator is irrelevant to the parties' obligation to develop a mechanism for the royalties that do. Ms. Bono also argues that Cher breached the Creditor's Claim Agreement by not agreeing to a new mechanism after terminating Wixen. But the parties agreed that Wixen would administer the royalties pending this litigation. Cher Resp. to Bono Fact 154.

Accordingly, Ms. Bono's first counterclaim fails as a matter of law.

## 6. MS. BONO'S SECOND COUNTERCLAIM FAILS

Ms. Bono's opposition ignores her second counterclaim, which fails.

## 7. CONCLUSION

Section 304(c) is clear, there is no genuine dispute as to the relevant facts, and Cher's Motion should be granted in its entirety.

Dated: January 19, 2024

*/s/ Peter Anderson*
Peter Anderson, Esq.
[continued next page]

Sean M. Sullivan, Esq.
Eric H. Lamm, Esq.
Samuel Turner, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff and Counterdefendant
CHER
Individually and as Trustee of The Veritas Trust