UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Present |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 64); PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 65)**

## I.     Introduction

On October 13, 2021, Cher ("Plaintiff") brought this action against Mary Bono ("Defendant"), the widow of Salvatore Bono ("Sonny"). Dkt. 1. On March 28, 2023, Plaintiff filed the operative First Amended Complaint (the "FAC"). Dkt. 45. The FAC advances two causes of action arising from a dispute over royalties for musical compositions and recordings: (1) declaratory relief as to the effect of 17 U.S.C. § 304(c) termination on Plaintiff's rights; and (2) breach of contract. *Id.* ¶¶ 40–51. On April 11, 2023, Defendant brought counterclaims against Plaintiff seeking declaratory relief as to the following: (1) Plaintiff's rights and obligations concerning the selection of an administrator; and (2) Defendant's right to enter into new agreements for sound recording copyrights that she owns. Dkt. 47 ¶¶ 39–51.

On November 20, 2023, Defendant filed a Motion for Summary Judgment ("Defendant's Motion"). Dkt. 64. On the same day, Plaintiff also filed a Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment ("Plaintiff's Motion"). Dkt. 65. Plaintiff filed an opposition to Defendant's Motion ("Plaintiff's Opposition" (Dkt. 88)), and Defendant filed an opposition to Plaintiff's Motion ("Defendant's Opposition" (Dkt. 86)). Each party then filed a reply in support of its motion. ("Defendant's Reply" (Dkt. 94)); ("Plaintiff's Reply" (Dkt. 92)).

A hearing on the Motions was held on February 26, 2024, and they were taken under submission. For the reasons stated in this Order, Defendant's Motion is **DENIED** as to all issues presented except for her first counterclaim, which is **GRANTED IN PART**, and Plaintiff's Motion is **GRANTED** as to all remaining issues except for her second claim for breach of contract, which is **GRANTED IN PART**.

## II.    Factual Background

### A.    Musical Career of Plaintiff and Sonny

Plaintiff and Sonny married in 1967. Dkt. 94-1 at 9. Together, they performed and recorded several popular musical compositions, including some written or acquired by Sonny during their marriage. *Id.* Their marriage was dissolved in 1975. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

   B.   1978 Marriage Settlement Agreement

On August 10, 1978, Plaintiff and Sonny entered a Marriage Settlement Agreement ("MSA"). Dkt. 64-5. The MSA is governed by California law and was approved by the Los Angeles Superior Court. *Id.* ¶ 20. Under its terms, Plaintiff is assigned an "undivided 50% interest" in the following:

- Any and all contingent receipts payable after July 14, 1978, "from Atlantic Recording Corporation under the agreement dated August 30, 1966, . . . from Liberty/U.A. Inc. under the agreements dated from and after November 1, 1964 . . . [and] from MCA Records, Inc. under agreements dated January 1, 1972, and February 11, 1971 [(collectively, the Recording Contracts)]" (the "Record Royalties" (*id.* ¶ 10(a)–(c)); and

- Any and all of Sonny's "right, title and interest, individually or through any other business, corporation, firm or entity in which he has an interest" in and to contingent receipts payable after July 14, 1978, "from musical compositions and interests therein, written and composed, in whole or in part, by [Sonny] or others prior to February 1, 1974, and/or acquired by [Sonny and certain other entities] prior to [the couple's separation]" (the "Composition Royalties" (*id.* ¶ 10(d))).

The MSA states that all such receipts "shall be subject to an administration fee to be kept and retained by the worldwide administrator(s), which administrator(s) to be engaged shall be subject to [Sonny]'s sole discretion." *Id.* ¶ 10(d). This administration fee "shall be a sum equivalent to 10% of the gross income actually received . . . from all sources worldwide." *Id.* Moreover, "all agreements with third parties respecting the subject matter of this paragraph 10(d) are subject to the approval of [Plaintiff] or [Plaintiff]'s representatives which approval will not be unreasonably withheld." *Id.* The MSA further provides that all of Sonny's successors in interest, assigns and all third parties with whom he or any of his other businesses contracted are subject to Plaintiff's rights as set forth in paragraph 10(d). *Id.*

   C.   Sonny's Death

Following Sonny's death in 1998, a probate action was initiated in the Los Angeles Superior Court. Dkt. 92-1 ¶ 15. Plaintiff filed a creditor's claim in that action, in which she asserted Sonny's obligations to her under the MSA. Dkt. 94-1 at 13. Defendant, as Sonny's widow and administrator of his estate, reached an agreement with Plaintiff approving her claim and recognizing "her ongoing rights under the terms and conditions" of the MSA (the "Creditor Claim Agreement"). Dkt. 92-1 ¶ 21; Dkt. 94-1 at 14. Defendant subsequently honored Plaintiff's rights under the MSA, including her share of the Record Royalties and Composition Royalties. Dkt. 92-1 ¶ 28.

