Peter Anderson, Esq., Cal. Bar No. 88891
  peteranderson@dwt.com
Sean M. Sullivan, Esq., Cal. Bar No. 229104
  seansullivan@dwt.com
Eric H. Lamm, Esq., Cal. Bar No. 324153
  ericlamm@dwt.com
Samuel Turner, Esq., Cal. Bar No. 338089
  samturner@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Tel: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Plaintiff and Counterdefendant
CHER, Individually and as
Trustee of The Veritas Trust

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CHER, individually and as Trustee of The Veritas Trust,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MARY BONO, individually and as Trustee of the Bono Collection Trust, and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:21-CV-08157 JAK (RAOx)<br><br>PLAINTIFF AND COUNTER-DEFENDANT CHER'S NOTICE OF LODGING OF [*PROPOSED*] JUDGMENT AND STATEMENT OF POSITION AS TO FORM OF JUDGMENT<br><br>Courtroom of the Honorable<br>John A. Kronstadt<br>United States District Judge |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that plaintiff and counter-defendant Cher ("Plaintiff") respectfully lodges the accompanying [*Proposed*] Judgment, in accordance with the Court's Order at the Final Pretrial Conference (Doc. 164).

For the reasons discussed below, Plaintiff respectfully submits that the Court should enter the accompanying [*Proposed*] Judgment, rather than Defendant's proposed Judgment also filed on this date.[1]

**(a)  Plaintiff's Proposed Judgment Includes the Court's Ruling Regarding Plaintiff's Approval Rights, But Defendant's Proposed Judgment Does Not**

First, Plaintiff's proposed Judgment as to her first claim for declaratory relief echoes her relief sought in her First Amended Complaint. In stark contrast, Defendant's proposed Judgment limits the requested declaration to Plaintiff's continued right to the Disputed Royalties. Defendant simply omits that Plaintiff's first claim, which the Court adjudicated in Plaintiff's favor, also sought a declaration that Defendant's Notice of Termination did not cut off Plaintiff's approval rights as to all third party contracts with respect to the musical compositions within paragraph 10(d) of the MSA. *Compare* First Am. Compl. (Doc. 45) at 11-15 ¶¶ 42-43 (Plaintiff's first claim), and 17-20 ¶ 1 (Plaintiff's Prayer) *with* Defendant's proposed Judgment. Defendant's proposed Judgment would deprive Plaintiff of specific declarations that the Court found Plaintiff was entitled. *See* MSJ Order at 10, 12 ("Plaintiff's Motion [for Summary Judgment] is **GRANTED** as to the claim for declaratory relief").

///

---

[1]  Plaintiff understands the Court's Order to require that the Parties file a Joint Report with their respective positions regarding the form of the Judgment to be entered. Defendant, however, refused to agree to a Joint Report that contains the parties' respective positions and instead, insisted that the parties file their respective positions in separate documents. For that reason, Plaintiff has included her position in this document.

Plaintiff includes the relevant language in paragraph (b)(2) of her proposed Judgment.

### (b) Plaintiff's Proposed Judgment Addresses the Disputed Royalties in the Separate Accounts, but Defendant's Proposed Judgment Does Not

Second, only Plaintiff's proposed Judgment addresses the royalties that, starting in February 2022, the parties agreed would be held in two accounts (the "Separate Accounts") controlled by Wixen Music Publishing, Inc. ("Wixen") pending the outcome of this litigation. *See, e.g.*, D. Brescoll Decl. (Doc. 149) at 1 ¶ 4; *id.* Ex. 101 (Doc. 149-1) at 5 § 2.2, 42 ("'Cut-Off Date' means July 1, 2022"); *see also* Def's Resp. to Pltf's Stmt. of Genuine Disputes (Doc. 94-1) ¶¶ 5-6; Def's Motion in Limine No. 1 (Doc. 119) at 3:7-9.

At the Final Pretrial Conference, the Court made it clear that the Judgment should deal in a practical manner with the undisputed fact that Plaintiff is required to pay to Iconic Cher LLC ("Iconic") the portion of Disputed Royalties in the Separate Accounts that Plaintiff recovers and that were due or payable on or after July 1, 2022. To that end, Plaintiff's proposed Judgment includes the following paragraph:

> 3. Without limiting the Composition Royalties to which Plaintiff is entitled, Plaintiff is awarded the Composition Royalties that Wixen Music Publishing, Inc., has deposited into separate bank accounts at SMBC ManuBank (Account Number ending in 539) and Fifth Third Bank (Account Number ending in 804), and interest thereon, <u>subject to her obligation to pay to Iconic Cher LLC all Composition Royalties she receives that were, are, or will be due or payable on or after July 1, 2022, and all interest thereon</u>.

