1  Peter Anderson, Esq., Cal. Bar No. 88891
    peteranderson@dwt.com
2  Sean M. Sullivan, Esq., Cal. Bar No. 229104
    seansullivan@dwt.com
3  Eric H. Lamm, Esq., Cal. Bar No. 324153
    ericlamm@dwt.com
4  Samuel Turner, Esq., Cal. Bar No. 338089
    samturner@dwt.com
5  DAVIS WRIGHT TREMAINE LLP
   350 South Grand Avenue, 27th Floor
6  Los Angeles, California 90071
   Tel: (213) 633-6800
7  Fax: (213) 633-6899

8  Attorneys for Plaintiff and Counterdefendant
   CHER, Individually and as
9  Trustee of The Veritas Trust

10

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13                   **WESTERN DIVISION**

14  CHER, individually and as Trustee of    ) Case No. 2:21-CV-08157 JAK (RAOx)
    The Veritas Trust,                       )
15                                           )
                   Plaintiff,                )
16                                           ) PLAINTIFF AND COUNTER-
         v.                                  ) DEFENDANT CHER'S
17                                           ) MEMORANDUM OF POINTS AND
    MARY BONO, individually and as           ) AUTHORITIES IN SUPPORT OF
18  Trustee of the Bono Collection Trust,    ) CHER'S MOTION FOR ATTORNEY'S
    and DOES 1 through 10, inclusive,        ) FEES
19                                           )
                   Defendants.               )
20                                           ) Date:   February 23, 2026
                                             ) Time:  8:30 a.m.
21  _____      )
                                             )
22  AND RELATED COUNTERCLAIMS                ) Courtroom of the Honorable
    _____      )       John A. Kronstadt
                                                United States District Judge
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Pages**

1. INTRODUCTION .......................................... 1

   (a) Summary of Argument ...................................... 1

2. AS THE PREVAILING PARTY, CHER IS PROPERLY AWARDED HER ATTORNEY'S FEES ................................... 3

   (a) Section 505's Provision for Attorney's Fees Applies to Cher's Claim for Declaratory Relief as to Defendant's Notice of Termination........... 3

   (b) The Standards Applicable to Cher's Motion for Attorney's Fees .......... 3

   (c) The Fogerty Factors Confirm that Cher Is Properly Awarded Attorney's Fees....................................... 4

      (1) Degree of Success: Cher Prevailed Completely and on the Merits .......................................... 4

      (2) Frivolousness and Objective Unreasonableness: Defendant's Attempt to Terminate Cher's Royalty Rights Was Based on an Untenable Interpretation of Section 304(c)................... 5

      (3) Motivation: While Cher Simply Sought to Preserve Her Royalties and Other Rights under Her MSA with Sonny, Defendant Sought to Divert Cher's Rights For Herself............... 8

      (4) Compensation: Awarding Attorney's Fees Will Compensate Cher for Protecting Her Royalty Rights and Obtaining a Judicial Declaration as to the Scope and Limits of the Copyright Act's Termination Provisions ...................... 9

      (5) Deterrence: Defendant and Others Should Be Deterred from Misusing the Copyright Act Terminations to Attempt to Terminate Grants of Royalty Rights ............................. 9

   (d) Awarding Cher Her Attorney's Fees Would Further the Purposes of the Copyright Act ......................................... 10

   (e) The Amount of Attorney's Fees Sought Is Reasonable ...................... 10

      (1) Calculating the Lodestar .................................. 10

      (2) The Applicable Kerr Factors Confirm the Amount Sought Is Reasonable .......................................... 13

      (3) Apportionment of Fees is Unnecessary and Cher Should Be Awarded Her Fees for All Claims on Which She Prevailed because they Arise from the Same Core Facts........................... 14

i

1

3.    CONCLUSION...................................................................................... 15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*AK Futures LLC v. Smoke Tokes, LLC*,
No. 8:21-cv-01061-JVS(ADSx), 2022 WL 3574280 (C.D. Cal. Jan. 13, 2022) ...................................................................................................................12

*Discovery Commc'ns, Inc., v. Animal Planet, Inc.*,
172 F. Supp. 2d 1282 (C.D. Cal. 2001) ...............................................................11

*Doc's Dream, LLC v. Dolores Press, Inc.*,
959 F.3d 357 (9th Cir. 2020) ...............................................................................3

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997), *cert. denied* 523 U.S. 1021 (1998) ...................14

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir. 1996) .............................................................................4, 5

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)................................................................................... *passim*

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
No. CV13-00496, 2015 WL 5601853 (D. Haw. Sept. 23, 2015)........................5

