DANIEL J. SCHACHT, #259717
dschacht@donahue.com
ANDREW S. MACKAY,#197074
amackay@donahue.com
HAYLEY M. LENAHAN, #343528
hlenahan@donahue.com
PADMINI CHERUVU, #301292
pcheruvu@donahue.com
MELANIE Y. KIM, #341251
mkim@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

Attorneys for Defendant and
Counterclaimant MARY BONO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CHER, individually and as Trustee of The Veritas Trust,

Plaintiff,

v.

MARY BONO, individually and as Trustee of the Bono Collection Trust, and DOES 1 through 10, inclusive,

Defendants.

MARY BONO,

Counterclaimant,

v.

CHER, individually and as Trustee of The Veritas Trust,

Counter-defendant.

Case No. 2:21-cv-08157-JAK (RAOx)

**DEFENDANT AND COUNTER-PLAINTIFF'S MARY BONO'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT CHER'S MOTION FOR ATTORNEY'S FEES**

Hrg, Date: March 9, 2026 [Proposed]
Time: 8:30 a.m.
Judge: Hon. John A. Kronstadt
Ctrm.: 10C

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Plaintiff's Action Sounds in Contract, Not Copyright ..... 2
1. The Underlying Marriage Settlement Agreement Contains No Applicable Attorney's Fees Stipulation ..... 3
B. The Copyright Act Does Not Support an Award of Fees ..... 3
1. The First Factor: Degree of Success Obtained ..... 4
2. The Second and Fourth Factors: Frivolousness and Reasonableness ..... 5
3. The Third Factor: Motivation ..... 7
4. Compensation and Deterrence ..... 8
5. Balance of Factors and Purposes of the Copyright Act ..... 9
C. Plaintiff Failed to Apportion Fees Between Copyright and Non-Copyright Claims. ..... 10
D. The Fee Request is Further Unreasonable Due to Plaintiff's Counsel's Billing Practices ..... 13
III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown-Thomas v. Hynie*,
2018 WL 3811353 (C.D. Cal. Aug. 7, 2018) ........ 9

*ConsumerDirect, Inc. v. Pentius*,
LLC, No. 8:21-CV-01968-JVS-ADS, 2024 WL 3914672 (C.D. Cal. Aug. 6, 2024) ........ 13

*Goodwin v. Mets*,
973 F.2d 378 (4th Cir. 1992) ........ 14

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) ........ 4, 5

*Milkcrate Athletics, Inc. v. Adidas Am., Inc.*,
619 F. Supp. 3d 1009 (C.D. Cal. 2022) ........ *passim*

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ........ 14

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ........ 5

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV 11-07098-AB SHX, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ........ 5, 6

*Peter v. Nantkwest, Inc.*,
589 U.S. 23 (2019) ........ 2

*Romberg v. Nichols*,
970 F.2d 512 (9th Cir.1992), vacated and remanded on other grounds, 506 U.S. 1075 (1993) ........ 10, 12

*Ryan v. Editions Ltd. W., Inc.*,
786 F.3d 754 (9th Cir. 2015) ........ 2

*Schwarz v. Sec'y of Health and Human Services*,
73 F.3d 895 (9th Cir.1995) ........ 10, 12

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ........ 4

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273 (9th Cir. 2013) ........ 4

*Stern v. Does*, 978 F. Supp. 2d 1031 (C.D. Cal. 2011), *aff'd sub nom. Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013) ........ 10

**Statutes**

17 U.S.C. § 304(c) ........ 11

17 U.S.C. § 304(c)(2) ........ 9

17 U.S.C. § 304(c)(5) ........ 6, 9

Code Civ. Proc., § 1021 ........ 2, 3

Copyright Act. 17 U.S.C. § 505 ........ 1, 3, 12

**Other Authorities**

L.R. 11-6.1 ........ 15

Nimmer on Copyright ........ 6, 7, 8, 10, 11

# I. INTRODUCTION

Plaintiff seeks to recast what is fundamentally a breach of contract action into a copyright action in order to obtain an award of fees to which she is not entitled. Plaintiff's claim was that she is entitled to half of all royalties under the agreement she signed with Sonny Bono, the Marriage Settlement Agreement ("MSA"). Defendant Mary Bono's defense – that she did not breach the MSA because it could not reach royalties to which she was entitled to due to the reversion of grants pursuant to a notice of termination – was rejected by this Court, and the Court enforced Plaintiff's rights under the MSA. In other words, Plaintiff prevailed on her claims regarding the interpretation and enforceability of a contract – the MSA. She also prevailed on only one of two counterclaims asserted by Defendant, which were also based in contract.