After Sonny's estate was closed, Plaintiff and Defendant agreed to engage Jay Glick as administrator to collect and disburse royalties. *Id.* ¶ 80. In 2011, Plaintiff and Defendant agreed to replace Glick with Wixen Music Publishing, Inc. ("Wixen"). *Id.* ¶ 82.

   D.   2016 Notice of Termination of Sonny's Pre-1978 Music Publishing Grants

In 2016, Defendant issued a Notice of Termination (the "Notice") under 17 U.S.C. § 304(c) to various music publishers to which Sonny had granted a transfer or license of copyright in musical compositions that he had authored or co-authored. Dkt. 94-1 at 23. The effective dates of termination ranged from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
| Title | Cher v. Mary Bono | | |

2018 to 2026. *Id.* The Notice was issued without Plaintiff's knowledge or consent. Dkt. 92-1 ¶ 103. The Notice did not purport to terminate the MSA or the Recording Contracts. *Id.* ¶¶ 41, 51.

After the terminations detailed in the Notice became effective, Defendant stopped paying Plaintiff her 50% share of the U.S. Composition Royalties under the MSA. *Id.* ¶ 35. Beginning in September 2021, Defendant advised Plaintiff that she is no longer entitled to her 50% share of the Record Royalties or her approval rights under the MSA. *Id.* ¶¶ 33–34.

      E.      2021 Termination of Wixen Agreements and 2023 General Assignment

In October 2021, Plaintiff elected to terminate the agreements with Wixen. *Id.* ¶ 94. In January 2023, Plaintiff executed a General Assignment of her rights under the MSA to a third party, excluding her share of the Composition Royalties due under the MSA prior to July 1, 2022. *Id.* ¶¶ 76–77.

**III.**    **Evidentiary Issues**

Plaintiff filed several objections to the evidence proffered in support of Defendant's Motion. Dkt. 89. Defendant responded to these objections. Dkt. 94-3. As to the declaration of Daniel J. Schacht, objection no. 2 is **OVERRULED**, because Defendant can authenticate the document. Objection no. 3 is **SUSTAINED**, because Randall Wixen did not authenticate the document in the portion of his deposition testimony cited by Defendant; provided, however, this is not a final determination as to whether this evidence may be admitted at trial if properly authenticated. Objection no. 4 is **SUSTAINED** because the statement is a legal argument.

As to the deposition testimony of Lindsay Scott, objection no. 10 is **SUSTAINED** for lack of foundation because Scott lacked personal knowledge of the matter at issue.

As to the deposition testimony of Defendant, objection no. 15 is **OVERRULED** as to lack of foundation because Defendant has personal knowledge of the matter, and her testimony is not conclusory.

As to the deposition testimony of Randall Wixen, objection no. 19 is **SUSTAINED** under the best evidence rule; provided, however, this is not a final determination as to whether this evidence may be admitted at trial, *e.g.*, if the underlying agreement is received into evidence.

As to the other exhibits to Schacht declaration, objection no. 29 is **OVERRULED** because the best evidence rule does not apply, and there is not a cognizable dispute as to authenticity. Objection no. 32 is **SUSTAINED** because Wixen did not authenticate the document in the portion of his deposition testimony cited by Defendant; provided, however, this is not a final determination as to whether this evidence may be admitted at trial if properly authenticated.

To the extent the evidentiary objections are sustained, that proffered evidence is not considered in deciding the matters addressed in this Order.

Plaintiff's remaining objections, nos. 1, 5–9, 11–14, 16–18, 20–28, 30–31, 33–36, are directed at Defendant's uncontroverted facts rather than the underlying evidence. Plaintiff argues that the facts mischaracterize the cited evidence. However, these are not cognizable evidentiary objections but are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

arguments as to whether there are genuine issues of material facts. Accordingly, these objections overlap with the arguments in Plaintiff's Genuine Disputes of Material Fact (Dkt. 88-1). *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant."); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ("[P]arties briefing summary judgment motions would be better served to 'simply argue' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections."). Because these arguments are evaluated in the corresponding discussion of Defendant's Motion below, the objections are **MOOT**.

### IV. Analysis

#### A. Legal Standards

A motion for summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 324. Where the nonmoving party will have the burden of proof on an issue, the movant need only demonstrate that there is an absence of evidence to support such claims. *Id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

With certain exceptions, only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *Id.* All inferences are to be drawn in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). This means that "where the facts specifically averred by [the nonmoving] party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

A court is not required to assume that "general averments embrace the 'specific facts' needed to sustain the complaint." *Id.* "The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Id.* Thus, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of material fact and defeat summary judgment. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009); *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

  B.  Application

    1.  <u>Defendant's Affirmative Defenses</u>

      a)  Standing and Mootness

Defendant argues that Plaintiff lacks standing to bring her claim for declaratory relief because she sold her catalog to a third party. Dkt. 64-1 at 15. Plaintiff responds that standing is determined at the time of filing, and even construing Defendant's argument as a mootness challenge, her claim for declaratory relief presents a live controversy because its resolution may affect the validity of the General Assignment. Dkt. 88 at 9–10.