That language is properly included in the Judgment. It is an established fact that Plaintiff and Iconic agreed in their December 9, 2022, Asset Purchase Agreement that Plaintiff will pursue in this action the recovery of all Disputed Royalties, with

2

Plaintiff to then pay to Iconic, after the conclusion of this case, the portion of Disputed Royalties that Plaintiff assigned to Iconic under that Asset Purchase Agreement. *See, e.g.*, D. Brescoll Decl. (Doc. 149) at 2 ¶ 6, Ex. 101 (Doc. 149-1) (Asset Purchase Agreement) §§ 2.5(b), 2.5(c), 4.26, and pp. 41, 44. Indeed, Iconic has expressly consented to the Court awarding all Disputed Royalties to Plaintiff, including those held in the Separate Accounts. *See* Brescoll Decl. at 2-3 ¶¶ 6, 9, Ex. 103 (Doc. 149-3).

Despite these established facts and the Court's requirement that the Judgment in this case deal with the Disputed Royalties in the Separate Accounts, Defendant's proposed Judgment omits that paragraph and makes no mention of the royalties in the Separate Accounts. Instead, Defendant argues that the Court cannot award royalties to Plaintiff because (a) some of those royalties belong to Iconic, and (b) Sonny's other heirs are not parties to this litigation. But these are the same standing and necessary parties arguments that the Court has repeatedly rejected.

Of course, it is nonsensical to argue that awarding the royalties to Plaintiff so that she can pay them over to Iconic would violate *Iconic*'s "due process rights," especially given *Iconic*'s express consent to such an award. Defendant's counsel also argued at the Final Pretrial Conference and elsewhere that the amount of escrowed Disputed Royalties to be given to Iconic should be left to negotiations between Defendant and Iconic. But it is undisputed that Plaintiff assigned Iconic *all* Disputed Royalties due or payable on or after July 1, 2022. Accordingly, there is nothing for Defendant and Iconic to negotiate.

And as for Sonny's other heirs, the Court has already held that they are not necessary parties. Indeed, the Court found that "complete relief can be accorded" without joining them because, even though the other heirs "have a legally protected interest in the matters at issue," the other heirs' interest is "adequately represented by Defendant in the litigation." MSJ Order (Doc. 107) at 7-8. Also, as the Court recognized, it is telling that Sonny's other heirs "are aware of this action" yet "have

not sought to intervene … or bring a separate one against Plaintiff." Id. at 8. Instead, the other heirs agreed to Wixen depositing the Disputed Royalties in the Separate Accounts and that those deposited royalties are to "be disbursed to the appropriate party upon resolution of the litigation." Id. (quoting Doc. 64-33 at 2).

Finally, Defendant points out that Plaintiff's previous proposed Judgment, filed in December 2024 (Doc. 124-1), does not specifically refer to the Separate Accounts. But at that time, Plaintiff had no reason to believe that Defendant would challenge the release of the Disputed Royalties in the Separate Accounts to Plaintiff. Indeed, as mentioned above, Defendant herself *agreed* that those royalties would be released to the appropriate party pending the outcome of this litigation, and the Court's summary judgment ruling establishes that Defendant has no right to the royalties in the Separate Accounts . MSJ Order (Doc. 107) at 8.

However, it later became clear that Defendant is maneuvering to argue that the Court's Judgment does *not* address the Separate Accounts so that, after this nearly five-year litigation ends, she can continue trying to interfere with Plaintiff's and her assignee's rights. Thus, it is Defendant's intractability and refusal to acknowledge the Court's summary judgment ruling that requires the addition of Paragraph 3 quoted above to the proposed Judgment.

**(c)  Plaintiff's Proposed Judgment Properly Addresses Defendant's First Counterclaim, but Defendant's Proposed Judgment Does Not**

Third, Defendant's proposed Judgment seeks to have the Court declare that Defendant prevailed on her first counterclaim for declaratory relief. But that is not what happened:

- Defendant's first counterclaim sought a declaration that Plaintiff has *no* right to approve or disprove an administrator of the royalties, and that Defendant and the other heirs have sole discretion to select an administrator. Def's Answer & Counterclaim (Doc. 47) at 27 ¶ 3 ("Cher does not have a right to

4

approve or disapprove a worldwide administrator [and selection of an administrator] is at the sole discretion of the Heirs that hold a majority interest"). But, while the Court held that the Creditor's Claim Agreement is no longer in effect, the Court rejected Defendant's argument that this entitled to the declaration Defendant requested:

**First**, the Court's MSJ Order held that Sonny's and his heirs' sole discretion to select an administrator *is* subject to Plaintiff's right under paragraph 10(d) of the MSA to raise "reasonable objections to the terms of any such agreement, including the reasonableness of the administration fee … [or] the administrator's credentials and qualifications," and that this right was not terminated. MSJ Order (Doc. 107) at 14. In holding as such, the Court adopts *Plaintiff's* position as to the interpretation of paragraph 10(d) of the MSA, not Defendant's position. *Compare* Pltf's Opp. to Def's MSJ (Doc. 88) at 19 ("[Paragraph 10(d)] makes clear that, while Sonny has discretion to decide *who* to appoint as administrator, if he appoints a third party, Cher has the right to approve the contract with that third party."); *with* Def's Memo. iso MSJ (Doc. 64-1) at 6 (arguing that Defendant's Notice of Termination terminated Plaintiff's approval rights, and that Defendant will recognize Plaintiff's approval rights only as a courtesy), 23 (arguing that "the Bono Heirs have the right at their sole discretion to appoint a worldwide administrator…. This is the same right that Sonny exercised in his lifetime.").