*Gonzalez v. U.S. ICE*,
975 F.3d 788 (9th Cir. 2020) ...............................................................................7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).....................................................................................14, 15

*Horror Inc. v. Miller*,
No. 3:16-cv-1442, 2022 WL 4473426 (D. Conn. Sept. 26, 2022) ......................3

*Intel Corp. v. Terabyte Int'l, Inc.*,
6 F.3d 614 (9th Cir. 1993) ................................................................ 10, 11, 12, 13

*Kerr v. Screen Actors Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ...............................................................................13

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016)..............................................................................................5

*Lujan v. Def. of Wildlife*,
    504 U.S. 555 (1992).............................................................................................7

*Mattel, Inc. v. MGA Ent., Inc.*,
    705 F.3d 1108 (9th Cir. 2013) .......................................................................3, 10

*Neitzke v. Williams*,
    490 U.S. 319 (1989).............................................................................................5

*Perfect 10, Inc., v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .............................................................................10

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-08098-AB(SHx), 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015)
    *aff'd*, 847 F.3d 657 (9th Cir. 2017)............................................................. 12, 13

*Shame On You Prods., Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018) ...............................................................................4

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) .........................................................................5, 8

*Steenwyk v. Steenwyk*,
    No. 2:20-cv-02375 FLA (AFM), 2022 WL 7162931 (C.D. Cal. July 11,
    2022), *r&r adopted*, 2022 WL 7054770 (C.D. Cal. Oct. 12, 2022)...................12

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
    340 F.3d 829 (9th Cir. 2003) .............................................................................14

*Title Tracy Anderson Mind & Body, LLC v. Roup*,
    No 2:22-cv-04735, 2023 WL 6890744 (C.D. Cal. Sept. 11, 2023)...................12

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    130 F. Supp. 3d 1331 (C.D. Cal. 2015), *aff'd* 669 F. App'x 575 (Fed. Cir.
    2016) ..................................................................................................................12

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) ...............................................................................4

*WB Music Corp. v. Royce Int'l Broad. Corp.*,
    No. EDCV 16-600 JGB(DTBx), 2018 WL 6177237 (C.D. Cal. July 9,
    2018), *aff'd*, 814 F. App'x 286 (9th Cir. 2020) ..................................................12

**Statutes**

17 U.S.C.
§ 203.........................................................................................................2, 10
§ 304(c) ...................................................................................................... *passim*
§ 304(c) ..............................................................................................................3
§ 304(c)(4).........................................................................................................6
§ 304(c)(4)(B) ...................................................................................................6
§ 304(c)(6)(E) ........................................................................................... 1, 6, 7
§ 505 ..............................................................................................................2, 3

**Regulations**

37 C.F.R. § 201.10(b)(1)(iv) ...........................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   INTRODUCTION

#### (a)   Summary of Argument

In 2016, Mary Bono ("Defendant") sent various music publishers a notice (the "Notice of Termination"), pursuant to 17 U.S.C. Section 304(c), terminating the late Sonny Bono's grants to those music publishers of the copyrights in musical compositions he owned or controlled. Defendant's Notice of Termination could not possibly have terminated Cher's rights under her and Sonny's 1978 Marriage Settlement Agreement (the "MSA") for many reasons, including that Section 304(c) expressly applies only to pre-1978 grants of copyright rights, and the Notice of Termination nowhere mentions Cher or the MSA. Defendant nevertheless relied on her Notice of Termination to secretly begin diverting to herself and Sonny's other heirs the royalties that Sonny assigned to Cher in their MSA. As soon as Defendant's scheme was uncovered, Cher filed this action for a judicial declaration under the Copyright Act that Defendant's Section 304(c) Notice of Termination did not affect Cher's contractual rights under the MSA, including her right to the royalties and approval rights assigned to her in 1978.

That judicial declaration, which the Court entered, was mandated by the clear and unambiguous provisions of Section 304(c). Yet Defendant dragged this case out for five years by taking patently unreasonable positions. For example, Defendant argued that Section 304(c) preempts Cher's State-law contractual rights under the August 10, 1978 MSA,  but Section 304(c) expressly provides that "[t]ermination … in no way affects rights arising under any … State … laws." 17 U.S.C. § 304(c)(6)(E). That is, Defendant argued, repeatedly and frivolously, that a federal statute that expressly states it *does not affect* State-law rights somehow *extinguishes* those State-law rights. Ultimately, Cher prevailed completely on her claim for a judicial declaration that the Notice of Termination did not affect Cher's royalty and other rights under the MSA.