The contract, which Plaintiff agreed to and now enforces through this action, contains no attorney's fees provision. Nevertheless, Plaintiff now seeks to recover her litigation fees under the Copyright Act. Copyright law, however, did not supply the operative rights at issue and Section 505 does not permit fee-shifting for success on state-law contract claims simply because copyright issues were pleaded. *The only rights that Plaintiff has at issue in this lawsuit, and that were recognized by this Court, are her contractual rights.*

Plaintiff's request should be denied or substantially reduced for four independent reasons. First, the gravamen of the action sounds in contract, not copyright. Second, even if the Copyright Act applied, this is exactly the kind of case in which fees *should not* be awarded: a case of first impression involving a complicated and unclear area of law. Third, a fee award, if any, must be apportioned to exclude work unrelated to copyright issues. Fourth, and relatedly, the fees sought are unreasonable and deductions should be made for unnecessary litigation, particularly in discovery, and entries reflecting improper billing practices.

## II. ARGUMENT

The American Rule is the basic point of reference when considering the award of attorney's fees. "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 28 (2019). Under California law, attorney's fees are recoverable in an action for breach of contract only where authorized by statute or by the parties' agreement. Code Civ. Proc., § 1021. Absent an express statute or contractual provision providing for fee-shifting, each party must bear its own attorney's fees, even where the prevailing party successfully enforces or defends a contract.

### A. Plaintiff's Action Sounds in Contract, Not Copyright.

Plaintiff's First Amended Complaint confirms that this action was not, in any meaningful sense, a copyright enforcement case. As master of her complaint, Plaintiff chose to plead claims arising from Defendant's Notice of Termination solely to obtain a determination that the Notice did not affect her asserted rights arising from the MSA. Plaintiff's claims therefore turn on the interpretation and enforcement of contract law and state-law property principles, not on the vindication of rights arising from federal copyright law.

In short, this case involved contract interpretation and state-law rights, not the type of copyright dispute for which Congress intended fee-shifting; there was no infringement claim, no fair use or substantial similarity defense, and no enforcement of exclusive rights under the Copyright Act. The Ninth Circuit has recognized that two parties' contractual agreement regarding the award of attorneys' fees is not preempted by the Copyright Act and should be honored. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 761 (9th Cir. 2015) (awarding fees pursuant to the parties' contract where award was unavailable under the Copyright Act).

Moreover, Defendant early and unequivocally conceded that the Notice of Termination did not terminate the MSA itself (Plaintiff's Claim 1(a)) or any grants outside the United States (Claim 1(e)). As a result, litigation and discovery directed

to those issues were unnecessary from the outset. It was also undisputed that Plaintiff's rights under the MSA arose under California law, as recognized in the Court's order on the parties' motions for summary judgment (Doc. 107 (the "MSJ Order")), further suggesting that the core issues in this Action lay outside of federal copyright law.

1. *The Underlying Marriage Settlement Agreement Contains No Applicable Attorney's Fees Stipulation*

Under California law, attorney's fees are recoverable in an action for breach of contract only where authorized by statute or by the parties' agreement. Code Civ. Proc., § 1021. Absent an express statute or contractual provision providing for fee-shifting, each party must bear its own attorney's fees, even where the prevailing party successfully enforces or defends a contract.

Here, Plaintiff does not contend that any statute authorizes recovery of attorney's fees on her claims for breach of contract, as the MSA contains no relevant attorney's fees clause. *See* MSA (Doc. 65-8). The MSA was self-evidently heavily negotiated by experienced attorneys. Plaintiff and her ex-husband very intentionally elected <u>not</u> to award the prevailing party attorneys' fees if the other party breached the MSA. That intent is further evidenced by the fact that they elected to insert attorney's fees provisions for very specific situations not applicable here. *See* MSA (Doc. 65-8) at ¶ 15 (certain tax liability) and at Exh. D (a certain lawsuit). Plaintiff chose not to have attorneys' fees be awarded against a party breaching the MSA. She should be bound by her choice.