      (1)  <u>Legal Standards</u>

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.' " *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61). "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 569 n.4).

Mootness is another limit on federal court jurisdiction that also arises out of Article III. In contrast to standing, however, mootness requires "an actual controversy [to] be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). "The test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (cleaned up). In other words, the "central question" is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Id.* (quoting *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000)). "The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017).

      (2)  <u>Analysis</u>

Plaintiff has standing. It is undisputed that when she first filed the action, she was the sole owner of her rights under the MSA, including her share of the Record Royalties and Composition Royalties. Dkt. 94-1 at 5–6. Because the requested declaratory relief would have redressed her injury in fact at the time Plaintiff filed the initial complaint in this action, she has standing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
| Title | Cher v. Mary Bono | | |

Even if Defendant's argument were characterized as a mootness challenge, Defendant has not shown that Plaintiff's claim for declaratory relief does not present ongoing issues. A declaratory judgment is "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion" insofar as it settles "some dispute which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). Thus, declaratory relief must operate prospectively "to resolve uncertainties or disputes that may result in future litigation." *Screen Cap. Int'l. Corp. v. Lib. Asset Acquisition Co.*, 510 B.R. 248, 261 (C.D. Cal. 2014) (citation omitted); *see also Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1991) (the Declaratory Judgment Act "brings to the present a litigable controversy, which otherwise might only be tried in the future").

Plaintiff seeks a declaration as to the effect of the Notice of Termination to her rights under the MSA. *See, e.g.*, Dkt. 45 at 18–21 ("The Notice of Termination did not terminate, and could not have terminated, the Marriage Settlement Agreement or its recognition and confirmation of Plaintiff's community property, the Marriage Settlement Agreement's assignment to her of fifty percent of the Royalties as her sole and separate property in perpetuity and throughout the world, and Plaintiff's other rights under the Marriage Settlement Agreement, or any of the foregoing."). Plaintiff argues that such a determination affects whether her "rights to receive the Composition Royalties and Record Royalties could . . . have transferred to the buyer." Dkt. 92-1 ¶ 78; *see also* Dkt. 65-3 at 3 ("[T]his Court's determination of whether or not Ms. Bono terminated my rights to the Composition Royalties will affect the value of the property I assigned to the buyer and what I receive in exchange.").

Defendant responds that "the evidence shows that Cher no longer has any interest in Sonny's copyrights, regardless of the outcome of this action" because "no evidence was produced by Cher concerning the value of her assignment." Dkt. 94 at 3; Dkt. 92-1 ¶ 79. From this premise, Defendant concludes that "the controversy of whether [the third-party buyer] has the same rights is now a matter between Mary and [the buyer]." Dkt. 86 at 14. As the party asserting mootness, Defendant must show that there is no longer an actual controversy. Defendant has not proffered evidence showing that the requested declaration would not operate prospectively to affect the validity of Plaintiff's General Assignment of her rights under the MSA, just as it would have affected the validity of her rights before the sale. *See, e.g.*, *Lee v. Verimatrix, Inc.*, No. 19-cv-2054-W (BLM), 2020 WL 4747751, at *5 (S.D. Cal. Aug. 17, 2020) (declaratory judgment that would affect future rights after a sale was not moot).

Defendant does not "dispute the fact that Cher *once* had 'rights, title, and interest in and to' the assets." Dkt. 86 at 14. However, Defendant disputes that Plaintiff had rights to the assets at issue after the Notice of Termination and before the General Assignment. Whether Plaintiff had these rights initially presents a controversy that can only be resolved by the present litigation between Plaintiff and Defendant. As a result, there is an actual controversy with respect to the claim for declaratory relief. Therefore, Defendant's Motion is **DENIED** as to this affirmative defense.

          b)       Indispensable Parties and Joinder

Defendant next argues that the action should be dismissed because Plaintiff has not joined Sonny's four children as parties, and that all of them are indispensable parties under Fed. R. Civ. P. 19. Dkt. 64-1 at 20. Plaintiff responds that Defendant cannot show that Sonny's children are necessary parties or that the action cannot proceed without them. Dkt. 88 at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
| Title | Cher v. Mary Bono | | |

(1)    Legal Standards

A party may move to dismiss an action for failure to join an indispensable party under Fed. R. Civ. P. 19. *See* Fed. R. Civ. P. 12(b)(7). The moving party bears the burden of persuasion on this issue. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). "The terms 'necessary' and 'indispensable' are terms of art in Rule 19 jurisprudence: 'Necessary' refers to a party who should be joined if feasible. 'Indispensable' refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed." *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004) (cleaned up).