**Second**, Defendant's first counterclaim further sought a declaration that Plaintiff's approval rights would not apply if Defendant or Sonny's other heirs appoint an administrator owned or controlled by themselves, because it would not be a "third party." Def's Opp. to MSJ (Doc. 86) at 17. However, the Court also rejected that position, ruling that Plaintiff's approval rights apply in that situation. *See* MSJ Order (Doc. 107) at 14 ("That Sonny appointed himself as the royalty administrator and paid himself the 10% administration fee set forth in the MSA does not compel an interpretation of the contract under which Defendant has the right to do the same.").

**Finally**, Plaintiff has never disputed the MSA's reference to Sonny's, and now his heirs', discretion to appoint an administrator. *See* Pltf's Stmt. of Genuine Disputes (Doc. 88-1) at Fact 36 (Undisputed that MSA states: "which administrator(s) to be engaged shall be subject to [Sonny's] sole discretion…."). Defendant's claim to have prevailed on that point is illusory and ignores that the Court recognized that Defendant's selection is subject to Plaintiff's approval rights as to the contract with the administrator.

- Defendant's first counterclaim also sought a declaration that Wixen may continue to act as administrator despite Cher's termination of Wixen pursuant to the terms of the 2011 Wixen Agreements. *See* Answer & Counterclaim (Doc. 47) at 26 ¶ 44. But at summary judgment, Defendant "acknowledge[d] that Cher is permitted to terminate her own agreements with Wixen" and that she "*did* terminate her contracts with Wixen, which

6

|   |   |
|---|---|
| 1 | termination [Defendant] does not dispute." Doc. 64-1 at 22. The |
| 2 | Court accordingly recognized that "Plaintiff elected to terminate |
| 3 | the agreements with Wixen." MSJ Order (Doc. 107) at 3. In |
| 4 | short, Defendant lost that portion of her first counterclaim too. |

Accordingly, the reference in Defendant's proposed Judgment to Defendant prevailing on her first counterclaim is wrong. On the other hand, Plaintiff's proposed Judgment properly declares the parties' respective rights, including that Sonny's heirs' undisputed right to select an administrator is subject to Cher's approval rights as to all contracts with third parties, including administrators.

Additionally, Defendant's proposed Judgment seeks a declaration that Defendant herself has "sole discretion" "subject to the rights of [the other heirs]." But the MSA provided *Sonny* "sole discretion" and Defendant inherited that right *along with the other heirs*. Thus it is inaccurate to state that Defendant has "sole discretion"; she shares that discretion with the other heirs.

### (d) Plaintiff Is the Prevailing Party and Entitled to Costs

Federal Rule of Civil Procedure 54(d)(1) provides that, subject to exceptions that do not apply here, costs are properly awarded to the prevailing party. "The 'prevailing party' is the party who 'prevails as to the substantial part of the litigation.'" *Cargill Inc. v. Progressive Dairy Sols., Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 4177731, at *1 (E.D. Cal. Sept. 8, 2008) (quoting *Best Medium Pub. Co. v. Nat. Insider, Inc.,* 385 F.2d 384, 386 (7th Cir. 1967)).

Here, Plaintiff brought this action because Defendant diverted Plaintiff's royalties and disputed Plaintiff's approval rights by claiming that Defendant's Notice of Termination terminated Plaintiff's rights under the MSA. Plaintiff indisputably prevailed—and Defendant undisputedly lost—on that core issue. *See* MSJ Order (Doc. 107) at 9-12.

Plaintiff also prevailed on all other significant issues in this case, including on Defendant's affirmative defenses, her second counterclaim, and as discussed above,

the central issue in Defendant's first counterclaim. Indeed, Defendant's sole claim to her own success is that, in ruling on her first counterclaim, the Court agreed to one undisputed fact—that the MSA gave Sonny and his heirs discretion to select administrators. However, the Court denied Defendant's first counterclaim in all other respects, confirmed Plaintiff's approval rights, and confirmed that Plaintiff's approval rights apply to the administrator's fee, credentials, and qualifications, even if that administrator is owned or controlled by Defendant or Sonny's heirs. *See above* at 4-7; MSJ Order at 14.

Accordingly, Plaintiff is indisputably the prevailing party entitled to recover costs. *See* Fed. R. Civ. Pro. 54(d)(1); *Synagro Techs., Inc. v. GMP Hawaii, Inc.*, No. 04–00509, 2007 WL 851271 at *15 (D. Hawaii March 15, 2007).

**(e)     Conclusion**

For the foregoing reasons, the Court should enter Plaintiff's proposed Judgment.

Dated:  May 12, 2025

/s/ Peter Anderson
Peter Anderson, Esq.
Sean M. Sullivan, Esq.
Eric H. Lamm, Esq.
Samuel Turner, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiff and Counterdefendant
CHER
Individually and as Trustee of
The Veritas Trust