1

Section 505 of the Copyright Act provides that the Court may award attorney's fees to the prevailing party in an action "under this title," and that provision applies to actions for declaratory relief under the Copyright Act.  Here, all the factors under the applicable *Fogerty* test favor the award of attorney's fees.  *First*, Cher's degree of success on her claim for declaratory relief under the Copyright Act is complete because she unequivocally prevailed on that claim. *See below* at 5. *Second*, Defendant made objectively unreasonable and outright frivolous arguments opposing that declaration and arguing that the Notice of Termination terminated Cher's contract rights under the MSA.  *See below* at 5-8.  *Third*, while Cher was motivated by protecting her royalty and other rights under the MSA, Defendant was motivated by her hope to misuse the Notice of Termination to cut off Cher's rights and obtain a windfall expressly precluded by Section 304(c).  *See below* at 8-9.  *Fourth*, Cher is properly compensated for the attorney's fees she incurred in this case. *See below* at 9.

While the *Fogerty* factors all cut in favor of awarding attorney's fees to Cher, attorney's fees are in any event properly awarded when the prevailing party has furthered the purposes of the Copyright Act.  Cher has done so here by confirming the reach and limitations of Section 304(c), as well as its sister provision, Section 203, which includes the same language at issue here.  *See below* at 10.

Further, it is well-established that a party who prevails on a claim for which attorney's fees are recoverable also may recover attorney's fees on any other claims that involve the same common core of facts or are based on related legal theories.  Here, Cher also asserted a claim for Defendant's breach of the MSA by using the Notice of Termination to divert Cher's royalties and repudiate Cher's royalty, approval, and other rights under the MSA.  Cher completely prevailed on that breach of contract claim, as well as on Defendant's second counterclaim, and they both involve the same common core of facts and legal theories as Cher's claim for declaratory relief under the Copyright Act.

2

Finally, the attorney's fees Cher incurred in this case are reasonable by any measure, and are properly awarded to her.

## 2. AS THE PREVAILING PARTY, CHER IS PROPERLY AWARDED HER ATTORNEY'S FEES

### (a) Section 505's Provision for Attorney's Fees Applies to Cher's Claim for Declaratory Relief as to Defendant's Notice of Termination

The Copyright Act provides that "in any civil action under [the Copyright Act], the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. Claims for declaratory relief are within Section 505 if they "invoke sufficient 'construction' of the Copyright Act." *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 362 (9th Cir. 2020) (district court erred in ruling that Section 505 attorney's fees not available to party prevailing on claim for judicial declaration as to whether copyright was abandoned) (quoting 4 M. NIMMER AND D. NIMMER, NIMMER ON COPYRIGHT § 14.10[B][1][b] (2020)).

Here, Cher's claim for declaratory relief unequivocally required the construction of Section 304(c). *See* First Am. Compl. (Doc. 45) at 11-15 ¶¶ 41-43). Indeed, Defendant has admitted that Cher's action "require[d] the interpretation of the Copyright Act and the scope, meaning, and effect of the statutory termination provisions of 17 U.S.C. § 304(c)…." *Compare id.* at 2 ¶ 1 *with* Defendant's Answer (Doc. 47) at 2 ¶ 1 ("Admitted."). Accordingly, Cher may seek attorney's fees under Section 505. *See, e.g.*, *Horror Inc. v. Miller*, No. 3:16-cv-1442, 2022 WL 4473426, at *2 (D. Conn. Sept. 26, 2022) ("[L]ike others before me, I have no trouble concluding that Section 505 applies to the termination rights declaratory judgment action at bar.") (collecting cases).

### (b) The Standards Applicable to Cher's Motion for Attorney's Fees

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013). The purposes of the Copyright

Act are furthered by the successful prosecution of claims that confirm the scope and meaning of the Copyright Act. *See, e.g.*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) (prevailing party's confirmation of "the boundaries of copyright law" furthered purposes of the Copyright Act. The award of attorney's fees furthers those purposes by "encourag[ing parties] to litigate meritorious claims….").

Also, "[c]ourts 'may consider (but [are] not limited to) five factors in making an attorney's fees determination . . . (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) [objective] reasonableness of [the] losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence.'" *Tresóna*, 953 F.3d at 653 (quoting *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006)). "Substantial weight should be accorded to the fourth factor." *Tresóna*, 953 F.3d at 653 (quoting *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018)).

While those factors may be considered, "courts may not rely on the [] factors if they are not 'faithful to the purposes of the Copyright Act'" when applied in a particular case. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) (quotation omitted). Indeed, it is an abuse of discretion to deny attorney's fees to a prevailing party whose success has furthered the purposes of the Copyright Act. *See Tresóna*, 953 F.3d at 653-54.

Applying these established principles here, Cher is properly awarded her attorney's fees.