**B. The Copyright Act Does Not Support an Award of Fees**

Should this Court consider an award of fees under the Copyright Act, it should deny them. A court may, in its discretion, award reasonable attorney's fees to the prevailing party in a civil action brought under the Copyright Act. 17 U.S.C. § 505. The Supreme Court has made clear, however, that such awards are not automatic and must be guided by equitable considerations, including the five "*Fogerty* factors":

"(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180-81 (9th Cir. 2013) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The Supreme Court later clarified that the fourth factor – the reasonableness of the losing party's position – while not dispositive, is given "substantial weight." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016). Courts must apply these factors in a manner consistent with the purposes of the Copyright Act and must avoid treating prevailing-party status as dispositive. Rather, the touchstone of the analysis is whether an award would further the Copyright Act's goals, not simply reward success in litigation. *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

This Court's decision in *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009 (C.D. Cal. 2022), is a model of a thorough and clear analysis of the *Fogerty* factors, and is used here as a guide. It shows that the *Fogerty* factors do not support an award of fees here.

1. *The First Factor: Degree of Success Obtained*

As this Court noted in *Milkcrate*, "A party entitled to attorney's fees as a prevailing party on a particular copy-right claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending [or prosecuting] against that one claim or any 'related claims.'" *Milkcrate*, 619 F. Supp. 3d at 1023 (cleaned up) (quoting *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003)). As in *Milkcrate* and nearly every case, this factor favors the prevailing party. However, the weight of this factor is limited because, as the Supreme Court stated, "a court may not award attorney's fees as a matter of course." *Kirtsaeng*, 579 U.S. at 197 (cleaned up) (quoting *Fogerty*, 510 U.S. at 533). Here it is further limited because Plaintiff's success was in enforcing her contractual rights, not any right of copyright.

### 2. *The Second and Fourth Factors: Frivolousness and Reasonableness*

This Court reviewed the second and fourth *Fogerty* factors together in Milkcrate because, as here, they are related.

> Objective unreasonableness is generally used to describe claims that have no legal or factual support. Relatedly, a claim is appropriately considered to be frivolous when the result is obvious or the arguments are wholly without merit.

*Milkcrate*, 619 F. Supp. 3d at 1023 (internal quotation marks omitted). *See also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). The Supreme Court's analysis of this "objective-reasonableness approach" speaks of awarding fees where a party "is clearly correct," where a copyright has "obviously been infringed," where the claim is "patently meritless," or where there is "no reasonable infringement claim." *Kirtsaeng*, 579 U.S. at 205. As the Ninth Circuit stated,

> A claim is not frivolous under the Copyright Act merely because it is unsuccessful. Rather, a frivolous claim under the Copyright Act is one that, in either the factual or legal assertions, ***is clearly baseless, involving fantastic or delusional scenarios***. Put another way, a case is deemed frivolous only when the result is obvious or the arguments are wholly without merit.

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (cleaned up and emphasis added) (citing and quoting, among others, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir.2007); *Neitzke v. Williams*, 490 U.S. 324, 325–28 (1989); *Glass v. Sue*, No. CV 09–8570–RGK SHX, 2011 WL 561028, at *3 (C.D.Cal. Feb.8, 2011), and *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir.2003)).

This case simply cannot be characterized as unreasonable or frivolous using this standard. The result was by no means obvious nor the arguments wholly without merit. Neither the factual nor legal scenarios are fantastic or delusional. This case

involves a novel and uncharted area of law, with reasonable positions taken by Defendant based on, among other factors, the text of the Copyright Act. *See* 17 U.S.C. § 304(c)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary"). Defendant is aware of no other case that deals with this specific issue as it pertains to statutory heirs of an author. The numerous cases cited above in this Circuit alone support a denial of fees on this basis. *See also Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (finding non-frivolousness, noting that "[a]lthough the Court ultimately found those claims without merit, it only did so after two rounds of motions to dismiss ... and two rounds of summary judgment ..., involving difficult and somewhat novel questions of law."); *and* 5 Nimmer on Copyright § 14.10[D][5][a][i], fn. 367 (the objective unreasonableness standard "weighs against awarding of fees to the extent that the case involved issues of first impression") (citing, among other cases, *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996)).