The Ninth Circuit has identified "three successive inquiries" that apply in determining whether a case should be dismissed pursuant to Rule 12(b)(7). *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005). *First*, the district court determines whether "the absent party is necessary to the suit," considering: (1) "if *complete relief* is possible among those already parties to the suit"; (2) "whether the absent party has a *legally protected interest* in the suit"; and (3) "whether that interest will be *impaired* or *impeded* by the suit." *Makah*, 910 F.3d at 558. "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013). *Second*, if an absent party is necessary under Rule 19(a), the district court then determines whether it is feasible to order that the absent, necessary party be joined in the action. *Peabody*, 400 F.3d at 779. *Third*, if joinder of the absentee party is necessary, but not feasible, the district court must decide "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.*

Ultimately, "[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). . . . The determination is heavily influenced by the facts and circumstances of each case." *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 970 (9th Cir. 2008).

(2)    Analysis

Defendant could have presented this argument in a motion to dismiss under Rule 12(b)(7). Because it was not, "it is untimely and may be disregarded." *de la Hoya v. Top Rank, Inc.*, No. 00-10450-WMB, 2001 WL 34624886, at *14 (C.D. Cal. Feb. 6, 2001); *see also Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 896 (9th Cir. 1996) ("No case law from this or any other circuit supports [the] proposition that a court must hear and decide a 12(b)(7) motion before granting summary judgment. . . . [T]he district court has discretion to consider the timeliness of such a motion if it appears that the defendant is interposing that motion for its own defensive purposes, rather than to protect the absent party's interests." (citing Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment)).

Further, considering Defendant's joinder argument on the merits, Defendant cannot satisfy its burden of persuasion that Sonny's children are necessary parties to this action. Plaintiff is correct that complete relief can be accorded because the action "involves a narrow legal issue" and seeks "no judgment against the other Heirs." Dkt. 92 at 11–12. Defendant properly recognizes that Sonny's children nevertheless have a legally protected interest in the matters at issue because "*all* of the Bono Heirs will be directly affected by a ruling in Cher's favor in this case." Dkt. 94 at 3. This leaves one principal dispute between the parties: whether the children are adequately represented by Defendant in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

litigation. If they are, they are not indispensable parties.

Determining "whether an existing party may adequately represent an absent required party's interests" turns on another three-factor test: (1) "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments"; (2) "whether the party is capable of and willing to make such arguments"; and (3) "whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852 (9th Cir. 2019) (quoting *Alto*, 738 F.3d at 1127–28).

As to this issue, Plaintiff argues that Defendant has repeatedly taken responsibility for managing the interests of the children, communicated with Wixen on behalf of the children, shared the same counsel as the children with respect to their termination interests and recently, formed a limited liability corporation to manage the rights of the children. Dkt. 88 at 12; Dkt. 92 at 13. Defendant replies that while she has shared counsel with the children "in certain instances and on certain issues when they are all in agreement," there is 'no evidence that Mary's counsel represents Sonny's children *in this litigation*." Dkt. 94 at 5.

Defendant's argument is unpersuasive. Whether a party's counsel legally represents nonparties "has no import in a Rule 19 analysis." *Renteria v. Cuellar*, No. 16-CV-01685-MCE-AC, 2016 WL 7159233, at *4 (E.D. Cal. Dec. 8, 2016). Instead, the key issue is whether "the interests of absent parties . . . would be prejudiced if the court proceeded without them." *Id.* Defendant is well situated to represent any interest Sonny's children may have in this proceeding. Thus, she shares common interests with the children in presenting a response and defense to Plaintiff's claims and in seeking to prevail on her own counterclaims. Nor is there any showing that Sonny's children would offer any necessary element in litigating this action that Defendant cannot provide.

Furthermore, Sonny's children are aware of this action. *See* Dkt. 64-3 ¶ 13 (Defendant and Sonny's children decided "to put the royalties at issue in this lawsuit into an escrow account."); *see also* Dkt. 64-3 ¶ 10 ("[W]ith the support of Sonny's children," Defendant intends "to either continue to use Wixen as the royalty administrator for all of Sonny's publishing income, or designate an entity that I own as the royalty administrator to make sure that all Sonny's publishing royalties are properly accounted for to Cher and all of Sonny's heirs."). Notwithstanding this knowledge, Sonny's children have not sought to intervene in this action or bring a separate one against Plaintiff. Instead, they have agreed to deposit "Cher's portion of the US publishing fee . . . in an escrow account to be disbursed to the appropriate party upon resolution of the litigation." Dkt. 64-33 at 2. As a result, Sonny's children have not claimed "a legally protected interest relating to the subject matter of the action." *Altmann v. Rep. of Austria*, 317 F.3d 954, 971 (9th Cir. 2002); *see also id.* ("Where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder was 'unnecessary.' " (citing *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999)).