**(c)** **The *Fogerty* Factors Confirm that Cher Is Properly Awarded Attorney's Fees**

**(1)** **Degree of Success: Cher Prevailed Completely and on the Merits**

The first *Fogerty* factor, the degree of success obtained, indisputably favors Cher. She achieved complete success on her declaratory relief claim when the Court concluded that Defendant's Notice of Termination did not have any affect whatsoever

4

on Cher's royalty and other rights under the MSA.  *See* <u>MSJ Order (Doc. 107) at 10-12</u>.  Cher's "complete success weighs in favor of an award of attorney['s] fees." <u>*Tresóna*, 953 F.3d at 653</u>.

Accordingly, the first *Fogerty* factor cuts strongly in favor of awarding Cher her attorney's fees.

### **(2)    Frivolousness and Objective Unreasonableness: Defendant's Attempt to Terminate Cher's Royalty Rights Was Based on an Untenable Interpretation of Section 304(c)**

A claim is "frivolous" under the second *Fogerty* factor "where it lacks an arguable basis either in law or in fact." <u>*Neitzke v. Williams*, 490 U.S. 319, 325 (1989)</u>. A claim is "unreasonable" under the fourth *Fogerty* factor if the claimant "should have known from the outset that its chances of success . . . were slim to none[,]" <u>*SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013)</u>, or if "the litigant continues to pursue [the claim] when the litigant knew or should have known that the chance of success was slim to none," <u>*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CV13-00496, 2015 WL 5601853 at *5 (D. Haw. Sept. 23, 2015)</u> (citation omitted).

If a prevailing plaintiff's claims furthered the policies of the Copyright Act, attorney's fees are properly awarded even if the defendant's position was reasonable. *See* <u>*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208-09</u> (2016); *see also, e.g.*, <u>*Fogerty*, 94 F.3d at 555-56</u> (affirming award of attorney's fees against plaintiff who asserted infringement claims "upon reasonable factual and legal grounds"; award of attorney's fees "not cabined by a requirement of culpability on the part of the losing party").  However, Defendant's attempted termination of Cher's royalty rights was frivolous and unreasonable for at least the following reasons.

First, Bono's claim that the Notice of Termination terminated Cher's rights under the MSA completely ignored numerous express provisions of Section 304(c):

- The MSA was executed on August 10, 1978, but Section 304(c) expressly provides that it applies only to a grant of copyright if it was "***executed before January 1, 1978***." *See* <u>MSJ Order at 11</u> (quoting <u>17 U.S.C. § 304(c))</u> (emphasis added).

- Section 304(c) provides only a mechanism for terminating a *particular* grant, which requires "serving an advance notice in writing upon the grantee or the grantee's successor in title." *<u>Id.</u>* <u>§ 304(c)(4)</u>. But Defendant admitted she did not serve her Notice of Termination on Cher and, indeed, Defendant's Notice of Termination does not even mention Cher. *See generally* <u>Notice of Termination (Doc. 65-14)</u>.

- The Copyright Office's regulations promulgated under Section 304(c)(4)(B) require that the notice reasonably identify the grant being terminated. <u>37 C.F.R. § 201.10(b)(iv)</u>. But Defendant's Notice of Termination does not mention the MSA or the related State Court Judgment confirming the MSA. *See generally* <u>Notice of Termination (Doc. 65-14)</u>.

- Section 304(c) termination applies only to transfers or licenses of copyright or copyright rights. <u>17 U.S.C. § 304(c)</u>; *see also <u>id.</u>* <u>§ 304(c)(6)(E)</u> ("Termination of a grant … affects only those rights covered by the grant that arise under this title"). But the MSA assigned royalty and approval rights to Cher, not copyrights or copyright rights. *See generally* <u>MSA (Doc. 65-8)</u>.

- Section 304(c)(6)(E) expressly provides that termination "in no way affects rights arising under any other Federal, State, or foreign laws." <u>17 U.S.C. § 304(c)(6)(E)</u>. But the MSA assigned royalty and approval rights that arise under state law. *See* <u>MSJ Order at 10</u>; <u>MSA (Doc. 65-8)</u>.

Second, Defendant raised as an affirmative defense that Section 304(c) preempts Cher's State-law rights. But this argument too ignores Section 304(c)'s

express provision that termination "in no way affects rights arising under … State … laws." 17 U.S.C. § 304(c)(6)(E). Indeed, the Court recognized the patent flaws in Defendant's argument when the Court rejected that argument for the first time in the Court's Order on Defendant's Motion to Dismiss. *See* MTD Order (Doc. 43) at 5-9. Yet, Defendant continued to argue preemption in her Motion for Summary Judgment, which the Court rejected for a second time on summary judgment: "[Cher's] rights under the MSA arise solely under state law" and Defendant's "Notice of Termination cannot affect [Cher's] contractual right to receive financial compensation in exchange for the release and permanent discharge of any and all claims arising out of her marital relationship with Sonny." MSJ Order at 10.