Here, Defendant Mary Bono and other heirs of Sonny Bono were advised by *a former General Counsel and Associate Register of Copyright of the U.S. Copyright Office* in issuing the notice of termination and instructing Wixen to pay the reverted U.S. copyright royalties solely to Sonny Bono's heirs. *See* Defendant's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment (Doc. 64-2), 13:4-16, Uncontroverted Facts 29, 30. The only better source of advice for copyright matters is, arguably, the seminal treatise Nimmer on Copyright.[1] This litigation is so novel that the Court's answer to the copyright question in this case is not found in that

[1] Nimmer on Copyright is cited in more than ten times as many cases as any other copyright treatise. (Nimmer on Copyright, Product Description, available at https://store.lexisnexis.com/en-us/products/nimmer-on-copyright-volumes-1-through-6-grpussku-us-ebook-00465-abridged-epub.html (last accessed January 30, 2026).)

treatise. Still, it was Defendant, not Plaintiff, who relied on Nimmer on Copyright in her arguments. *Compare* Defendant's MSJ MPA (Doc. 64-1, pp. 13-18) (extensive discussion of Nimmer on Copyright) *with* Plaintiff's MSJ MPA (Doc. 65-1) (no reference to Nimmer on Copyright); *see also* Plaintiff's MSJ Opposition (Doc. 088) (limited discussion of Nimmer on Copyright). While the Court ultimately found this authority unpersuasive, it nevertheless underscores how reasonable and non-frivolous Defendant's arguments were.

Further, this Court itself has acknowledged the possibility of disagreements on the issues in this Action.[2] Lastly, Plaintiff's assertion that nearly 2,000 hours were required to litigate this matter directly undermines her claim that Defendant's positions were frivolous or objectively unreasonable and further demonstrates that this case is ill-suited for fee-shifting.

3. *The Third Factor: Motivation*

This third *Fogerty* factor weighs strongly against awarding Plaintiff fees. As in *Milkcrate*, "there is no persuasive evidence that Defendant litigated this matter for an improper motive[.]" *Milkcrate*, 619 F. Supp. 3d at 1023–24. "Stated differently, this was not an action by a copyright troll or pirate, and this factor also weighs against awarding [the losing party] costs and fees." *Id*. at 1024 (cleaned up).

There is also no evidence, persuasive or otherwise, that Defendant acted other than in good faith in litigating this action. Defendant agreed with Plaintiff to put the disputed royalties into separate accounts (the "Separate Accounts") until resolution of this matter, and worked to have Sonny Bono's children do the same. Indeed, Defendant was carrying the burden of litigation for Sonny Bono's children as well as herself. Defendant worked with Plaintiff to avoid the unnecessary cost of a trial.

---

[2] For example, in the hearing on the Pretrial Conference held on April 21, 2025, the Court stated that certain issues were ones on which the Defendant and Defendant's counsel and the Court could disagree.

Defendant was also receptive to the Court's suggestion at the April 21, 2025, final pretrial conference that the parties engage in further mediation to resolve the lawsuit, while Plaintiff rejected the Court's suggestion. *See* April 21, 2025, Hr'g Tr. 29:16-30:12. Defendant conceded undisputed issues of law and fact, including acknowledging from the outset one of Cher's main legal claims: that the Notice of Termination did not terminate the MSA. Defendant further conceded, as noted in Defendant's Motion to Dismiss, that foreign copyrights were not terminated, and that Cher continued to receive her royalty interest for those rights pursuant to the MSA. Defendant's Motion to Dismiss (Doc. 18-1), 9:3-8 fn. 8. To award fees where a party has litigated in good faith for a prompt, efficient and fair resolution would serve to undermine such behavior.