For the foregoing reasons, Sonny's children are neither necessary nor indispensable parties under Rule 19, and joinder is not required. Defendant's Motion is **DENIED** as to this affirmative defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

    2.    <u>Plaintiff's Claims</u>

        a)    First Cause of Action: Declaratory Relief

Both parties seek summary judgment as to Plaintiff's claim for declaratory relief. As noted, Plaintiff seeks a declaration that the notice of termination does not affect her royalty rights or approval rights under the MSA. Dkt. 45 at 18–21. She argues that because these rights arise under state contract law, and because the Notice of Termination does not mention the MSA, the rights cannot be terminated under section 304(c). Dkt. 65-1 at 15–16.

Defendant responds that Section 304(c) preempts state contract law as to the rights to the renewal terms of the copyrights at issue. As a result, she contends that Sonny could not have granted the terminated grants, and the MSA is now preempted and lacks effect. Dkt. 94 at 6–8. Defendant further contends that, even if Plaintiff does have a continuing right to Sonny's royalties, she is "entitled at most to the percentage she received when the MSA went into effect." Dkt. 64-1 at 27.

        (1)    <u>Legal Standards</u>

The Copyright Act includes a right of termination that "allows an author, if he is living, or his widow and children, if he is not, to recapture . . . rights that had previously been transferred to third parties." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983 (9th Cir. 2008). Specifically, section 304(c) provides: "[i]n the case of any copyright subsisting in either its first or renewal term on January 1, 1978 . . . the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978," may be terminated by the author's widow and surviving children by providing "advance notice in writing upon the grantee." 17 U.S.C. § 304(c)(1)–(4). "Termination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant." *Id.* § 304(c)(5).

These provisions were enacted to "award to the author, and not to the assignee of the right to exploit the copyright during its initial term, the monetary rewards of a work that may have been initially undervalued, but which later becomes a commercial success." *Classic Media*, 532 F.3d at 983. Thus, "all of a particular author's rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to that author or, if that author is dead, to the persons owning his or her termination interest." 17 U.S.C. § 304(c)(6). Congress made clear that termination under section 304(c) "affects only those rights covered by the grant that arise under this title, and in no way affects rights arising under any other Federal, State, or foreign laws." *Id.* § 304(c)(6)(E). Moreover, "[u]nless and until termination is effected under this subsection, the grant, if it does not provide otherwise, continues in effect for the remainder of the extended renewal term." *Id.* § 304(c)(6)(F).

The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act. *First*, the court must determine "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (interpreting 17 U.S.C. § 301). Section 102 of the Copyright Act affords copyright protection to "original works of authorship fixed in any tangible medium of expression," including "musical works" and "sound recordings." 17 U.S.C. § 102.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
| Title | Cher v. Mary Bono | | |

*Second*, if the claim falls within the subject matter of copyright, the court must determine "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Laws*, 448 F.3d at 1137–38. Section 106 grants copyright holders the exclusive rights to copy, adapt, sell, perform and display. 17 U.S.C. § 106 (describing the right to: (1) "reproduce the copyrighted work in copies"; (2) "prepare derivate works"; (3) "distribute copies . . . to the public by sale or other transfer"; (4) "perform the copyrighted work publicly"; and (5) "display the copyrighted work publicly"). "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Laws*, 448 F.3d at 1143 (cleaned up).

(2)     <u>Analysis</u>

It is undisputed that Plaintiff's rights under the MSA arise under California law. Dkt. 64-5 ¶ 20. In dissolving their marriage, Plaintiff and Sonny agreed to allocate these rights "to make an equal division of their community estate," thereby "releas[ing] and forever discharg[ing] the other, her or his heirs, executors, administrators, successors, assigns, property and estate from any and all claims, demands, and obligations of every kind and nature arising out of the marital status of the parties. . . ." Dkt. 64-5 ¶¶ 8–9. It also undisputed that the subject matter of the rights under the MSA, the underlying musical compositions and sound recordings, are subject to the Copyright Act. *See* 17 U.S.C. § 102(a). Finally, it is undisputed that because the Notice of Termination does not terminate the MSA or the Recording Contracts, Plaintiff's share of the Record Royalties under the MSA is undisturbed. Dkt. 92-1 ¶ 51; Dkt. 64-1 at 9 n.1; Dkt. 86 at 19.