Third, Defendant's procedural defenses were also unreasonable and frivolous. Defendant argued that Plaintiff lacked "standing" because she sold her rights to a third party during the lawsuit, but Plaintiff ignored that standing is determined "as of the time [the plaintiff] commenced suit[.]" *Gonzalez v. U.S. ICE*, 975 F.3d 788, 803 (9th Cir. 2020); *accord Lujan v. Def. of Wildlife*, 504 U.S. 555, 570 n.5 (1992). And Defendant argued that Sonny's other heirs were necessary parties while completely ignoring the key issue: that their interests were adequately represented by Ms. Bono. Indeed, Defendant continued to argue for their joinder even though Defendant stated in a Declaration that the other heirs were aware of this litigation and agreed to deposit the disputed royalties in an escrow account pending the outcome of this litigation. *See* Decl. of Mary Bono (Doc. 64-3) at 2 ¶ 10, 3 ¶ 13; MSJ Order at 8. Furthermore, Defendant's procedural defenses are irrelevant because none barred Cher's declaratory relief claim—at most, Cher would have been required to join Iconic or Sonny's other heirs, and Defendant's position with respect to the termination would be just as frivolous then as it is now.

Fourth, Defendant wrongfully withheld on false privilege grounds over forty emails documenting her efforts to hide from Cher her secret scheme to divert Cher's

1  royalties.  *See* <u>Order re Cher's Motion to Compel (Doc. 90)</u>; *see also, e.g.*, <u>Anderson</u>
2  <u>Decl. Ex. 22 (Doc. 66-12)</u>.

3        In contesting Cher's claim for a judicial declaration that Defendant's Notice of
4  Termination had no effect on Cher's rights under the MSA, Defendant turned a blind
5  eye to Section 304(c)'s express provisions and instead relied on frivolous and
6  unreasonable arguments.  At a very minimum, Defendant "should have known from
7  the outset that [her] chances of success [in claiming the Notice of Termination
8  defeated Cher's state law rights under the MSA] were slim to none." *SOFA Ent., Inc.,*
9  <u>709 F.3d at 1280</u>.  Accordingly, this factor also cuts strongly in favor of awarding
10  Cher her attorney's fees.

11                    **(3)      Motivation: While Cher Simply Sought to Preserve Her**
12                         **Royalties and Other Rights under Her MSA with Sonny,**
13                         **Defendant Sought to Divert Cher's Rights For Herself**

14        Cher's motivation for prosecuting her claims was purely based on her need to
15  protect the royalties and other benefits she received under her MSA with Sonny.  On
16  the other hand, Defendant's motivation was base: relying on an untenable
17  interpretation of Section 304(c), Defendant sought a windfall by diverting those
18  royalties and benefits under the MSA to herself.  Defendant's improper motivation is
19  underscored by the secretive nature of her scheme, wherein she conspired with third
20  parties such as Wixen Music Publishing to secretly divert Cher's royalties without
21  Cher's knowledge.  *See* <u>Pltf's Resp. to Def's Stmt. of Genuine Disputes (Doc. 92-1)</u>
22  <u>at Facts 100-110</u>.  Accordingly, this *Fogerty* factor also cuts in favor of awarding Cher
23  her attorney's fees.

24

25

26

27

28

**(4)      Compensation: Awarding Attorney's Fees Will Compensate Cher for Protecting Her Royalty Rights and Obtaining a Judicial Declaration as to the Scope and Limits of the Copyright Act's Termination Provisions**

Because of Defendant's unreasonable and frivolous arguments, Defendant dragged out for years a dispute that could and should have ended with the Court's 2023 ruling on Defendant's Motion to Dismiss, that Defendant's Notice of Termination did not cut off Cher's rights under the MSA.  *See* <u>MTD Order (Doc. 43) at 6-9</u>.  As a result, Cher incurred substantial attorney's fees and she is properly compensated for them.  Accordingly, the *Fogerty* factor of compensation also strongly favors awarding Cher her attorney's fees.