4. *Compensation and Deterrence*

Again, this Court's analysis and conclusion in *Milkcrate* apply here. Considering the factors of compensation and deterrence, this Court wrote:

> [I]t is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful… Stated differently, the court finds [the losing party's] claims does not rise to the level of frivolity. Accordingly, the court does not view this action as a case in which an award of costs or fees would serve the Copyright Act's deterrent purpose, and this factor weighs against awarding costs and fees to [the prevailing party].

*Milkcrate*, 619 F. Supp. 3d at 1024 (quotation marks omitted) (quoting the first sentence, cleaned up, from *Smith v. Weeknd*, 2020 WL 8174617, at *4 (C.D. Cal. Sept. 4, 2020)); see *also* 5 Nimmer on Copyright § 14.10[D][3][c] (summarizing the deterrence factor under Fogerty as "those who take a justified, if losing, position, should escape payment of fees"). As discussed above, this case is anything but frivolous, and an award of fees would not serve the Copyright Act's deterrent purpose.

5. *Balance of Factors and Purposes of the Copyright Act*

As discussed above, this case did not involve the type of copyright dispute for which Congress intended fee-shifting; there was no infringement claim, no defense of fair use, no analysis of substantial similarity, and no enforcement of exclusive rights under the Copyright Act. Plaintiff did not come to this Court to protect her rights arising under the Copyright Act – instead, she asked the Court to find that the Notice of Termination did not disturb her contractual right to royalties.

As discussed in Defendant's MSJ, the Copyright Act's termination provisions were enacted to protect an author's surviving spouse and descendants—not publishers or former spouses asserting contractual royalty interests. *Brown-Thomas v. Hynie*, 2018 WL 3811353, at *1 (C.D. Cal. Aug. 7, 2018); 17 U.S.C. § 304(c)(2). Congress deliberately limited termination rights to a defined class of statutory heirs and barred private agreements from altering that statutory scheme. *Id.* § 304(c)(5). Plaintiff, as an ex-spouse asserting rights as a contractual grantee, falls outside the class Congress intended to protect. In any case, had Plaintiff and her ex-husband intended to award fees to a successful defender of the contractual right to royalties arising from the MSA, they would have bargained for and included such a fee provision, which they did not. This purposes of the Copyright Act are well served by denying fees here, and putting the onus on parties to a contract to negotiate for fees if they desire them, and to live with their decision if they elect to forego them.

This matter goes to the heart of interpreting the Sonny Bono Copyright Term Extension Act, which is intended to protect authors and their heirs. Sonny Bono's widow cannot be faulted for her good faith attempts to seek judicial interpretation of this law and seek a reasonable interpretation of the law named in honor of her husband. An award of fees is completely inappropriate here.

### C. Plaintiff Failed to Apportion Fees Between Copyright and Non-Copyright Claims.

While Plaintiff claims that her claims all arise from a common set of facts, any copyright issues requiring the Court's determination in this action were extremely narrow, did not require discovery beyond the basic undisputed facts, and did not require extensive litigation, much less the 2,000 hours that Plaintiff claims in her Motion. The gravamen of the issues at the core of this Action related to contractual and state-law questions arising out of the MSA, and the litigation Plaintiff pursued on those issues was not related to, nor necessary to the determination of the limited copyright issues before the Court. For those reasons, Plaintiff's request for fees should be apportioned between copyright and non-copyright claims, and her fees request reduced based on the apportionment.

When a party prevails on both copyright and non-copyright claims, and is not entitled to attorney's fees on the non-copyright claims, the prevailing party can only recover attorney's fees incurred in litigating the copyright claim and any sufficiently "related" claims. *Milkcrate*, 619 F. Supp. 3d at 1023; *see also Schwarz v. Sec'y of Health and Human Services*, 73 F.3d 895, 903 (9th Cir.1995) (under fee-shifting provisions of Title VII, prevailing party cannot recover for unrelated claims); *Stern v. Does*, 978 F. Supp. 2d 1031, 1053 (C.D. Cal. 2011), *aff'd sub nom*. *Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013); 5 Nimmer on Copyright § 14.10[B][3][b] ("Even a plaintiff who prevails on all counts, only one of which is for copyright infringement, is entitled only to the portion of attorney's fees attributable to the copyright count").