The resulting question is whether the Composition Royalties and approval rights under the MSA constitute copyright grants that were affected by the Notice of Termination. The MSA states that there shall be an equal division of "contingent receipts . . . from musical compositions and interests therein, written and composed, in whole or in part, by [Sonny] or others prior to February 1, 1974, and/or acquired by [Sonny and certain other entities] prior to" the couple's separation. Dkt. 64-5 ¶ 10(d). The same provision also states that "all agreements with third parties respecting the subject matter of this Paragraph (10)(d) are subject to the approval of" Plaintiff. *Id.* As a matter of contract interpretation, these provisions make clear that Plaintiff has a right in the proceeds of these "musical compositions and interests therein . . . from all sources perpetually . . . ." *Id.*

Consequently, Plaintiff's rights under the MSA are linked to the musical compositions and Sonny's corresponding property interests. Because in granting the royalty and approval rights at issue, the MSA did not refer to a "grant of a transfer or license" of the underlying copyrights, Plaintiff's rights under the MSA arise solely under state law. Further, because section 304(c) expressly provides that it "in no way affects rights arising under any other Federal, State, or foreign laws" (17 U.S.C. § 304(c)(6)(E)), the Notice of Termination cannot affect Plaintiff's contractual right to receive financial compensation in exchange for the release and permanent discharge of any and all claims arising out of her marital relationship with Sonny.

Notwithstanding the plain language of the MSA, Defendant argues that, under 17 U.S.C. § 304(c)(5), "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant," and the MSA constitutes such an "agreement to the contrary." Dkt. 64-1 at 26. However, the only rights that are terminable under section 304(c) are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
| Title | Cher v. Mary Bono | | |

copyright grants. *See* 17 U.S.C. § 304(c)(1)–(4). Therefore, an "agreement to the contrary" under section 304(c)(5) is only a "contractual device that purports to divest" authors and successors of the right to "terminate copyright assignments." 3 Nimmer § 11.07[D][1]. Because the MSA does not refer to the underlying copyrights, it did not affect the ability of Sonny's heirs to terminate the copyrights. Therefore, it is not an "agreement to the contrary."

Defendant then argues that "[a] 'grant' of copyright includes royalties, and the grant that reverts, unencumbered, to the Bono Heirs includes all of its accompanying royalties." Dkt. 94 at 9. To support this position, Defendant cites *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 166 (1985), which explained that the "source of [an] entitlement to a 50 percent share in the royalty income is the [copyright] grant." *Id.* at 166. However, this explanation applied to the specific agreement at issue in *Mills Music*. Under that agreement, the author "assigned his entire interest in all renewals of the copyright to [a publisher] in exchange for an advance royalty and [the publisher's] commitment to pay a cash royalty on sheet music and 50 percent of all net royalties that [the publisher] received for mechanical reproductions." *Id.* at 157.

The MSA is different. It assigned to Plaintiff a right to the "contingent receipts . . . from musical compositions and interests therein" in exchange for the release of "any and all claims . . . arising out of the marital status of the parties." Dkt. 64-5 ¶¶ 8, 10(d). Consequently, the conclusion "that an author-spouse in whom a copyright vests maintains exclusive managerial control of the copyright but that the economic benefits of the copyrighted work belong to the community while it exists and to the former spouses in indivision thereafter . . . is consistent with both federal copyright law and [California] community property law and is reconcilable under both." *Rodrigue v. Rodrigue*, 218 F.3d 432, 435 (5th Cir. 2000).

In reviewing similar agreements assigning royalty rights rather than underlying copyrights, Circuit Courts have determined that a right to receive royalties is distinct from a grant of copyright. *See, e.g.*, *Broad. Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997) ("Assignments of interests in royalties have no relationship to the existence, scope, duration or identification of a copyright, nor to 'rights under a copyright.' "); *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 834 (9th Cir. 1996) ("[H]olding a royalty interest does not bespeak an interest in the underlying copyright itself—a royalty is simply an interest in receiving money when the owner of the copyright exploits it."); *Merrill v. Hyman*, No. 22-2971-CV, 2024 WL 191807, at *2 (2d Cir. Jan. 18, 2024) ("The plain language of the agreement shows that Merrill was not selling or licensing to Hyman any of his rights under the Copyright Act, but rather some of the financial rights to compensation he had received and would receive by virtue of his copyright rights in the lyrics."); *Rodrigue*, 218 F.3d at 439 ("The *economic benefits* that flow from particular types of one-spouse assets, including but not limited to cars, paychecks, partnership interests—and copyrights—can inure to the benefit of the community without doing violence to the legal results intended by . . . Congress in providing for vesting of title in one spouse only. . . .").

Finally, even if the rights under the MSA were deemed copyright grants under the Copyright Act, section 304(c) termination extends only to "a transfer or license of the renewal copyright or any right under it, executed *before* January 1, 1978." 17 U.S.C. § 304(c) (emphasis added). Because the MSA was executed on August 10, 1978, it is outside the scope of section 304(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

Notwithstanding Defendant's arguments at the hearing, it is immaterial that Sonny's agreements transferring or licensing copyrights with various music publishers preceded 1978. As discussed, unlike the Record Royalties, the Composition Royalties do not depend on any agreement. Therefore, the relevant agreement for purposes of determining whether the Composition Royalties were terminated is the MSA, and the sole relevant date is January 1, 1978.