**(5)      Deterrence: Defendant and Others Should Be Deterred from Misusing the Copyright Act Terminations to Attempt to Terminate Grants of Royalty Rights**

Deterrence is particularly appropriate here because the Ninth Circuit has recognized the legitimate interest in deterring baseless legal theories and tactics, like Defendant's attempt to terminate Cher's rights hereunder the MSA.  For example, in *Tresóna*, the court held that the deterrence factor weighed in favor of a prevailing litigant who was subjected to legal claims that were "groundlessly asserted" and resulted in "almost four years of litigation" that was "avoidable from the beginning." <u>*Tresóna*, 953 F.3d at 654.</u>  The same is true here: after nearly five years of litigation, Cher has achieved complete success on her claim for declaratory relief, which she was only forced to assert because of Defendant's attempt to misuse the Notice of Termination to deprive Cher of her royalties and rights under the MSA.  Awarding attorney's fees here will deter Defendant and others from trying to overextend Copyright Act termination rights to challenge and impair the state law rights of others.

Accordingly, the final *Fogerty* factor of deterrence, like all the other *Fogerty* factors, cuts strongly in favor of awarding Cher her attorney's fees.

**(d)    Awarding Cher Her Attorney's Fees Would Further the Purposes of the Copyright Act**

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel*, 705 F.3d at 1111. "[I]t is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty*, 510 U.S. at 527. Here, the purposes of the Copyright Act were furthered by Cher's successful claim for declaratory relief because the Court has confirmed the application and limitations of Section 304(c). Indeed, the Court's decision also applies to parallel language in Section 203, which provides for statutory termination of post-1977 grants and, like Section 304(c), is expressly limited to grants of copyright rights and expressly excludes state law rights.

Cher thus served the "peculiarly important" purpose of ensuring that "the boundaries of copyright law be demarcated as clearly as possible." *Perfect 10, Inc., v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017). Therefore, "[t]he most important factor in determining whether to award fees under the Copyright Act" confirms that Cher should be awarded her attorney's fees. *Mattel*, 705 F.3d at 1111.

**(e)    The Amount of Attorney's Fees Sought Is Reasonable**

The amount of attorney's fees awarded is determined by (1) calculating the lodestar figure and (2) determining whether that lodestar figure should be adjusted. *See, e.g.*, *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).

**(1)    Calculating the Lodestar**

In setting a fee, the Court "must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel*, 6 F.3d at 622. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Id.* To establish this "'presumptively reasonable' lodestar figure[,]" the party seeking fees may "provide (1) contemporaneous billing records, (2) counsel's hourly rate, and (3)

10

evidence that this rate is reasonable for an attorney of like skill and experience." *Discovery Commc'ns, Inc., v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001).

As for "the number of hours reasonably expended on the litigation[,]" (*Intel*, 6 F.3d at 622), Cher seeks to recover attorney's fees for 1,917.20 hours expended by her counsel, across multiple attorneys and paralegal staff. *See* Anderson Decl. at ¶¶ 9-13, 15-19, 40, Exs. 1-3. These hours reflect the heavily litigated nature of this action by Cher's counsel. Indeed, since Cher filed this action in October 2021, Cher's counsel has, among other things, (a) filed a complaint; (b) litigated a motion to dismiss Cher's claims, which included supplemental briefing; (c) prepared additional pleadings, including a First Amended Complaint and Answer to Defendant's counterclaims; (d) conducted significant written discovery; (e) took and/or defended five depositions; (f) successfully moved to compel Defendant's production of over forty e-mails with Wixen that Defendant withheld on false claims of attorney-client privilege and work product; (g) engaged in extensive document review and productions; (h) litigated and substantially prevailed on cross-Motions for Summary Judgment; (i) litigated a motion in limine; (j) prepared pre-trial filings required by the Court, including a witness list, memorandum of contentions of fact and law, and a trial brief; and (k) prepared this fee motion. Each of these aspects of the proceedings is discussed in greater detail in the Declaration of Peter Anderson filed herewith. *See* Anderson Decl. at 12-16 ¶¶ 21-39. Thus, Cher submits that these hours are reasonable.

As for the reasonableness of counsel's hourly rate, the legal services of Cher's lead counsel, Mr. Anderson, were charged at the rate of $795 per hour, which reflects a discount of 39% from his current rates. *See id.* at 6 ¶ 8. Fees for legal services of other attorneys on this matter were $657 per hour for Mr. Sullivan, a partner, $427 Mr. Anderson's associates, Mr. Lamm, and $530 (in 2023) and $400 (in 2024-2026) for Mr. Anderson's other associate, Mr. Turner. Each of these rates reflect very substantial discounts from their current rates. *See id*. at 6-7 ¶¶ 9-11. Paralegal services

1  in this matter ranged from $365 to $400, and non-legal services provided by support
2  staff ranged from $110 to $365. *Id*. at 7 ¶¶ 12-13.