While there is no controlling method of determining the relatedness of claims, one test that has been employed by the appellate court is "whether the unsuccessful claim arises from the same core of facts as the successful claim <u>and</u> whether it is likely that some of the work performed in connection with the unsuccessful claim also aided the work done on the merits of the successful claim." *Schwarz*, 73 F.3d at 903 (emphasis added); *see also Romberg v. Nichols*, 970 F.2d 512, 524 n. 8 (9th Cir.1992),

vacated and remanded on other grounds, 506 U.S. 1075 (1993) (concluding that a court need not compensate an attorney "for efforts expended on extraneous and dismissed claims that did not contribute to the victory").

When apportionment is required, "the impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect the apportionment." 5 Nimmer on Copyright § 14.10[E][3] (quoting *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003)).

Here, Defendant proposes an apportionment consisting of 20% as to copyright issues, and 80% as to non-copyright issues, for several reasons. First, the First Cause of Action for declaratory relief sought a series of rulings regarding the effect of the Notice of Termination on Plaintiff's purported rights. Many of those theories were expressly premised on contract interpretation and state-law property principles, not federal copyright law. In particular, Plaintiff alleged that the MSA's recognition and confirmation of community property interests (Claim 1(f)), Decedent's assignment to Plaintiff of an undivided fifty percent ownership interest in royalties under the MSA (Claim 1(g)), and Plaintiff's approval rights and other rights under the MSA and the Wixen Agreements (Claim 1(h)) arose under state law and were therefore not subject to termination under 17 U.S.C. § 304(c). Each of these theories depended on construing contractual provisions and applying state-law principles governing marital property, assignments, and contract rights—not resolving any unsettled issue of copyright law.

Second, a narrow subset of Plaintiff's declaratory theories—namely whether the Notice of Termination affected alleged grants of renewal copyrights or other copyright interests (Claims 1(b), 1(c), and 1(d))—implicated federal copyright law. Those issues were legal in nature and did not require extensive factual development. Defendant early and unequivocally conceded that the Notice of Termination did not terminate the MSA itself (Claim 1(a)) or any grants outside the United States (Claim

1(e)). As a result, litigation and discovery directed to those issues were unnecessary from the outset.

Third, the copyright issue presented was narrow and purely legal: whether a termination notice under the Copyright Act affected a royalty interest created by contract. This did not require extensive factual development. In fact, Defendant conceded early in the litigation that the notice of termination did not terminate the Marriage Settlement Agreement, eliminating need for extensive discovery. *See* Doc. 43, Order on Motion to Dismiss, p. 6 ("The parties agree that the termination notice did not terminate the MSA, and that Plaintiff's royalty and approval rights arise under state law").

Plaintiff's assertion that all claims arose from a common factual background does not justify the scope of discovery pursued, where the remaining disputes turned on contract interpretation rather than copyright law. Under these circumstances, fees incurred for expansive discovery efforts are not compensable under Section 505 and must be excluded or substantially reduced. 5 Nimmer on Copyright § 14.10[B][3][b]; *Schwarz*, 73 F.3d 895, 903; *Romberg*, 970 F.2d at 524 n. 8.

As noted by Plaintiff in her trial brief, the Court's May 29, 2024, MSJ Order on the parties' motions for summary judgment identified two factual issues remaining for trial: whether the amounts held in the Separate Accounts reflected a deduction of a ten percent administration fee and whether Plaintiff is entitled to a share of disputed royalties after July 1, 2022, the effective date of her sale of rights to a third party. (Doc. 157 at 3:6-13 (quoting the MSJ Order at 12)). These are contractual matters, relating to the MSA and "the provisions of the General Assignment" to the third party, respectively. *Id*. This shows two things. First, the copyright issue was essentially entirely a question of law, as the material facts were known and/or acknowledged by Defendant since the inception of the case. The discovery in this case related nearly entirely to the breach of contract claims. Second, Plaintiff's fees incurred after the Court's MSJ Order are overwhelmingly related to the remaining *contractual* issues.