For the foregoing reasons, Plaintiff's Motion is **GRANTED** as to the claim for declaratory relief.

        b)       Second Cause of Action: Breach of Contract

Plaintiff's claim for breach of contract is premised on the same alleged violation that is the basis for the first cause of action: Defendant's refusal to honor her royalty and approval rights under the MSA. As a result, the claim must be resolved in a manner that is consistent with the declaratory relief claim.

        (1)     <u>Legal Standards</u>

"The essential elements of a claim of breach of contract, whether express or implied, are the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff." *Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015).

        (2)     <u>Analysis</u>

Because Plaintiff's Motion has been granted as to the claim for declaratory relief, as a matter of law, Defendant has breached the MSA by refusing to pay Plaintiff her share of the Composition Royalties. Dkt. 92-1 ¶ 35. As to the resulting damages, the parties agree that Wixen distributed at least $187,000 of Composition Royalties to Sonny's heirs that, but for the invalid termination, would have been distributed to Plaintiff; of this amount, at least $93,500 was paid to Defendant. *Id.* ¶ 58–59. The parties also do not dispute that, as of June 30, 2022, Wixen held $418,156.82 in Composition Royalties that would have been distributed to Plaintiff. *Id.* ¶ 60.

The parties disagree as to whether the $418,156.32 amount reflects Wixen's deduction of its 10% administration fee. *Id.* The parties also disagree as to whether Plaintiff is entitled to the share of the Composition Royalties due under the MSA after July 1, 2022, *i.e.*, the royalty rights assigned to the third-party buyer. *Id.* ¶ 61–62. Resolving this question turns on the provisions of the General Assignment, which have not been fully disclosed. Plaintiff's representation at the hearing that any disputes as to the proper assignment of damages can be resolved by future litigation between Plaintiff and Wixen, or Plaintiff and the third-party buyer, is not sufficient to resolve the breach of contract claim as a matter of law. For these reasons, Plaintiff's Motion is **GRANTED IN PART** as to the claim for breach of contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

      3.    <u>Defendant's Counterclaims</u>

          a)    First Counterclaim: Declaratory Relief re Administrator Selection

Defendant's first counterclaim seeks declaratory relief as to "Cher's rights and obligations concerning the selection of an administrator." Dkt. 47 ¶ 47. Specifically, Defendant argues that, as Sonny's heirs, she and Defendant's children have "sole discretion" under the MSA to appoint an administrator for all publishing royalties, and that such an administrator could be an entity owned by Sonny's heirs who would be entitled to the 10% administrator fee. Dkt. 64-1 at 30. Plaintiff responds that although Sonny may have had sole discretion to appoint an administrator, she is entitled under the MSA to approve any third-party appointed to the position. Dkt 88 at 26. Plaintiff also contends that under the Creditor Claim Agreement, she and Defendant are required to "cooperate in developing a mutually acceptable royalty mechanism." *Id.*

          (1)    <u>Legal Standards</u>

Under California law, an agreement to agree is generally unenforceable. *See Avalon Prod. v. Lentini*, 98 Cal. App. 2d 177, 180 (1950) ("An agreement to enter into an agreement upon terms to be afterwards settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement until the terms of that agreement are settled."). "Unlike an agreement to agree, . . . an agreement to use best efforts [or to negotiate in good faith] is a closed proposition, discrete and actionable." *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1033 (1992) (cleaned up).

Courts may enforce a "contract to negotiate the terms of an agreement." *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1257 (2002). "If, despite their good faith efforts, the parties fail to reach ultimate agreement on the terms in issue the contract to negotiate is deemed performed and the parties are discharged from their obligations. A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." *Id.*

          (2)    <u>Analysis</u>

The Creditor Claim Agreement provides: "In recognition of Cher's continuing right to receive such royalty interests, and in the interests of the heirs of the estate, Cher and the Administrator hereby agree to cooperate in developing a mutually acceptable mechanism for the collection and proper disbursement of such royalties to Cher and the heirs after the closing of this estate." Dkt. 64-14 ¶ 3. The provision is more specific than an open-ended agreement to agree. However, it would be more than such an open-ended agreement only if it were deemed performed by the appointment of Jay Glick at the closing of Sonny's estate. It is so interpreted. If, as Plaintiff contends, the Creditor Claim Agreement "has no expiration date or term, and continues as long as royalties are payable" (Dkt. 88 at 27), the contract would be an ongoing agreement to agree. Therefore, the Creditor Claim Agreement is no longer enforceable under California law, and it cannot apply to the dispute.