3  Those rates for the attorneys listed above are below the median hourly rates of
4  median rates per hour prevailing in the Los Angeles community for partners and
5  associates with comparable experience as Plaintiff's counsel. *Intel*, 6 F.3d at 622; Liu
6  Decl. at 1-2 ¶¶ 4-9. Indeed, multiple courts in this District have found similar hourly
7  rates to be reasonable in copyright infringement cases. *See, e.g.*, *Title Tracy Anderson*
8  *Mind & Body, LLC v. Roup*, No 2:22-cv-04735, 2023 WL 6890744, at *2–3 (C.D.
9  Cal. Sept. 11, 2023) (approving as reasonable 2022-2023 rates up to $760 for
10  associates and $1,065 for partners per four in copyright case); *Perfect 10, Inc. v.*
11  *Giganews, Inc.*, No. CV 11-08098-AB(SHx), 2015 WL 1746484 at *15-16 (C.D. Cal.
12  Mar. 24, 2015) (approving as reasonable 2011-2014 rates up to $690 per hour for
13  associates and rates between $825 and $930 per hour for partner in copyright
14  infringement case, and a total of $5,213,117 in attorney's fees) *aff'd*, 847 F.3d 657
15  (9th Cir. 2017); *AK Futures LLC v. Smoke Tokes, LLC*, No. 8:21-cv-01061-
16  JVS(ADSx), 2022 WL 3574280 at *2 (C.D. Cal. Jan. 13, 2022) ("Billing rates of
17  $590.63 for a new associate, $809.38 for an associate with seven years of experience,
18  and $962.50 for a partner with eleven years of experience are not excessive compared
19  with prior awards in this forum"; rate of $1,137.50 for partner reasonable); *WB Music*
20  *Corp. v. Royce Int'l Broad. Corp.*, No. EDCV 16-600 JGB(DTBx), 2018 WL
21  6177237, at *5 (C.D. Cal. July 9, 2018), *aff'd*, 814 F. App'x 286 (9th Cir. 2020)
22  (finding reasonable 2016-2018 hourly rates in copyright case of $778.50 for partner
23  with three decades of experience and associate rates of $567-$702); *Universal Elecs.,*
24  *Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015)
25  (finding reasonable rate of $768.06 per hour for intellectual property partners), *aff'd*
26  669 F. App'x 575 (Fed. Cir. 2016); *Steenwyk v. Steenwyk*, No. 2:20-cv-02375 FLA
27  (AFM), 2022 WL 7162931 at *4 (C.D. Cal. July 11, 2022) (rates of $700 per hour for
28

12

partners and between $550 and $600 for associates are reasonable), *r&r adopted*, 2022 WL 7054770 (C.D. Cal. Oct. 12, 2022).

Multiplying the hours Cher's counsel reasonably spent in successfully prosecuting this action through January 11, 2026 that Cher seeks to recover, by counsel's hourly rates reasonably charged, results in $1,023,605.30. *See* Anderson Decl. at 8 ¶ 19 & Ex. 1. That sum, plus the estimated $10,000 in attorney's fees incurred in preparing a forthcoming Reply, totals $1,033,605.30, as the "'presumptively reasonable' lodestar figure." *Id.* at 8 ¶¶ 16-19, *id.* Ex. 3; *Intel*, 6 F.3d at 622; *see Perfect 10, Inc.*, 2015 WL 1746484 at *29.

### (2)    The Applicable *Kerr* Factors Confirm the Amount Sought Is Reasonable

"[T]he district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculations." *Intel*, 6 F.3d at 622. The *Kerr* factors include "[t]he amount involved and the result obtained" and the "customary fee." *Id.*

By attempting to terminate Cher's rights pursuant to Section 304(c), Defendant sought to keep or obtain, among other things, millions of dollars of Cher's royalties, including both those Defendant secretly diverted and those later deposited into escrow accounts. Given the relief that Cher sought and the amounts of royalties involved, Cher was perfectly justified in incurring $1,023,605.50 in attorney's fees to successfully defeat Defendant's improper attempt at termination, and an estimated $10,000 in attorney's fees in preparing a forthcoming Reply. And, as for the customary fee, Cher's counsel charged hourly rates substantially below the customary rate in the community for attorneys with comparable experience in the field. *See* Liu Decl. at 1-2 ¶¶ 4-9.

Accordingly, the *Kerr* factors confirm that the requested fee award is reasonable. Cher's motion for attorney's fees should therefore be granted.