### D. The Fee Request is Further Unreasonable Due to Plaintiff's Counsel's Billing Practices

In addition to denying Plaintiff's attorney's fees spent unreasonably on unnecessary discovery, including written discovery, depositions, and discovery disputes ($259,808.40), the Court should reduce fees requested based on time entries that reflect improper billing practices.

For the convenience of the Court, Defendant has prepared spreadsheets identifying Plaintiff's time entries that reflect the following issues: (1) attorneys billed for attending the same hearings ($10,385.50); (2) paralegals billed many hours on preparing instructions to tech regarding their internal discovery database ($4,281); (3) excessive partner hours were billed for time spent reviewing the work of associates who allegedly have "extensive experience" ($7,854.60); (4) attorneys billed excessive hours on individual motions, including 44.80 hours on the Motion to Dismiss, 45.80 hours on the MSJ, and 61.00 hours on the Motion to Compel,[3] all billed at a rate of $427.00 per hour ($19,480); (5) attorneys, including partners, also performed clerical and other basic tasks that ordinarily would be performed by a secretary, paralegal, or associate, such as sending emails to the Court Clerk, or drafting basic stipulations and proposed orders ($3,577.50); (6) other entries are overly vague, such as unspecified telephone calls and meetings ($25,971.50); (7) paralegals used block billing in time entries ($6,401); (8) attorneys Anderson and Lamm spent excessive time preparing for the hearing on the MSJs (more than 33 hours), after they already spent many hours on drafting the MSJ filings ($19,802); and (9) attorney Turner spent an excessive 48.20 hours on the present Motion for Attorney's Fees, a large portion of which was to review and redact invoices, at a rate of $400 per hour ($19,280). *See* Declaration of Melanie Kim, ¶ 2, Exh. 1. *Compare, e.g.*, *ConsumerDirect, Inc. v. Pentius*, LLC,

---

[3] Defendant's Motion to Compel was entirely related to contractual matters, namely the contract assigning Plaintiff's royalty rights to the third-party assignee.

No. 8:21-CV-01968-JVS-ADS, 2024 WL 3914672, at **6-7 (C.D. Cal. Aug. 6, 2024) (finding "duplicative supervisory work" by two counsel who, combined "have forty years of experience" to be "redundant," deducting fees for vagueness, and finding 20% reduction warranted where approximately 75% of entries were block-billed); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("The court may reduce the number of hours awarded because the lawyer[s] performed unnecessarily duplicative work"); *Goodwin v. Mets*, 973 F.2d 378, 383-84 (4th Cir. 1992) (reducing fees by 50% for "the time that new lawyers spent becoming familiar with the facts and law of the case, and overstaffing of attorneys").

Of particular note is Plaintiff's deposition of Defendant's previous legal counsel, Jacqueline Charlesworth, Esq. Depositions of the other party's attorney are generally disfavored. They are also often pointless, given the applicable attorney-client and work product privileges regarding documents and communications. Predictably, this deposition was a waste of time and money: Not a single document or unique piece of information gleaned through this deposition was used by Plaintiff in her Motion for Summary Judgment. *See* Plaintiff's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment (Doc. 65-2).

Based on the above improper billing practices evident in Plaintiff's counsel's time entries, and the unreasonable undertaking of expansive, unnecessary discovery by Plaintiff, Defendant requests that the Court deduct at least $325,000 from Plaintiff's fee request.

///

///

///

///

///

///

///

## III. CONCLUSION

For the above reasons, Defendant Mary Bono respectfully requests that the Court deny Plaintiff's Motion for Attorney's Fees in its entirety. If the Court were inclined to award fees, any award should be limited to time reasonably incurred in addressing the narrow copyright issue and substantially reduced to account for unnecessary discovery and billing defects.

Dated: February 2, 2026

DONAHUE FITZGERALD LLP
Attorneys at Law

By: *[/s/Daniel J. Schacht]*
Daniel J. Schacht
Andrew S. MacKay
Hayley M. Lenahan
Padmini Cheruvu
Melanie Y. Kim
Attorneys for Defendant and Counterclaimant MARY BONO

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Mary Bono, certifies that this brief contains 4,564 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 2, 2026

*[/s/ Daniel J. Schacht]*
Daniel J. Schacht