As to the MSA, it provides: "All said contingent receipts shall be subject to an administration fee to be kept and retained by the worldwide administrator(s), which administrator(s) to be engaged shall be subject to Husband's sole discretion." Dkt. 64-5 ¶ 10(d). The MSA then states the terms of such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

administration: "Said administration fee shall be a sum equivalent to 10% of the gross income actually received by Husband and [his publishing entity] from all sources worldwide. Husband agrees that all agreements with third parties respecting the subject matter of this Paragraph 10(d) are subject to the approval of Wife or Wife's representatives which approval will not be unreasonably withheld." *Id.* The MSA then states: "Husband agrees that his successors in interest, his assigns and all third parties with whom he or any of his other businesses contracts shall be subject to the rights of Wife as set forth in this Paragraph 10(d)." *Id.*

The relevant text of the MSA may be interpreted in two ways: (1) Sonny had the sole discretion to make the initial decision as to whom to appoint as the third-party administrator, but this decision would then be subject to Plaintiff's reasonable objections as to that selection; or (2) Sonny had the sole discretion to decide whom to appoint as the third-party administrator, but Plaintiff could make reasonable objections as to the *terms* of an agreement with that third-party administrator. Because the parties have not submitted any extrinsic evidence as to the proper interpretation of paragraph 10(d), the construction of the relevant provisions is resolved as a matter of law.

Under California law, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643. "To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 71 (2013) (cleaned up); *see also Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.*, 14 Cal. 5th 58, 69 (2022) ("favor[ing] an interpretation that gives meaning to each word in a contract over an interpretation that makes part of the writing redundant").

The most straightforward interpretation of paragraph 10(d) is that Plaintiff's approval rights permit her to raise only reasonable objections as to the *terms* of an agreement with a third-party administrator. If the MSA permitted Plaintiff to object to the selection of a third-party administrator, Sonny's "sole discretion" to appoint an administrator would not have any effect.

Defendant also argues that, because she seeks to appoint an entity owned and controlled by the Bono Heirs as the royalty administrator, "[s]uch an entity would not be a third party, and so not subject to approval even under Cher's reading of the MSA." Dkt. 86 at 22. That Sonny appointed himself as the royalty administrator and paid himself the 10% administration fee set forth in the MSA does not compel an interpretation of the contract under which Defendant has the right to do the same. *See* Dkt. 94-1 at 35. Similarly, that Defendant is Sonny's heir does not compel the conclusion that she is not a third party under the MSA.

The MSA expressly provides that Sonny's "successors in interest, his assigns and all third parties with whom he or any of his other businesses contracts shall be subject to the rights of Wife as set forth in this Paragraph 10(d)." Dkt. 64-5 ¶ 10(d). Although this language has some specificity, it does not state that Sonny's successors in interest are not "third parties" for purposes of Plaintiff's approval rights under paragraph 10(d). Therefore, although Defendant may engage an entity owned and controlled by Sonny's heirs as the royalty administrator, Plaintiff may make reasonable objections to the terms of any such agreement, including the reasonableness of the administration fee. Such objections could be based, in part, on the administrator's credentials and qualifications.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08157 JAK (RAO) | Date | May 29, 2024 |
|---|---|---|---|
| Title | Cher v. Mary Bono | | |

For the foregoing reasons, Defendant's Motion is **GRANTED IN PART** as to the first counterclaim.

    b)  Second Counterclaim: Declaratory Relief re Recording Contracts

Defendant's second counterclaim seeks declaratory relief "concerning her rights and obligations under the MSA, including the negotiation and entry into new agreements to exploit the sound recording copyrights Mary owns." Dkt. 47 ¶ 50.

    (1)  <u>Legal Standards</u>

Declaratory relief requires an actual, present controversy. *See Societe de Conditionnement en Aluminum*, 655 F.2d at 943. "The disagreement [underlying the declaratory relief action] must not be nebulous or contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (quoting *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952)); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("Our decisions have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (cleaned up)).

    (2)  <u>Analysis</u>

Defendant argues that she has the right to renegotiate the Recording Contracts and terminate Plaintiff's share of the Record Royalties. Dkt. 64-1 at 31. However, both parties agree that Plaintiff is a party to the Recording Contracts. Dkt. 94-2 ¶ 140. As a result, pursuant to Plaintiff's approval rights under the MSA, the Recording Contracts cannot be modified without Plaintiff's consent, which cannot be unreasonably withheld. Dkt. 64-5. ¶ 10(d). Moreover, it is undisputed that Defendant has not actually tried to renegotiate the Recording Contracts. Dkt. 94-2 ¶ 141. Because a hypothetical controversy cannot support a claim for declaratory relief, Defendant's Motion is **DENIED** as to the second counterclaim.

**V. Conclusion**

For the foregoing reasons, Defendant's Motion is **DENIED** as to all issues presented except for her first counterclaim, which is **GRANTED IN PART**, and Plaintiff's Motion is **GRANTED** as to all remaining issues except for her second claim for breach of contract, which is **GRANTED IN PART**.

**IT IS SO ORDERED.**

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | TJ |  |