**(3)** **Apportionment of Fees Is Unnecessary and Cher Should Be Awarded Her Fees for All Claims on Which She Prevailed Because they Arise from the Same Core Facts**

It is well-established that a party who prevails on a claim for which attorney's fees are recoverable can recover attorney's fees on that claim <u>and</u> any "related claims" on which the party also prevails. *<u>The Traditional Cat Ass'n, Inc. v. Gilbreath</u>*, 340 <u>F.3d 829, 833 (9th Cir. 2003)</u>, *quoting <u>Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.</u>*, 122 F.3d 1211, 1230 (9th Cir. 1997), *cert. denied* 523 U.S. 1021 (1998), *in turn quoting <u>Hensley v. Eckerhart</u>*, 461 U.S. 424, 434-35 (1983). Claims are "related" if they "involve a common core of facts <u>or</u> will be based on related legal theories." *<u>Hensley</u>*, 461 U.S. at 435 (emphasis added).

Here, in addition to Cher's claim for a judicial declaration that the Notice of Termination did not affect her royalties and rights under the MSA—a claim on which Cher unambiguously prevailed—Cher asserted (and prevailed on) a second claim that Defendant had breached the MSA by using the Notice of Termination to try to coopt Cher's MSA royalties and rights. Cher also defended Defendant's two counterclaims, partially prevailing on the first counterclaim by confirming Cher's ongoing approval rights, and unambiguously prevailing on the second counterclaim by which Defendant sought to use the Notice of Termination to deprive Cher of her recording royalties from record companies. *See* <u>MSJ Order at 13-15</u>. No allocation of attorney's fees is necessary.

Cher's successful claims for declaratory judgment and breach of contract are based on *exactly* the same factual and legal basis: Defendant's improper attempt to terminate Cher's royalty rights, which both violated the Copyright Act and breached Defendant's obligations under the MSA. *<u>See</u>* Pltf's Memo. iso MSJ (Doc. 61-1) at <u>10-11</u>. Indeed, the claims were brought merely because, as the Court's Judgment shows, they resulted in different remedies. *See* <u>Judgment (Doc.168) at 2-3</u>. As a

14

result, both claims "involve a common core of facts" <u>and</u> are "related legal theories." *Hensley*, 461 U.S. at 435.

As for Defendant's counterclaims, her first sought a ruling that Defendant now has "sole discretion" to appoint an administrator. *See* <u>Counterclaim at 26-27 ¶¶ 39-47</u>. While the Court ruled that Defendant and the other heirs have the right to appoint administrators, Cher successfully established that, notwithstanding Defendant's arguments and the Notice of Termination, Cher retains her MSA approval rights over any proposed administrator. <u>MSJ Order at 14-15</u>; <u>Judgment at 3 ¶ 1(b)</u>. And Defendant's second counterclaim sought a ruling that Defendant could deprive Cher of her share of record royalties under her recording contracts with record companies. *See* <u>Counterclaim at 28 ¶¶ 48-51</u>. Cher unambiguously prevailed, including by establishing that Defendant's Notice of Termination also did not affect Cher's state law right to record royalties. *See* <u>MSJ Order at 10</u>. Accordingly, the litigation over those two counterclaims—as limited as it was—also "involve[d] a common core of facts" <u>and</u> are "related legal theories." <u>*Hensley*, 461 U.S. at 435</u>. And even if an allocation were required, which it is not, the attorney's fees on those two counterclaims were de minimis. As one example, the parties' respective summary judgment briefs dedicated only small portions to Defendant's counterclaims. *See* <u>Pltf's Motion for Summary Judgment (Doc. 64-1) at 23-24</u> (dedicating only two pages out of thirty-one total); <u>Cher's Motion for Summary Judgment (Doc. 65-1) at 23-26</u> (dedicating only three pages out of twenty-eight total). Indeed, because the parties' arguments regarding Defendant's counterclaims were only a small portion of this action, the time entries in Cher's invoices do not identify any entries specifically addressing them. *See generally* Anderson Decl., Exs. 1-2.

**3. <u>CONCLUSION</u>**

For the foregoing reasons, Cher respectfully requests that the Court award her attorney's fees in the successful prosecution of this action.

Dated: January 12, 2026            _____
                                        */s/ Peter Anderson, Esq.*
                                          Peter Anderson, Esq.
                                         Sean M. Sullivan, Esq.
                                          Eric H. Lamm, Esq.
                                         Samuel Turner, Esq.
                                    DAVIS WRIGHT TREMAINE LLP
                                         Attorneys for Plaintiff
                                         and Counterdefendant
                                              CHER
                                    Individually and as Trustee of
                                          The Veritas Trust

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this Memorandum contains 4,800 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 12, 2026            _____
                                        */s/ Peter Anderson, Esq.*
                                          Peter Anderson, Esq.

16